Payam Shahian (State Bar No. 228406)
**STRATEGIC LEGAL PRACTICES, APC**
e-mail: pshahian@slpattorney.com
1875 Century Park East., Suite 700
Los Angeles, CA 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Matthew R. Mendelsohn
David A. Mazie (awaiting *pro hac vice*)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Dara Tabesh (State Bar No. 230434)
e-mail: DTabesh@hotmail.com
201 Spear St. Ste. 1100
San Francisco, CA 94105
Telephone: (415) 595-9208
Facsimile: (310) 693-9083

Attorneys for Plaintiff Tigran Cholakyan

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| TIGRAN CHOLAKYAN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case Number: CV 10 5944-MMM (JQ)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MBUSA'S MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Margaret M. Morrow<br>Date:  February 14, 2011<br>Time:  10:00 a.m.<br>Courtroom:  780 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 2

III. ARGUMENT ................................................................................................. 4

    A. MBUSA's Rule 12(b)(1) Motion to Dismiss Should Be Denied .......... 4

        1. Plaintiff properly alleges an injury-in-fact ..................................... 4

            a) The water leak defect alleged is not limited to the TSB ......... 5

            b) Plaintiff suffered an injury-in-fact when his vehicle
               manifested the alleged defect ................................................. 5

            c) Plaintiff suffered injury-in-fact even if he did not
               experience the defect or incur out-of-pocket expenses .......... 7

    B. MBUSA's Rule 12(b)(6) Motion to Dismiss Should Be Denied .......... 8

        1. Plaintiff sufficiently alleges his CLRA and UCL claims ............... 8

            a) Plaintiff sufficiently alleges materiality .............................. 10

            b) MBUSA was under a duty to disclose material facts ........... 13

               (1) MBUSA had exclusive knowledge of material
                    facts…..................................................................... 13

               (2) MBUSA actively concealed material facts. .................. 13

        2. Plaintiff's allegations satisfy Rule 9(b) ........................................ 14

        3. Plaintiff Has Adequately Alleged Breach of Implied Warranty ... 15

            a) Plaintiff's Vehicle Is Unfit for Its Ordinary Purpose ........... 15

            b) MBUSA'a breach occurred during the warranty period ....... 16

        4. Plaintiff's Secret Warranty Claims Should Not Be Dismissed .... 17

    C. MBUSA'S Motion to Strike Should Be Denied ................................. 20

        1. Motions to strike class allegations are disfavored ........................ 20

        2. The FAC adequately alleges a readily ascertainable class .......... 21

        3. Plaintiff is a typical and adequate class representative ............... 22

4.   The class claims predominate over any individual issues ............ 23

5.   Ruling on a statute of limitations defense is premature ............... 24

IV.  CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Aryeh v. Canon Bus. Solutions, Inc.*, 185 Cal. App. 4th 1159 (2010) ............... 25

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006).. 8, 9, 12

*Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029 (2000)...... 25

*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19 (2007)........................ 16

*McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 186 (2010)............................ 8

*Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th  402 (2003) ............................. 16

*Morgan v. AT & T Wireless Services, Inc.*, 177 Cal. App. 4th 1235 (2009)....... 24

*Shapiro v. Sutherland*, 64 Cal. App. 4th 1534 (1998) ....................................... 13

*Tietsworth v. Sears, Roebuck & Co.*, 2010 WL 1268093 (N.D. Cal. March 31, 2010)................................................................................................ 12

*Tietsworth v. Sears, Roebuck and Co.*, 2010 U.S. Dist. Lexis 44053 (N.D. Cal. March 31, 2010)............................................................................... 10

## STATUTES

Cal. Civ. Code § 1795(c) ..................................................................... 16

Cal. Civ. Code § 1795.90 *et seq.* ........................................................ 17

Cal. Civ. Code § 1795.91 ..................................................................... 19

Cal. Civ. Code § 1795.92 ................................................................ 17, 18

Cal. Civ. Code § 1795.92(a) ................................................................ 19

Cal. Civ. Code § 1795.92(c) ................................................................ 19

Cal. Civ. Proc. Code § 338(d) ............................................................. 25

1

**FEDERAL CASES**

2  *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 973

3  (C.D. Cal. 2007) ............................................................................. 21

4  *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) ... 5

5  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) 14

6  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 957, 961 (9th Cir. 2009) ........................ 7

7  *Bishop v. Saab Automobile, A.B.*, 1996 WL 331500200 (C.D. Cal. Feb. 16, 1996)

8  ........................................................................................... 21

9  *Brazil v. Dell Inc.*, 2008 WL 4912050, at *3 (N.D. Cal. 2008) ......................... 21

10  *Briehl v. General Motors Corp*, 172 F.3d 623 (8th Cir. 1999) ................... 21, 22

11  *Cartwright et al. v. Viking Industries, Inc.*, 249 F.R.D. 351, 355 (E.D. Cal. 2008)

12  ........................................................................................... 24

13  *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005)

14  ........................................................................................ 9, 25

15  *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ... 24

16  *Circlli v. Huyndai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. 2009) .......... 9

17  *Clark*, 231 F.R.D. at 407 .................................................................. 20

18  *Cole v. GMC*, 484 F.3d 717, 723 (5th Cir. 2007) ................................... 7

19  *Collins v. Gamestop Corp.*, 2010 WL 3077671, at **2-3 (N.D. Cal. 2010). 21, 23

20  *Contreras v. Toyota Motor Sales, Inc.* 2010 WL 2528844, at **3-6 (N.D. Cal.

21  2010) ............................................................................................. 7

22  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ........................... 14

23  *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 832 (D. Minn. 2010) ............ 22

24  *Dalton v. Lee Publication, Inc. et al.*, 2009 WL 57113, at *2 (S.D. Cal. 2009) . 24

25  *Dawson v. Chrysler Corp.*, 630 F.2d 950, 957-58 (3d Cir.1980) ..................... 15

26  *Defazio v. Hollister, Inc.*, 2008 WL 958185, at *8 (E.D. Cal. 2008) ............... 20

27

28

1   *Estrella v. Freedom Financial Network, LLC*, 2010 WL 2231790, at *10 (N.D.

2       Cal. 2010) ................................................................................................. 23

3   *Farr v. United States*, 990 F.2d 451, 454 n. 1 (9th Cir.1993) ............................. 4

4   *Funk v. Sperry Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988) ............................. 13

5   *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) ....................... 24

6   *Glover v. BIC Corp.*, 6 F.3d 1318, 1325 (9th Cir. 1993) .................................. 12

7   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ...................... 22

8   *In re Apple & AT&TM Antitrust Litig.* ............................................................. 14

9   *In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,*

10      *And Product Liability Litigation*, 2010 WL 4867562, at *10 (C.D. Cal. 2010) 7

11  *In re Toyota*, 2010 WL 4867562, at **18, 37 & fn.5 ......................................... 9

12  *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615-16

13      (N.D. Cal. 2007) ...................................................................................... 21

14  *In Re: OnStar Contract Lit.*, 600 F. Supp. 2d. 861, 871-72 (E.D. Mich. 2009).... 9

15  *Iqbal*, 129 S. Ct. at 1954 ................................................................................... 14

16  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ...................... 14

17  *Kearny v. Hyundai Motor Co.*, 2010 U.S. Dist Lexis 68242, at *14 (C.D. Cal.

18      2010) ......................................................................................................... 7

19  *Larsen v. General Motors Corp.*, 391 F.2d 495, 506 (8th Cir.1968) ................. 15

20  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ................................. 6

21  *McGregor v. Uponor, Inc.*, 2010 WL 55985, at *6 (D. Minn. 2010) ................. 22

22  *Meaunrit v. Pinnacle Foods Group*, 2010 U.S. Dist. LEXIS 43858, at **21-26 10

23  *Misra v. Decision One Mortgage Co., LLC*, 673 F. Supp. 2d 987, 994 (C.D. Cal.

24      2008) ....................................................................................................... 20

25  *Morris v. BMW*, 2007 U.S. Dist. Lexis 85513, at *18 (N.D. Cal. 2009) ........... 18

26  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).......... 22

27

28

*Perry v. Mercedes Benz of North America, Inc.*, 957 F.2d 1257, 1260 (5th Cir. 1992) ........................................................................................................ 15

*Plascencia v. Lending 1ˢᵗ Mortg.* 259 F.R.D. 437, 448 (N.D. Cal 2009) ............ 23

*Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) ........................ 20

*Sanchez v. WalMart Stores, Inc.*, 2008 WL 3272101 (E.D. Cal. 2008) .............. 12

*Shabaz v. Polo Ralph Lauren Corp*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) ........................................................................................................ 21

*Smith v. Ford*, 2010 U.S. Dist. LEXIS 95122, at **28-29 (N.D. Cal. 2010) ...... 12

*Thorpe v. Abbott Lab, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal.2008) ......... 20

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ... 24

*Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at *4 (N.D. Cal. 2009) ........................................................................................................ 21

*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000) ........................................ 4, 13

*Whitson v. Bumbo*, 2009 U.S. Dist. Lexis 32282, at **1, 6 (N.D. Cal. 2009) ...... 7

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ................................................................................................ 6, 22, 23

## TREATISES

Federal Rule of Civil Procedure 9(b) .......................................................... 14, 15

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I.      INTRODUCTION

Defendant Mercedes-Benz USA, LLC's ("MBUSA" or "Defendant")
Motion to dismiss Plaintiff Tigran Cholakyan's ("Plaintiff") First Amended
Complaint ("FAC") under Rules 12(b)(1) and (6) and strike under Rule 15(a)
("Motion" or "Mot.") is littered with misstatements of statutory law, inapposite
and misinterpreted case law, disingenuous characterizations of Plaintiff's
allegations, and improper reliance on inadmissible evidence, all designed to
obscure a very simple point: MBUSA knew about its vehicles' safety defects and
failed to disclose that knowledge to its customers.  In its attempt to distract the
Court from the salient issues, MBUSA argues that Plaintiff's claims are *per
se* barred because manifestation of the alleged defect occurred outside the express
warranty period.  But this is not an express warranty case; this is a consumer
protection case.  The CLRA and UCL (as well as Secret Warranty Law) are
distinct from the traditional laws of warranty and were passed in large part
because traditional warranty and tort doctrines did not provide consumers
sufficient protection.

This lawsuit involves neither difficult legal theories nor complex facts.
Rather, this lawsuit is the product of an all-too-common scenario: an automaker
decided it would be easier and cheaper to conceal a widespread safety defect than
it would be to announce its existence and fix it.  The law, however, is clear: when
a manufacturer knows that its product is defectively designed and will not
perform as expected in a safe manner, the manufacturer can only sell the defective
product after disclosing the defect and its implications to prospective buyers.
MBUSA failed to do, and as such, should not be able to avoid liability by the
instant motion, which, as explained in detail below, fails on many grounds.

## II.   STATEMENT OF FACTS

Plaintiff alleges that since 2002, MBUSA has manufactured and sold to California consumers Class Vehicles it knew contain numerous design and/or manufacturing defects that cause them to be highly prone to water leaks and flooding (the "water leak defect"), including but not limited to defects in the Class Vehicles' water drainage system.  (FAC ¶¶ 1-3.)  The Class Vehicles' water drainage system is defective because it becomes clogged with leaves, twigs, debris, and other objects that enter the water drainage system.  When this occurs during rain or when the vehicle is washed, water overflows into the interior cabin of the Class Vehicles, causing electrical failure due to water damaging the computer, electrical system, and other interior components (including the trunk where the battery is located)[1] of the Class Vehicles and resulting in substantial out-of-pocket costs to consumers who are required to pay hundreds to thousands of dollars to diagnose and repair the water leak defect.  (*Id.* ¶¶ 4-6 & 21.)

As the number of complaints about the water leak defect increased, in 2008, Defendant issued a secret technical service bulletin ("TSB") to only its dealers in which it acknowledged the existence of the water leak defect, identified one of the many manufacturing and/or design defects that can cause the water leak problem, and provided for certain temporary fixes.  (*Id.* ¶¶ 9, 14, 39, 50-55 & fn. 5.)  The repairs outlined in the secret TSB namely involve: (1) clearing and/or cleaning of the water drainage system; (2) adding seam sealers to parts of the vehicle that are susceptible to the water leak defect and/or; (3) "[d]rill[ing] [an] additional drain hole."  (*Id.*)  According to the TSB, the clearing and/or cleaning and the adding of seam sealers are only temporary fixes because "'*[t]o permanently fix the water drain problem...a water drain hole with reinforcement plate must be made.*'" (*Id.* ¶¶ 9 &

---

[1] *See* Request for Judicial Notice ("RJN") Ex. 1 (indicating that the "Main battery" for the subject vehicles is located in the trunk).

55 (emphasis added).)[2]  Although Defendant normally attributes water leaks suffered by the Class Vehicles to outside influences and does not cover them under warranty, the TSB directs MBUSA dealers to perform the clearing, resealing, and drainage system modification at no cost to consumers under warranty.  (*Id.* ¶¶ 58-60.)  Similar to its TSB program, MBUSA implemented another clandestine program to secretly reimburse or pay for repair costs of those Class Vehicles that suffer from the water leak defect and the damage it causes.  These clandestine programs, however, including the 2008 secret TSB, are limited to the most persistent customers and only those who complain loudly enough about the problem, regardless of whether or not their vehicles are covered by MBUSA's 4-year/50,000-mile express warranty.  ( ¶¶ 10-12 & 58-68.)  Defendant never notified Plaintiff or class members about these temporary repairs in violation of California's Secret Warranty Law.  (*Id.* ¶¶ 44-68.)

In January and March of 2010 (with fewer than 45,000 miles on the vehicle's odometer), Plaintiff experienced the water leak defect when water entered and flooded the interior cabin and trunk of his vehicle.  (*Id.* ¶¶ 19-20.)  As a result, Plaintiff brought the vehicle to an authorized Mercedes dealer in Calabasas that confirmed the water leak and charged Plaintiff $200.00 to repair it.[3]

The water leak defect imposes more than a financial burden; it is also a safety hazard.  The alleged defect poses a safety hazard because of the danger of catastrophic engine and/or electrical system failure as a result of the water entering and damaging the vehicles internal components while the vehicle is in operation.[4]

_____

[2] To accomplish this design modification, the TSB instructs dealers, *inter alia*, to "Drill [an] additional drain hole."  (FAC ¶ 55.)

[3] The Calabasas dealer initially charged Plaintiff $200.00 to diagnose and repair the water leak defect, but then reduced that amount to $136.00 when Plaintiff declined to pay several hundred dollars more to repair the water leak defect.  *See* Declaration of Dara Tabesh ("Tabesh Decl.") ¶¶ 6 & 7, Exs. A & B; *see also* FAC ¶ 22 ("[D]ealer advised Mr. Cholakyan that he would have to pay several hundred *more dollars* than he had already paid to repair the water leak and the damage that it had caused. (emphasis added)).

[4] Indeed, the TSB acknowledges that the water leak "in some cases [can be] accompanied with *electrical faults* due to water in the control units."  (FAC ¶ 50.)

1    Thus, the water leak defect can cause engine and electrical system failure, suddenly

2    and unexpectedly, at any time and under any driving condition or speed, thereby

3    contributing to traffic accidents, which can result in personal injury or death.  (*Id.* ¶¶

4    6 & 37.)[5]  Defendant knew and concealed the defects that are contained in every

5    Class Vehicle, along with the attendant dangerous safety problems and associated

6    repair costs, from Plaintiff and Class Members both at the time of sale and repair and

7    thereafter.  As a result of Defendant's conduct, Plaintiff and class members have

8    been harmed and have suffered actual damages.  (*Id.* ¶¶ 16-17 & 128-29.)

9    **III.    ARGUMENT**

10                **A.    MBUSA's Rule 12(b)(1) Motion to Dismiss Should Be Denied**

11                        **1.    Plaintiff properly alleges an injury-in-fact**

12        MBUSA argues that Plaintiff does not have standing under 12(b)(1)[6] because

13    "his vehicle never manifested the defect at issue—*i.e.*, the problem described in the

14    2008 TSB [and that]  [P]laintiff never incurred any out-of-pocket loss because of

15    the alleged defect."  Mot at 5:1-5. To support this argument, MBUSA deliberately

16    misconstrues the allegations of Plaintiff's Complaint, ignores others, and supports

17    its arguments with evidence of dubious admissibility.[7]

18

19    ──────────────

20    [5] The water leak defect is also dangerous in a relatively closed environment like that found inside the Class Vehicles because it can promote mold growth. (FAC ¶ 7 & fn. 1.)

21

22    [6] Jurisdictional challenges under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000).  "However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial."  *Augustine*, 704 F.2d at 1077.  On a motion going to the merits, the court must, of course, employ the standard applicable to a motion for summary judgment.  *Farr v. United States*, 990 F.2d 451, 454 n. 1 (9th Cir.1993).

23

24

25

26

27    [7] *See* Plaintiff's Evidentiary Objections to the Declaration of Troy M. Yoshino ISO Motion against Plaintiff's First Amended Complaint [Relating To Rule 12(B)(1) Standing Motion Only], filed herewith.

28

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

a)      **The water leak defect alleged is not limited to the TSB**

2       MBUSA incorrectly claims that Plaintiff defined "the water leak defect . . .

3   using language from a 2008 TSB . . . ."  (Mot. at 2:1-2.)  In fact, Plaintiff defines

4   the "water leak defect" as "numerous [] design and/or manufacturing defects" that

5   cause the Class Vehicles to be "highly prone to water leaks and flooding,"

6   including the Class Vehicles' defective water drainage system that is susceptible to

7   clogging.  (FAC ¶¶ 3-5 & 21.)  Plaintiff referenced the 2008 TSB to show that

8   Defendant knew the defective nature of the water drainage system and took steps to

9   conceal it.  (*Id.* ¶¶ 5 & 13-14, 51).  Indeed, Plaintiff alleges that the TSB identifies

10  only "one of [] multiple defects" contained in the Vehicles and their water drainage

11  system and MBUSA's temporary repairs (including the drainage modification) fail

12  to permanently fix them.  (*Id.* ¶¶ 9, 13-14 & 89.)  Plaintiff also alleges that the

13  water leak defect goes beyond what is outlined in the TSB (*i.e.*, "water entry at the

14  driver passenger foot well"), given that Plaintiff experienced water leaks in the

15  trunk and "other parts of the vehicle's interior cabin."  (FAC ¶ 21 & fn. 3.)  Thus,

16  Plaintiff's water leak defect allegations and resulting injuries are not limited to the

17  TSB.

18

b)      **Plaintiff suffered an injury-in-fact when his vehicle**

19                  **manifested the alleged defect**

20       Defendant's contention that Plaintiff did not experience the alleged defect is

21  without merit for several reasons.  Plaintiff alleges that the vehicle's water

22  drainage system is defective because it is susceptible to clogging; and that his

23  vehicle manifested this defect when a Mercedes-Benz repair facility he visited

24  before filing suit confirmed that the vehicle's water drainage system was blocked

25  "with leaves and debr[is]."  (*Id.* ¶¶ 4, 23-24 & 51.)[8]  Plaintiff also experienced the

26

27       [8] MBUSA has neither disputed nor has it attempted to rebut the allegation
    that the vehicle's water drainage system is blocked with leaves and debris.  *See
28  AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)

water intrusion described in the TSB.  Relying on its attorney's declaration,
MBUSA claims that during his March 1, 2010 repair visit, "Plaintiff complained of
a leak through the driver's door seal, not the A-pillar drains or firewall."  (Yoshino
Decl. ¶ 2).  This is not correct.  According to the first copy of the March 10 repair
order (Tabesh Decl. Ex. A), Mr. Cholakyan only complained of water leaking into
his trunk ("CUST[OMER] SAYS TRUNK HAS WATER IN AFTER IT RAIN") and into the
vehicle's interior cabin ("CUST SAYS WHEN OPENING DRIVER'S DOOR, WATER
RUSHED OUT").[9]  In addition, Mr. Yoshino's conclusory statement that the leak was
"not [from] the A-pillar drains or firewall" is pure speculation because there is
nothing in the repair order that shows the technician took any steps (*e.g.*, checked
the water drains) to make that determination or draw that conclusion.[10]

Plaintiff also alleges that he experienced the water leak in other parts of the
vehicle not detected by the dealer.  (FAC ¶ 21.)  These allegations alone are
sufficient to rebut MBUSA's argument that Plaintiff never experienced the water
leak outlined in the TSB, which hinges on what the dealer allegedly verified during
one visit.  Finally, even if Plaintiff also experienced some water leaks through the
driver door seals does not mean that the vehicle's water drainage system is not
defective and did not contribute to Plaintiff's ongoing water leak problems.  (*Id.* ¶¶
19-25.)  *See Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168,
1175 (9th Cir. 2010).[11]

([W]hen extrinsic evidence is submitted, the uncontroverted allegations in the
complaint must be taken as true under a 12(b)(1) motion.").

[9] It was the technician who noted that the leak was through the driver's door
seal.  (*See* Yoshino Decl. Ex. A.)  MBUSA did not attach the repair order that
reflects only Mr. Cholakyan's complaints.

[10] In fact, the repair order confirms that Mr. Cholakyan's complaint ("CUST
SAYS WHEN OPENING DRIVERS DOOR, WATER RUSHED OUT") matched the description
of the water leak problem in the TSB.  (FAC ¶ 50 ("If you receive customer reports
. . . of water entry in the driver/front passenger foot well . . . this may be caused by
a few different issues.").  It was the dealer who failed to properly diagnose it.

[11] MBUSA also argues that Plaintiff lacks standing because he "never
incurred any out-of-pocket loss because of the alleged defect."  (Mot. at 5:3-4.)
Not so.  MBUSA has ignored the allegations of Plaintiff's Complaint and other

1         **c)**    **Plaintiff suffered injury-in-fact even if he did not**

2                      **experience the defect or incur out-of-pocket expenses**

3     Article III standing requires plaintiffs to demonstrate an "injury in fact-an

4 invasion of a legally protected interest which is (a) concrete and particularized, and

5 (b) actual or *imminent*, not conjectural or hypothetical." *Lujan v. Defenders of*

6 *Wildlife*, 504 U.S. 555, 560 (1992) . Here, Defendant concedes in its TSB that

7 Plaintiff's vehicle is defective and susceptible to water leaks.  (FAC ¶¶ 50-55.)

8 Nonetheless, MBUSA argues that Plaintiff must wait for a ticking time bomb to

9 explode—that he must actually experience the water leak or risk serious injury

10 while the vehicle is in operation—in order to have standing.[12]  On the contrary,

11 federal courts have recognized that consumers have standing to sue for economic

12 losses arising from safety defects in automobiles even before the defect manifests

13 itself.  *Kearny v. Hyundai Motor Co.*, 2010 U.S. Dist Lexis 68242, at *14 (C.D.

14 Cal. 2010) (Plaintiffs established Article III where the "alleged defect reduced the

15 car's value and deprived the consumer of the benefit of the bargain, even when the

16 alleged defect did not later materialize—*i.e.*, the loss was suffered 'at the moment

17 of purchase."); *Cole v. GMC*, 484 F.3d 717, 723 (5th Cir. 2007) (same).[13]

18 documents (*see* fn. 2, *supra*), as well as the repair order attached to the Yoshino declaration that shows Plaintiff paid $136.50 to repair his water leak problems.

19
20    [12] Indeed, the California legislature enacted the Secret Warranty Law, in part, to immediately provide consumers with manufacturers' available fixes before the defects manifested themselves.  (FAC ¶¶ 46.)

21    [13] MBUSA's relies on several "no injury" products liability cases that are not applicable to the facts of this and were recently rejected in a well-reasoned opinion
22 of Judge Selna.  *See In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, And Product Liability Litigation*, 2010 WL 4867562,
23 at *10 (C.D. Cal. 2010) ("[T]o the extent that cases such as *Contreas* and *Whitson* (or any other cited cases) hold that standing cannot be established absent a
24 manifested defect, and the former cases can be read to support that proposition, the Court disagrees: As long as plaintiffs allege a legally cognizable loss under the
25 'benefit of the bargain theory" or some other legal theory, they have standing." (*See* FAC ¶¶ 16-17.)  Moreover, many of MBUSA's cases are inapposite because
26 they do not involve diminished value of a consumer product due to a safety defect beyond the consumer's control.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 957,
27 961 (9th Cir. 2009) (no diminished value where iPod could be used safely by not playing too loudly as stated on product warning); *Whitson v. Bumbo*, 2009 U.S.
28 Dist. Lexis 32282, at **1, 6 (N.D. Cal. 2009) (no diminished value where baby

**Case No.** CV 10 5944-MMM (JQ)       Page 7

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1

      **B.**     **MBUSA's Rule 12(b)(6) Motion to Dismiss Should Be Denied**

2

         **1.**    **Plaintiff sufficiently alleges his CLRA[14] and UCL claims**

3

      In arguing that Plaintiff fails to state valid CLRA and UCL claims, in part

4

because his allegations cover defects that manifest after expiration of the express

5

warranty period, MBUSA ignores that a consumer can have a reasonable

6

expectation regarding the safety of his vehicle, even after an express warranty has

7

expired.[15]  MBUSA relies only on cases that that do not implicate a consumer's

8

reasonable expectation of *safety*, including *Daugherty v. American Honda Motor*

9

*Co., Inc.*, 144 Cal. App. 4th 824 (2006).  (Mot. at 9:27-10:8.)  In *Daughtery*, unlike

10

here, plaintiffs did not allege a manufacturer's failure to disclose a known safety

11

defect.  The *Daugherty* court specifically noted that because plaintiffs made no

12

allegations regarding safety, "the alleged defect posed no unreasonable risk" and

13

therefore was not material, so no duty to disclose was triggered.  *See Daugherty*,

14

144 Cal. App. 4th at 836.

15

16

17

seat could be used safely by not placing on elevated surface as stated on product warning); *Contreras v. Toyota Motor Sales, Inc.* 2010 WL 2528844, at **3-6 (N.D. Cal. 2010) (Toyota offered evidence that the defect would manifest itself in "extremely low temperatures" and plaintiffs failed to allege the contrary; nor did they allege that it was reasonably likely that they would operate their vehicles in those conditions).

18

19

20

21

    [14] California courts have soundly rejected MBUSA's contention that Plaintiff's CLRA claim fails because, by purchasing a used car, he did not enter into a "transaction" with MBUSA.  (Mot. at 13:21-14:5.)  *See McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 186 (2010) ("We also pause here to note that a cause of action under the CLRA may be established independent of any contractual relationship between the parties.") (citing *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (finding purchasers of used cars have standing to bring CLRA claims against manufacturer.")).

22

23

24

25

26

27

28

    [15] In ruling on a motion to dismiss, the court must accept a plaintiff's allegations as true and construe them in the light most favorable to plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). "Dismissal is inappropriate unless the plaintiffs' complaint fails to state a claim to relief that is plausible on its face."  *Id.* (quotation omitted).  Factual allegations simply must "be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 550, 555 (2007) (internal citations and footnote omitted).  "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible," then the "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" *Id.* (internal quotations omitted).

1    In contrast, the court in *Falk v. General Motors Corp*, 496 F. Supp. 2d 1088,

2    1100 (N.D. Cal. 2007), distinguishing *Daugherty*, denied defendant's motion to

3    dismiss, finding "GM knew and concealed that its speedometers were defective and

4    likely to fail far more often than expected by the consuming public."  The court

5    agreed with plaintiffs that "a faulty speedometer easily would lead to traveling at

6    unsafe speeds and moving-violation penalties."  *Id.*  The court found significant the

7    fact that plaintiffs in *Daugherty* failed to allege safety defects.[16]  Here, the

8    Complaint specifically alleges that MBUSA failed to disclose significant safety

9    issues.  (FAC ¶¶ 4-8 & 36-37.)  Unlike the omissions addressed in *Daugherty*,

10   these omissions are material precisely because they invoke safety concerns. [17]

11       A recent automobile defect case brought in the Central District of California,

12   *Ehrlich v. BMW of North America*, is instructive.  In *Ehrlich*, plaintiffs brought

13   UCL, CLRA, Implied Warranty, and Secret Warranty claims.  Plaintiff accused

14   defendant BMW of failing to disclose its windshields' dangerous propensity to

15   crack.  *Id.* at 3.  This defect implicates safety because a cracked windshield may

16   become dislodged during a roll-over accident, compromising roof-crush resistance,

17   *Id.* at 4.  BMW argued that such safety concerns were speculative, particularly

18   because plaintiff there did not "allege[] that the defective windshields have actually

19   caused injuries in any rollover accidents."  *Id.* at 14-15.  The court disagreed,

20   finding sufficient plaintiff's allegation that he was injured because he had to

21

22       [16]  Many courts have embraced the safety exception in *Daugherty* under
*Falk*'s analysis.  *See, e.g., Marsikian v. Mercedes-Benz USA, LLC*, No. 08-04876

23   AHM (JTLx), 2009 U.S. Dist. LEXIS 117012, at **6-8 (C.D. Cal. May 4, 2009)
(Request for Judicial Notice ("RJN") Ex. 2); *Ehrlich v. BMW of North America*,

24   No. 10-1151 ABC (PJWx) (Chief Judge Audrey B. Collins), at 13:2-14:15 (C.D.
Cal. Aug. 11, 2010), (RJN Ex. 3); *In re Toyota*, 2010 WL 4867562, at **18, 37 &

25   fn.5; *In Re: OnStar Contract Lit.*, 600 F. Supp. 2d. 861, 871-72 (E.D. Mich. 2009).

26       [17]  *Circlli v. Huyndai Motor Co.*, 2009 WL 5788762, at *3 (C.D. Cal. 2009)
(finding defect in vehicle's sub-frame corrosion that manifested itself two years

27   after expiration of warranty and more than 80,000 miles on the vehicle's
odometer is a valid safety concern); *Falk*, 496 F. Supp. 2d at 1100; *Chamberlan*

28   *v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-45 (N.D. Cal. 2005).

OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   replace his cracked windshields, and that the plausible, unreasonable safety risk

2   created by cracked windshields would have been material to the reasonable

3   consumer, even absent allegations that "consumers have been injured by the

4   alleged unreasonable safety risk." *Id.* at 15 (citing *Marsikian*, slip op. at 9

5   (refusing to dismiss CLRA claim based on allegations of a "plausible prospect of a

6   safety problem," as well as the "monetary cost and inconvenience of water damage

7   in the car" is material); *Id.* at 14 ("Consistent with *Falk* and *Daugherty*, the Court

8   concludes that a safety-based exception exists that might create a duty to disclose a

9   defect even after the period of an express warranty.").[18]  Thus, relying heavily on

10   *Falk* and *Marsikian*, the Court denied BMW's motion to dismiss.  *Id.* at 17.

11        As set forth below, by pleading the materiality of an omitted safety fact,

12   Plaintiff has provided the basis for a duty to disclose under California law.

### a)      Plaintiff sufficiently alleges materiality

14        To establish materiality, a plaintiff need only demonstrate that "had the

15   omitted information been disclosed, one would have been aware of it and behaved

16   differently."  *Falk*, 496 F. Supp. 2d at 1095.  Materiality is viewed from the

17   perspective of a "reasonable consumer."  *Id.*  Material facts may include,

18   unreasonable safety defects, *see, e.g.*, *id.* at 1096 (finding speedometer defect

19   causing travel at unsafe speeds material), the *prospect* of a safety defect, *Ehrlich*,

20   slip op. at 15 (quoting *Marsikian*, slip op. at 16-17 ), as well as the monetary costs

21   associated with such defects (including cost of repairs).[19]  Here, Plaintiff has

_____

[18] In examining "intent to defraud," (Mot. at 13:11-20), Defendant mischaracterizes case law by stating that this circuit necessarily rejects claims of safety-related defects where a plaintiff has not yet experienced the safety problem. For example, in *Meaunrit v. Pinnacle Foods Group*, 2010 U.S. Dist. LEXIS 43858, at **21-26, the court did not dismiss the claims because plaintiffs had not experienced the alleged safety concerns.  The UCL and CLRA claims were dismissed because the court found the alleged misrepresentation not to be misleading, and moreover, those claims were preempted by federal law.  *Id.*

[19] *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008) (Court denied motion to dismiss even when plaintiff's water leak defect manifested after the express warranty period had expired).

satisfied the pleading requirements for materiality.  The Complaint alleges the materiality of the water leak defect, (FAC ¶¶ 4-8, 37 & 40), the need for repeated repairs or replacements, (*id.* ¶¶ 9 & 12-13), and the significant safety dangers posed by the defect, (*see, e.g.*, *id.* ¶¶ 4-8 & 36-37).  Further, Plaintiff and prospective class members would not have bought or leased the Class Vehicles or would have paid less for them had they know about the water leak defect and/or the monetary costs associated with repairing the problem.  (*Id.* ¶¶ 9-10, 38 & 94-96.)

MBUSA, however, misconstrues Plaintiff's safety allegations and the law governing the adequacy of those allegations.  First, MBUSA denies that the water leak defect is a safety issue because Plaintiff does not plead that he actually experienced engine failure.  (*See* Mot. at 11:6-12:7.)  Pleading the existence of an unreasonable safety risk, however, does not require pleading actual examples of injury or death due to the safety defect.  *See Ehrlich*, slip op. at 15.[20]

In *Marsikian v. Mercedes-Benz*, the plaintiffs accused MBUSA of failing to disclose a defect in the air intake system of the automobiles.  Slip op. at 2-3.  The air intake system was allegedly "susceptible to clogging," which could cause "substantial electrical failure," which in turn could cause traffic accidents.  *Id.* at 2. MBUSA argued that plaintiffs did "not allege any specific incidents suggesting that there might be a safety problem" and that any such safety concern was purely speculative.  *Id.* at 8.  The court disagreed and found that MBUSA's contentions were better suited to summary judgment because "it is not implausible that the flooding would cause 'catastrophic engine and electrical failure system failure' while the car is on the road."  *Id.* at 9.

---

[20] As the *Ehrlich* court explained: "The alleged unreasonable risk of safety created by compromised windshields during rollover accidents is relevant to the materiality of BMW's omissions, and Plaintiff has alleged a plausible unreasonable safety risk that would have been material to the reasonable consumer."  Slip op. at 15 (citing *Marsikian*, slip op. at 9).

Here, Plaintiff and Class Members experienced manifestation of the water leak defect and were injured by having to pay to diagnose and repair the problem.[21] They need not need to suffer an actual injury to have a valid claim under California's consumer protection statutes.  Moreover, it strains credulity for MBUSA to contend that water leaking into a vehicle's electrical components—something an automobile's design is intended to prevent—does not implicate prospective safety concerns of the reasonable consumer.[22]

Defendant ignores this point by relying exclusively on cases that do not implicate safety-related defects.  (Mot. at 8:28-10:8.)  For example, Defendant cites and quotes *Smith*, 2010 U.S. Dist. LEXIS, at *15, for the proposition that failure of a vehicle part after a warranty expires "would render meaningless time/mileage limitations on warranty coverage."  But even *Smith* distinguishes a consumer's economic expectations from his safety expectations: "[a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury

[21]  MBUSA's reliance on *Tietsworth v. Sears, Roebuck & Co.*, 2010 WL 1268093, at *20 (N.D. Cal. 2010), is also misplaced.  There, the court rejected a safety-based disclosure obligation because "[t]here are no factual allegations that any named Plaintiff or any identifiable member of the prospective class actually experience a malfunction.").  Here, Plaintiff and prospective class members have experienced the water leak defect.  (FAC ¶¶ 19-20 & 39.)  This is not speculative.

[22]  Defendant's reliance on *Smith v. Ford*, 2010 U.S. Dist. LEXIS 95122, at **28-29 (N.D. Cal. 2010), is also misplaced.  (*See* Mot. at 11:20-28.)  There, on summary judgment, the court found that plaintiffs could not show that the defect alleged, failure of ignition locks, could cause an inability to shut off a vehicle's engine.  *Smith*, 2010 U.S. Dist. LEXIS 95122, at *29.  Here, Plaintiff adequately alleges that the water leak defect can cause engine failure by allowing water to leak into a vehicle's electrical components.  (FAC ¶¶ 6, 37 & 50 ("*electrical faults due to water in the control units*"); *see e.g.* RJN Ex. 1 (showing battery in trunk).)  To the extent Defendant seeks to rely on *Smith* to dispute this, it is not appropriate to do so at the pleadings stage.  *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1325 (9th Cir. 1993) (whether disposable lighter posed safety risk was a jury question); *Sanchez v. WalMart Stores, Inc.*, 2008 WL 3272101 (E.D. Cal. 2008) (Jury questions preclude motion for summary judgment of CLRA and UCL claims based on allegedly unsafe child stroller).

Further, Defendant miscites *Daugherty*, 144 Cal. App. 4th at 836, when it claims that there, "plaintiff alleged that the defect would result in catastrophic engine failure."  (Mot. at 11:24-28.)  The court expressly noted that the only "unreasonable risk" alleged by plaintiff was the "cost of repairs in the event the defect causes an oil leak."  *Daugherty*, 144 Cal. App. 4th at 836.

1    when he buys a product on the market . . . ."  *Id.* (quoting *Seely v. White Motor*
2    *Co.*, 63 Cal. 2d 9, 18 (1965)).

3                      **b)      MBUSA was under a duty to disclose material facts**

4              Under California law, a duty to disclose material facts may arise in several

5    circumstances, including: (1) when the defendant had exclusive knowledge of

6    material facts not known to the plaintiff, and (2) when the defendant actively

7    conceals a material fact from the plaintiff.  *Falk*, 496 F. Supp. 2d at 1094-96

8    (citation omitted).  Here, Plaintiff pleads facts sufficient to show a duty to disclose

9    under these two circumstances.

10                          **(1)      *MBUSA had exclusive knowledge of material***

11                                   ***facts***

12             MBUSA was obligated to disclose the water leak defect because it was a

13   material safety fact within its exclusive knowledge.  *See Shapiro v. Sutherland*, 64

14   Cal. App. 4th 1534, 1544 (1998).[23]  Here, Plaintiff has met his obligation to plead

15   both (1) materiality, (FAC ¶¶ 4-14 & 36-37), and (2) how MBUSA acquired its

16   exclusive knowledge of these material facts since at least 2002, (*id.* ¶¶ 3 & 38).

17                          **(2)      *MBUSA actively concealed material facts***

18             Plaintiff alleges that MBUSA actively concealed the water leak defect by

19   withholding information about the systematic nature of the problem from consumers

20   at the time of purchase, repair and thereafter.  (FAC ¶¶ 39.)  Indeed, MBUSA

21   continues to actively conceal the nature of the defect even though it is aware of an

22   alternative design that "'permanently fix[es] the problem.'"  (*Id.* ¶ 129.)

23   Additionally, MBUSA actively concealed the water leak defect by providing a free

24   repair, replacement, and/or modification program to consumers who complained

25   loudly without disclosing the full nature of the program to prospective Class

26   ────────────────────

27         [23] The Ninth Circuit has held that under California law "a duty to disclose
     can . . . arise when one party has superior knowledge" of material facts.  *Funk v.*
28   *Sperry Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988).

1  Members.  (*Id.* ¶¶ 10-12.)  Finally, MBUSA actively concealed the existence of the

2  free repair, replacement, and/or modification program.  (*Id.*)  These allegations are

3  sufficient to state a valid claim.[24]

4  ## 2.  Plaintiff's allegations satisfy Rule 9(b)

5  Plaintiff's fraud-based claims are sufficient under Rule 9(b).  Typically,

6  "[a]verments of fraud must be accompanied by 'the who, what, when, where, and

7  how' of the misconduct charged."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

8  1997).  Claims based on an omission or concealment, however, "can succeed

9  without the same level of specificity required by a normal fraud claim."  *Baggett v.*

10  *Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  This is

11  because a plaintiff pursuing an omissions-based claim will "not be able to specify

12  the time, place, and specific content of an omission as precisely as would a plaintiff

13  in a false representation claim."  *Id.* (*citing Falk v. General Motors Corp.*, 496 F.

14  Supp. 2d 1088, 1098-99 (N.D. Cal. 2007)).  Thus, inability of Plaintiffs to specify

15  the time, place and content of Defendants' omissions will therefore not bar their

16  claims under Rule 9(b).  *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d at

17  1310 (N.D. Cal. October 1, 2008) (citing *Falk*, 496 F. Supp. 2d at 1099).

18  At the heart of this case is MBUSA's failure to disclose the defective nature

19  of the Class Vehicles to consumers.  Plaintiff's allegations provide the requisite

20  notice of the defect.  (FAC ¶ 15.)  Plaintiff has identified the material information

21  MBUSA knew[25] since 2002 and withheld from consumers, including the defective

---

22  [24] *See Ehrlich*, slip op. at 16:11-17:5 (finding allegations of withholding
23  information learned from internal sources and customer complaint, as well as
    failure to disclose replacement program to all consumers and concealing the
24  program by calling the replacements "goodwill" adjustments" adequate to allege
    active concealment); *Marsikian*, slip op. at 8 (same) *see also Lovejoy v. AT&T*,
25  92 Cal. App. 4th 85, 96 (2001); *Falk*, 496 F. Supp. 2d at 1097.

26  [25] Defendant's contention that, under *Kearns v. Ford Motor Co.*, 567 F.3d
    1120, 1126 (9th Cir. 2009), "'intent to defraud' must be pled with specificity,"
27  (Mot. at 12:11-12 (quoting *id.*)), is simply not true, as Rule 9(b) expressly states
    that "[m]alice, intent, knowledge, and other conditions of a person's mind may be
28  alleged generally."  *See Iqbal*, 129 S. Ct. at 1954 (noting that while state of mind
    may be alleged generally, such allegations must nevertheless satisfy the less

1   nature of the Class Vehicles and the consequences of the defect.  (*Id.* ¶¶ 3-7.) [26]

2   Plaintiff also alleges with particularity that: MBUSA possessed exclusive

3   knowledge of aggregate information about the problem, (*id.* ¶ 38); the materiality

4   of that information, (*id.* ¶¶ 4-8, 16, 37 & 40); Plaintiffs' reliance on the materiality

5   of the non-disclosed information, (*id.* ¶ 16, 91, 118 & 128); and damages (*id.* ¶¶

6   16, 22 & 39).  *See Falk*, 496 F. Supp. 2d at 1099 (finding similar allegations to be

7   sufficient under Rule 9(b)); *In Re Toyota*, 2010 WL 4867562, at *10 (same); *Shin*

8   *v. BMW of North America*, 2009 WL 2163509, at *4 (C.D. Cal. 2010) (same);

9   *Marsikian*, slip op. at 11 (same).

10   ### 3.      **Plaintiff Adequately Alleges Breach of Implied Warranty**

11   #### a)      **At the time of sale, Plaintiff's vehicle was unfit for**

12   **its ordinary purpose**

13   MBUSA claims it did not breach the implied warranty because Plaintiff's

14   car provided reliable and safe transportation until 2010.  (MTD at 16-17.)

15   MBUSA's argument "ignores the distinction between unmerchantability caused

16   by a latent defect [at the time of sale (FAC ¶ 120)] and the subsequent discovery

17   of the defect."  *Ehrlich* Stip. at 22-24 (citing *Mexia v. Rinker Boat Co.*, 174 Cal.

18   App. 4th, 1297, 1307-08) ("[T]he fact that the alleged defect resulted in

19   destructive corrosion two years after the sale of the boat does not necessarily

20   stringent requirements of Rule 8).

21   [26] Defendant's reliance on a series of NHTSA petition denials to dispute that MBUSA knew of a safety concern fails for several reasons.  First, NHTSA

22   regulations were designed as a preventative measure "supplementary of and in addition to the common law of negligence and product liability."  *United States v.*

23   *General Motors Corp.*, 518 F.2d 420, 434 (D.D.C.1975); *Larsen v. General Motors Corp.*, 391 F.2d 495, 506 (8th Cir.1968).  The standards of automobile design

24   contained in such regulations set forth the minimum performance requirements for that system.  *Perry v. Mercedes Benz of North America, Inc.*, 957 F.2d 1257, 1260

25   (5th Cir. 1992).  Thus, compliance with NHTSA safety standards does not provide an automobile manufacturer with total relief from liability.  *Dawson v. Chrysler*

26   *Corp.*, 630 F.2d 950, 957-58 (3rd Cir. 1980).  Third, the mere fact that NHTSA does not find engine stalling in certain situations to be a safety defect does not mean that

27   it is not here.  Indeed, if NHTSA had a *per se* rule that engine stalling is not a safety concern, it would not have even investigated these engine stalling complaints.

28

1    mean that the defect did not exist at the time of sale.")).  Moreover, MBUSA's

2    argument that despite the defect, plaintiff's vehicle is merchantable as a matter of

3    law because it provided Plaintiff with transportation is also without merit.  *See*

4    *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) ("We reject

5    the notion that merely because a vehicle provides transportation from point A to

6    point B, it necessarily does not violate the implied warranty of merchantability.

7    A vehicle that smells, lurches, clanks, and emits smoke over an extended period

8    of time is not fit for its intended purpose.").  Indeed, MBUSA admits in its secret

9    TSB that the class vehicles are unmerchantable at the time of sale because it has

10   allegedly found a solution that can "permanently fix the water drain problem."[27]

11              **b)      MBUSA's breach occurred at the time of sale**

12        MBUSA claims that the Song-Beverly Act limits the application of implied

13   warranties here to defects that manifest themselves "in no event 'less than 30 days

14   nor more than three months following the sale . . . .'"  (Mot. at 17:6-7 (quoting Cal.

15   Civ. Code § 1795(c)).)  Invoking a half-century of California precedent, however,

16   the California Court of Appeals considered and rejected a similar argument in

17   *Mexia*, 174 Cal. App. 4th at 1305, concluding that "a product is rendered

18   unmerchantable, and the warranty of merchantability is breached, by the existence

19   of the unseen defect, not by its subsequent discovery." *See also Ehrlich* slip op. at

20   22-28 (discussing and citing with approval *Mexia*, and distinguishing *Hovsepian v.*

21   *Apple, Inc.*, 2009 WL 2591445 (N.D. Cal. 2009) and *Tietsworth v. Sears, Roebuck*

22   *& Co.* (noting that as long as the defect existed at the time of sale "its subsequent

23   discovery beyond that time did not defeat an implied warranty claim")).  Here,

24   Plaintiff alleges that MBUSA breached the implied warranty at the time of sale

25

26        [27] California case law is clear that there is no requirement that that the
     buyer allow the seller or manufacturer an opportunity to repair the product prior
27   to bringing an action for breach of implied warranty of merchantability.  *Mocek*
     *v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406-07 (2003).
28

1    when it sold to Plaintiff and prospective Class Members vehicles that it knew

2    suffered from the water leak defect.  (FAC ¶¶ 3 & 114-21.)  Accordingly, Plaintiff

3    has adequately stated a claim for breach of implied warranty.  *See Ehrlich*, slip op.

4    at 22:3-27:2.[28]

5    **4.    Plaintiff's Secret Warranty Claims Should Not Be Dismissed**

6    MBUSA's secret warranty adjustment program qualifies as an unlawful

7    "adjustment program" under California's Motor Vehicle Warranty Adjustment

8    Programs Act ("MVWAPA" or "Secret Warranty Law") and therefore violates the

9    UCL.[29] The Secret Warranty Law imposes certain duties on vehicle manufacturers.

10   Among these are to notify consumers about the covered "condition" and the "terms

11   and conditions of the program."  Cal. Civ. Code § 1795.92.

12   Plaintiff has alleged that MBUSA does not cover water leaks under any

13   warrant because MBUSA considers water leaks to be the result of outside influence

14   and not a defect in material or workmanship covered by the warranty.  (FAC ¶ 58.)

15   As discussed above in § II, Defendant instituted clandestine programs to cover the

16   water leak and the damage that it causes under warranty for those consumers who

17   complained loudly enough regardless of whether their vehicle was covered by

18   MBUSA's express warranty.  (*Id.* ¶¶ 9-12, 44-68.)  The code names for these

19   policies or programs are "good will adjustments" or "policy adjustments."  (*Id.* ¶¶

20   10-12 and 58-68.)  Defendant never notified Plaintiff or Class Members about

21

22   [28] Also, MBUSA's claim that Song-Beverly requires "vertical privity" has
     been soundly rejected.  *Ehrlich*, slip op. at 21:3-22:2 and fn.9 (citing, among other

23   sources, *Witkin* for proposition that Song-Beverly eliminates vertical privity
     requirement and distinguishing split of authority on basis that courts finding

24   vertical privity requirement ignored the plain language of statute, which the court
     found dispositive on the matter).

25   [29] MVWAPA defines an "adjustment program" as a "program" or "policy"
     that (1) "expands or extends the consumer's warranty beyond its stated limit," or

26   (2) "under which a manufacturer offers to pay all or any part of the cost of
     repairing, or to reimburse consumers for all or part of any part of the cost of

27   repairing, any condition that may substantially affect vehicle durability, reliability,
     or performance."  Cal. Civ. § 1795.90(d).  If the MBUSA program satisfies either

28   of the criteria set forth in Section 1795.90(d), it is an "adjustment program."

1  these cost-free temporary repairs, design modification, and reimbursement

2  programs in violation of the Secret Warranty Law, despite its duty to do so.[30]

3  Thus, MBUSA has extended or expanded the consumer's warranty beyond its

4  stated limit in violation of the Secret Warranty Law.  (*Id.* ¶¶ 59- 62.)  Further, the

5  clearing/cleaning, resealing, and water drainage system modifications that the TSB

6  is intended to address "substantially affect the vehicle durability, reliability, or

7  performance."  Thus, these are also considered "adjustment programs" under the

8  Secret Warranty Law for this reason as well.  (*Id.* ¶ 60.)  These allegations give rise

9  to a valid Secret Warranty Claim.[31]

10  　　　MBUSA does not dispute the fact that it never gave notice to Plaintiff or the

11  prospective Class Members of its 2008 secret TSB and offer to pay for water leak

12  related damages program.[32]  Rather, MBUSA contends that the TSB was simply

13  issued to "verif[y] coverage that already existed."  (Mot. at 14:20.)  However,

14  MBUSA fails to explain why such a verification is needed if MBUSA is not

15  deviating from its standard warranty.[33]  Indeed, nothing in MBUSA's warranty

16  covers water leaks.  Contrary to MBUSA's assertions, (*id.* at 15:19-23), MBUSA's

17  decision to offer the free repair of the water leak defect is not done on an *ad hoc*

18  basis.  (FAC ¶ 67.)  It is made pursuant to a systematic policy designed to pacify

19

20  　　　[30] *See* Cal. Civ. Code §1795.92 ("A manufacturer who establishes an
adjustment program shall implement procedures to assure reimbursement of each

21  consumer . . . who incurs expenses for repair of a condition prior to acquiring
knowledge of the program.").

22  　　　[31] *See Ehrlich*, slip op. at 19:16-23 (finding similar allegations sufficient);
*Marsikian*, slip op. at 10 (finding almost the same exact allegations sufficient).

23  　　　[32] *See Morris v. BMW*, 2007 U.S. Dist. Lexis 85513, at *18 (N.D. Cal. 2009)
("Defendants do not deny that they failed to inform the public of the of the

24  adjustment program stemming from the TSB.  Thus, Plaintiffs have successfully
alleged violations of the Secret Warranty Act.").

25  　　　[33] Indeed, nothing in MBUSA's warranty covers water drainage

26  cleaning/clearing, the water leak defect, or the damage it causes.  (FAC ¶¶ 59-62;
*see, e.g.*, MBUSA's Request for Judicial Notice Ex. B (Docket No. 11-2) ("Service

27  and Warranty Information 2005 Passenger Cars, Normal Maintenance Is Owner's
Responsibility: *Cleaning* and polishing . . . are some of the normal maintenance

28  services cars require and are not covered by this warranty.") (Emphasis added.)

the most vocal consumers.  (*Id.*)  MBUSA's denial of these allegations is not

sufficient to defeat Plaintiff's claim, where allegations must construed in Plaintiff's

favor.[34]

Finally, MBUSA cannot avoid its responsibilities under the Secret Warranty

Law by contending its adjustment programs were not secret because its dealers, who

had been provided the TSBs, had a duty to provide notice to consumers about those

TSBs.  (Mot. at 15:9-12.)  While dealers do have this duty, *see* Civil Code §

1795.91, so too did MBUSA have a duty to notify all Class Vehicle owners and

lessees of its adjustment programs, *see id* § 1795.92(a), and a duty to notify all

dealers of the terms and conditions thereof, *see id.* § 1795.92(c).[35]  Plaintiff alleges

MBUSA failed to satisfy these duties.  (FAC ¶¶ 64, 67.)  Merely providing the TSB

to its dealers does not satisfy MBUSA's duty under Civil Code § 1795.92(c),

because MBUSA directed its dealers to implement the adjustment programs "to

pacify the most vocal customers so as to preserve Defendant's reputation."  (FAC ¶

61.)  Indeed, it is reasonable to infer that MBUSA had done so because the dealer

never informed or offered Plaintiff the cost free repairs.  (FAC ¶ 22.)[36]  Thus,

---

[34] *See Ehrlich*, slip op. at 19:8-13 ("BMW argues that the TSB
conclusively demonstrates that, instead of instituting a secret warranty for
defective windshields, BMW engaged in the type of 'ad hoc adjustments made
by a manufacturer on a case-by-case basis' permitted by statute.  However, that
determination cannot possibly be made on a motion to dismiss because it rests on
the parties' conflicting interpretations of Plaintiff's allegations.").

[35] Indeed, the legislative history to the Secret Warranty Law emphasizes the
need for such regulation: "According to supporters of the bill, manufacturers to
avoid recalls—either because the defect is minor or to avoid publicity and higher
costs—often issue *"technical service bulletins"* to their dealers.  Copies of these
service bulletins are sent to NHTSA, whether or not they are safety related, but not
directly to the owners of the cars.  [¶]  Consumers in the market for a new car are
in the dark Dealers do not routinely disclose to customers that a particular vehicle
has a known defect [absent a safety recall].  This prevents new car buyers from
factoring this information into their purchasing decision."  (Senate Committee on
Judiciary, 1993-94 Session (SB 486) at 3 (emphasis added) (RJN Ex. 4).)  Thus, it
is clear that the Secret Warranty Law was implemented to prevent the exact
conduct Plaintiff alleges regarding MBUSA.

[36] Defendant may argue on Reply that because Plaintiff purchased his vehicle
after the TSB was issued, it did not have a duty to notify Plaintiff of its adjustment
programs.  This is not the point.  Plaintiff's allegations state that MBUSA did not

1  Plaintiff's Secret Warranty Law Claim should not be dismissed.

2          **C.      MBUSA'S Motion to Strike Should Be Denied**

3                  **1.      Motions to strike class allegations are disfavored**

4          When the class action allegations "'address each of the elements of Rule 23,

5  relate to the subject matter of the litigation, and are not redundant, immaterial, or

6  impertinent,' the court must find that the allegations—viewed in the light most

7  favorable to plaintiffs—are sufficient to survive a motion to strike." *Defazio v.*

8  *Hollister, Inc.,* 2008 WL 958185, at *8 (E.D. Cal. 2008) (citing *Clark*, 231 F.R.D. at

9  407).  MBUSA fails to argue, much less show that Plaintiff's class action allegations

10  are "redundant, immaterial, impertinent, or scandalous," nor does it point out any

11  allegation bearing no essential or important relationship to a claim.  Instead,

12  MBUSA attempts to brief the *merits* of Plaintiff's ability to obtain class certification

13  prior to any discovery having taken place and prior to the filing of a motion seeking

14  certification.  Thus,  MBUSA's motion should be denied as procedurally improper

15  and substantively deficient.[37]

16          While MBUSA argues that a defendant may move to strike class allegations,

17  it fails to mention that Rule 12(f) motions are regarded with *disfavor* and are *rarely*

18  *granted*.  *Clark*, 231 F.R.D. at 406.[38]  "[T]he better course is to deny such a motion

19  because the shape and form of a class action evolves only through the process of

20  discovery." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609,

21
_____
22  satisfy any of its notice requirements, so if the programs were never publicized, no
    Class Member could have been aware of it.  For this reasons, Plaintiff now brings
23  this action on behalf of himself and prospective Class Members seeking injunctive
    relief in an order that will compel MBUSA to satisfy its obligations under
24  California's Secret Warranty Law.  (FAC ¶ 131(c).)

25          [37] Defendant's motion to strike purports to be brought under the authority of
    Rule 23(c) and 12(f).  Because Rule 23(c) does not grant the Court authority to
26  strike class allegations, but only to decide whether to certify a class, Plaintiff only
    addresses the motion under Rule 12(f).

27          [38] *See also Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008);
    *Misra v. Decision One Mortgage Co., LLC,* 673 F. Supp. 2d 987, 994 (C.D. Cal.
28  2008); *Thorpe v. Abbott Lab, Inc.,* 534 F. Supp. 2d 1120, 1125 (N.D. Cal.2008).

615-16 (N.D. Cal. 2007).[39] Even where courts have expressed serious concerns about the propriety of a class action, they have still refused to address class certification at the pleading stage on the grounds that discovery and a fully briefed record are necessary to make an informed decision.[40] Here, Plaintiff's class allegations are sufficient and MBUSA's motion should be denied. Even if this Court were to consider the motion on the merits, it still should be denied.

### 2. The FAC adequately alleges a readily ascertainable class

MBUSA asserts that Plaintiff has not alleged an ascertainable class, as some members of the prospective class have no standing because: (1) there are no allegations that prospective class members have suffered from the alleged "water leak defect," or (2) they have suffered no out-of-pocket losses because the defect may have been covered under warranty.[41] To the contrary, Plaintiff did allege that the prospective class has suffered from the water leak defect. (*See* FAC ¶17.) Moreover, MBUSA's argument that those Class Members whose damage was covered under warranty would not have suffered an "actual injury" is irrelevant, because Plaintiff alleges that MBUSA "does not cover [water leaks] under warranty." (*Id.* ¶10.) Arguments based on a "selective reading" of the FAC should be rejected.[42] "As long as the general outlines of the membership of the class are

---

[39] *See also Collins v. Gamestop Corp.*, 2010 WL 3077671, at \*\*2-3 (N.D. Cal. 2010); *Brazil v. Dell Inc.*, 2008 WL 4912050, at \*3 (N.D. Cal. 2008); *Shabaz v. Polo Ralph Lauren Corp*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 973 (C.D. Cal. 2007).

[40] *See, e.g., Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 WL 112919, at \*4 (N.D. Cal. 2009); *Brazil*, 2008 WL 4912050, at \*4.

[41] The cases relied upon by MBUSA to support these arguments are inapposite. For example, *Bishop v. Saab Automobile, A.B.*, 1996 WL 331500200 (C.D. Cal. Feb. 16, 1996), was issued at the Class Certification stage, not during pleadings. In *Briehl v. General Motors Corp*, 172 F.3d 623 (8th Cir. 1999), the Court relied on the fact that the plaintiffs failed to allege that the vehicle part at issue malfunctioned or failed. Of course, here Plaintiff has made such allegations.

[42] *See also, Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 832 (D. Minn. 2010) (denying motion to strike class allegations on the basis that some prospective class members might not have suffered from the alleged defect); *McGregor v. Uponor, Inc.*, 2010 WL 55985, at \*6 (D. Minn. 2010) (distinguishing *Briehl* as named plaintiffs had alleged damages, and denying motion to dismiss).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   determinable at the outset of the litigation, a class will be deemed to exist."

2   *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (certifying

3   class) (internal citations omitted).  Plaintiff alleges such a class and therefore

4   MBUSA's motion should be denied.  *See Wolin infra*.

5         **3.**   **Plaintiff is a typical and adequate class representative**

6       MBUSA next argues that Plaintiff is not a typical or adequate class member

7   for four reasons: (1) Plaintiff does not personally claim out-of-pocket losses as a

8   result of the water leak defect, (2) Plaintiff's express warranty had expired, (3)

9   Plaintiff has not received coverage under the "secret warranty," and (4) Plaintiff's

10  implied warranty had expired.  These arguments are meritless.  With regard to the

11  first, Plaintiff has indeed suffered out-of-pocket losses due to the water leak defect.

12  (*See supra* § 3(A)(1)(b).)  The other three arguments are questions that relate to the

13  extent of damages only and therefore cannot defeat typicality.

14      Plaintiffs are typical of the class if "other members have the same or similar

15  injury, whether the action is based on conduct which is not unique to the named

16  plaintiffs, and whether other class members have been injured by the same course of

17  conduct."  *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168 (9th Cir.

18  2010) (reversing denial of class certification).[43]  Here, Plaintiff clearly has the same

19  injury (water damage to the interior of his vehicle) as that of the prospective class,

20  which was caused by the same course of conduct (defendant's creation and

21  concealment of the water leak defect) of MBUSA.  Whether a portion of Plaintiff's

22  damage could be covered under warranty "goes to the extent of [his] damages and

23  not whether [he] possess[es] the same interest and suffered the same injury as the

24  class members."  *Wolin* at 1175 (quotation omitted).  Accordingly, plaintiff satisfies

25  the typicality requirement of Rule 23(a).

26

27         [43] See also, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir.
1998)("representative claims are 'typical' if they are reasonably co-extensive

28  with those of absent class members; they need not be substantially identical.").

### 4.      The class claims predominate over any individual issues

MBUSA essentially suggests that all automobile defect cases involve inherently individualized causation determinations such that class-wide litigation is inappropriate.  The Ninth Circuit recently rejected this argument in *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). There, Land Rover similarly argued that in order to determine what was causing the premature tire wear, a court would have to make individual inquiries of each class member, which would make a class action unmanageable.  *Id.* at 1176.  In rejecting this argument, the court held that because the plaintiffs allege their injuries were from a single and specific defect, class treatment was appropriate.  *Id.*  Similarly, Plaintiff alleges that both his injuries and those of the prospective class were caused by specific defects in the Class Vehicles' water drainage system.  Accordingly, class treatment is appropriate. MBUSA's additional argument that individual reliance[44] issues justify striking Plaintiff's class allegations should be rejected for several reasons.  Not only is the determination of whether common issues predominate reserved for the class certification analysis, but individual reliance issues are not a factor for unnamed class members in any event.[45] Like MBUSA here, the defendant in *Collins* argued that a "fraud claim would require individualized inquiries making class treatment inappropriate, and the UCL and CLRA prospective classes cannot be certified because they include individuals who did not rely on the allegedly concealed facts." *Collins,* 2010 WL 3077671, at *2.  The court denied defendant's motion to strike class allegations, holding that a presumption of reliance by the class members could arise, thereby precluding the predominance of individual issues.  *Id.* at *3 (*citing Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)).

---

[44] Even if individual reliance is required, Plaintiff alleges such reliance here.  (*See* FAC ¶¶ 16, 118, and 128.)

[45] *See Plascencia v. Lending 1st Mortg.* 259 F.R.D. 437, 448 (N.D. Cal 2009); *Estrella v. Freedom Financial Network, LLC*, 2010 WL 2231790, at *10 (N.D. Cal. 2010).

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Similarly, the court in *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), relying heavily on *Tobacco II* and *Steroid Hormone Product Cases*, specifically rejected defendants' arguments that the class could not be certified because the plaintiffs' UCL, CLRA, and common law fraud claims required individualized proof of reliance. *Id.* at 376-79. The *Chavez* court explained that an individual reliance analysis on each of these three claims was unnecessary, as reliance could be presumed. *Id.* Indeed, other cases with similar facts as this one have been certified.[46]

### 5.    Ruling on a statute of limitations defense is premature

Determinations of whether claims by some absent class members are barred by applicable statute of limitations ("SOL") should be addressed in a motion for class certification or partial summary judgment because issues of "tolling" with respect to unnamed class members cannot be determined at the pleading stage. *Dalton v. Lee Publication, Inc. et al.*, 2009 WL 57113, at *2 (S.D. Cal. 2009). This is because "questions of when the class should have known that their [product] had failed and that such failure was a result of [Defendant's] product are factual questions which cannot be determined [at the pleading stage]." *Cartwright et al. v. Viking Industries, Inc.*, 249 F.R.D. 351, 355 (E.D. Cal. 2008). However, if the Court addresses the SOL arguments now, the motion should be denied.

The statute of limitations for a claim sounding in fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake." *Falk*, 496 F. Supp. 2d at 1100 (quoting Cal. Civ. Proc. Code §

---

[46] *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008) (allegedly defective flywheels); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (allegedly defective engine intake manifolds); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (allegedly defective throttle body assembly); *see also Wolin v. Jaguar Land Rover North America*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (reversing denial of class certification in a case regarding allegedly defective tire alignment).

338(d)).[47]  Under the discovery rule, the cause of action does not accrue until discovery of all of the elements of the cause of action under plaintiff's consumer protection statutes.[48]  *See, e.g.*, *Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal. App. 4th 1018, 1029 (2000).

As the Court explained in *Falk*, because plaintiffs pled that the defendant had "superior knowledge" and should have known the vehicles were defective, "defendant's argument that plaintiffs should have been on notice of the defect when they purchased the vehicles fails at the pleading stage." *Falk*, 496 F. Supp. 2d at 1100.  The same result follows here.  Plaintiff alleges that neither he, nor the class knew about the defective nature of the Class Vehicles, and that the manufacturer did.  (FAC ¶¶ 3, 7, 13-15, 37-38, 68-70, 88.)  Plaintiff also alleges when and how the defect was discovered, as well as the inability to discover the defect earlier despite the exercise of reasonable diligence.  *Id.*  On the other hand, MBUSA had "superior knowledge" of the defect and failed to disclose it to the Class at the time of purchase and thereafter.  *Id*.  These allegations are sufficient.[49]

## IV.    CONCLUSION

For the foregoing reasons, MBUSA's Motion should be denied.

Dated: January 10, 2011        By:   /s/
                                     Dara Tabesh
                                     Attorney for Plaintiff

---

[47] As discussed in *Ehrlich,* slip op. at 27-28, with regard to Plaintiff's cause of action under the Song-Beverly Act, the 4-year statute of limitations does not begin until after the express warranties of the Class Vehicle has expired.  Here, Plaintiff's 7 year/100,000 miles certified pre-owned express warranty has not expired.

[48] As the Court is aware, the Supreme Court will soon decide the issue of whether the delayed discovery rule applies in UCL cases in *Aryeh v. Canon Bus. Solutions, Inc.*, 185 Cal. App. 4th 1159 (2010).  Accordingly, this Court should refrain from making a decision on this issue until then.

[49] The fact that some class members may have experienced the problem does not mean that they had discovered MBUSA's omissions at that time. *Chamberlan v. Ford Motor Company*, 369 F. Supp. 2d 1138, 1148 (N.D. Cal. 2005).  This is particularly true where MBUSA has concealed from Plaintiff and the prospective class the true nature of the problem.