Troy M. Yoshino, No. 197850
Matthew J. Kemner, No. 188126
Eric J. Knapp, No. 214352
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA 94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:    tyoshino@cbmlaw.com
          mkemner@cbmlaw.com
          eknapp@cbmlaw.com

Attorneys for Defendant
Mercedes-Benz USA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TIGRAN CHOLAKYAN, individually, and on behalf of a class of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> MERCEDES-BENZ USA, LLC, <br><br> Defendant. | No. 10-cv-05944-MMM (JC) <br><br> **MERCEDES-BENZ USA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF STANDING UNDER FED. R. CIV. P. 12(B)(1); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  November 28, 2011 <br> Judge: Hon. Margaret M. Morrow <br> Time:  10:00 a.m. |

CBM-MERCEDES\SF522897.2

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

I.   PLAINTIFF NOW MUST PRODUCE EVIDENCE TO ESTABLISH HIS STANDING TO MAINTAIN THIS LAWSUIT .......................................................................................... 4

II.  PLAINTIFF LACKS STANDING BECAUSE HE CANNOT ESTABLISH THAT HE EXPERIENCED THE ALLEGED "WATER LEAK DEFECT" DESCRIBED IN THE 2008 DTB—OR ANY OTHER CONDITION IN ANY OTHER DTB OR BULLETIN.................. 6

III. PLAINTIFF'S OTHER SHIFTING THEORIES FAIL TO ESTABLISH STANDING ................. 9

   A.   Discovery and Multiple Vehicle Inspections Also Confirm Plaintiff's Alleged Out-of-Pocket Loss to Diagnose a "Water Leak" Was Unrelated to the Defect Described in the SAC ................................................................. 9

   B.   Plaintiff Cannot Maintain This Lawsuit Even If the Court Accepts His Ever-Shifting "Defect" Theories .................................................... 10

   C.   Plaintiff Has No Proof That Any Alleged Defect Diminished the Value of His Vehicle .................................................................................. 15

   D.   Nor Can Plaintiff Rely on a "Loss of Benefit of Bargain" Theory ................. 15

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2

- i -

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alban v. BMW of N. Am., LLC,*
  2011 U.S. Dist. LEXIS 26754 (D.N.J. Mar. 15, 2011).................................. 8

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009)........................................................... 4, 15, 17

*Briehl v. Gen. Motors Corp.,*
  172 F.3d 623 (8th Cir. 1999)................................................................... 6

*Chandler v. State Farm Mut. Auto Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010)............................................................ 9, 14

*Contreras v. Toyota Motor Sales, USA Inc.,*
  2010 WL 2528844 ........................................................................ 5, 6, 17

*Erlandson v. Ford Motor Co.,*
  2009 U.S. Dist. Lexis 101316 (D. Or. Oct. 30, 2009) ............................ 8

*In re Canon Cameras,*
  237 F.R.D. 357 (S.D.N.Y. 2006) ......................................................... 16

*In re Gen. Motors Corp. Anti-Lock Brake Products Liability Litig.,*
  966 F. Supp. 1525 (E.D. Mo. 1997)...................................................... 6

*In re Toyota Motor Corp.,*
  2011 WL 1840555 (C.D. Cal. May 13, 2011) ...................................... 15

*James v. Johnson & Johnson Consumer Cos., Inc.,*
  2011 WL 198026 (D.N.J. Jan. 20, 2011)............................................. 16

*Laster v. T-Mobile USA, Inc.,*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................................ 5

*Lewis v. Casey,*
  518 U.S. 343 (1996) ........................................................................ 4, 6

*Lierboe v. State Farm Mutual Auto Ins. Co.,*
  350 F.3d 1018............................................................................... 4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................. Passim

*O'Neil v. Simplicity, Inc.,*
  574 F.3d 501 (8th Cir. 2009)........................................................ 6, 16

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) ........................................................................ 5

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2

- ii-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Oliver v. Ralphs Grocery Co.*,
  2011 WL 3607014 (9th Cir. Aug. 17, 2011) ............................................................ 13

*Rivera v. Wyeth-Ayerst*,
  283 F.3d 315 (5th Cir. 2002) ..................................................................................... 16

*Safe Air For Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................................... 5

*Savage v. Glendale Union High Sch. Dist.*,
  343 F.3d 1036 (9th Cir. 2003) ..................................................................................... 5

*Steele v. Hospital Corp. of Am.*,
  36 F.3d 69 (9th Cir. 1994) ........................................................................................... 9

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ..................................................................................... 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................................... 6

*Whitson v. Bumbo*,
  2009 WL 1515597 (N.D. Cal. April 16, 2009)…………………………………………17

**Statutes**

Civil Code § 1795.91 .................................................................................................... 8

Federal Rule of Civil Procedure
  Rule 12(b)(1) .................................................................................................... 1, 3, 5

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2

-iii-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

**NOTICE OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that, on November 28, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Margaret M. Morrow, in Courtroom 780, located at 255 East Temple Street, Los Angeles, California 90012, defendant Mercedes-Benz USA, LLC ("MBUSA") will and hereby does move the Court to dismiss the action brought by plaintiff Tigran Cholakyan pursuant to Federal Rule of Civil Procedure 12(b)(1).

This motion is made on the ground that Plaintiff lacks standing under Article III of the U.S. Constitution to bring this action. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 24, 2011, and after multiple efforts to meet-and-confer with plaintiff in the 10-days before September 16, 2011, culminating in a final telephonic meet-and-confer on that day. (*See* Declaration of Eric J. Knapp ("Knapp Decl.") ¶¶ 16-24.) This motion is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities, the Declaration of Eric J. Knapp, and the Request for Judicial Notice filed herewith, the Second Amended Complaint ("SAC"), other documents filed in this action, and on such other and further matters that may be presented to the Court before the hearing.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2

- 1 -

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

# MEMORANUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This Court held that, to establish standing, plaintiff must show "that his vehicle experienced the water leak defect described in the TSB."  Ex. A (MTD Order at 12:16-23)[1]; *id.* at 4:18-5:7 (TSB "describes the water leak defect as . . . Water Entry at A-Pillar" due to clogged drains).  Plaintiff is unable to establish that he has this "defect," so he has tried to implicate other DTBs and bulletins describing service actions.  (SAC ¶¶ 39-42.)  But after discovery and multiple inspections, plaintiff's own expert concedes that plaintiff did ***not*** experience any of the leaks alleged:

> Q.   In fact, all of the ways that were described by the DTBs and service actions that you read did not result in any leakage inside the [plaintiff's] car?
>
> A.   That is correct, sir.

(Ex. D [Potok Dep. at 123:5-8, 303:4-8].)  Plaintiff simply cannot prove what he alleges—and what this Court determined he must show to maintain this lawsuit.

The clear failure to prove what this Court required should itself end the standing inquiry.  Recognizing as much, plaintiff has proffered a number of conclusory and continually shifting theories that are not properly at issue.  But even if considered, they are meritless.  For example, although plaintiff claims that he paid a fee to diagnose leaks in his W211, both he and his expert confirmed that the diagnosis pertained to an alleged leak through a perimeter door seal—a part that plaintiff concedes is ***not*** at issue in this case.  Plaintiff has no evidence to the contrary and therefore cannot meet his burden of establishing the requisite "causal connection" between the alleged out-of-pocket loss and the alleged defect.

Plaintiff's new and improperly pled "defect" theories also get him nowhere, because, among other reasons, he has no evidence to support them.  Indeed, plaintiff still has no evidence of "the exact points of entry relating to [alleged] leaks" and his

---

[1]   "Ex. __" refers to exhibits to the accompanying Knapp Decl.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                                                              - 1-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

own expert concludes that his vehicle does not exhibit any "water-leak-related damage," nor does it have a clog in any drains or tubes that plaintiff claims are "defective" because they are "susceptible to clogging."

Finally, plaintiff cannot establish his standing through any "diminution in value" or "loss of benefit of the bargain" theory.  Plaintiff has no evidence that the value of his vehicle has declined, or that his vehicle is worth "less," because of any alleged "defect."  Plaintiff has never attempted to sell his vehicle or even researched the value of it.  Furthermore, as noted above, plaintiff's vehicle never manifested the alleged DTB defect; he has never been prevented from driving it because of any leak; and he "d[id]n't even know" of the existence of the owner's manual in which his expert claims the disclosures at the heart of this case should have been made.

## BACKGROUND

Plaintiff purchased a used 2005 Mercedes-Benz E320 from an independent dealer on August 7, 2008.  (SAC ¶ 18.)  His vehicle represents just one of more-than-100 types of "W211" vehicles; "W211" is a designation for different types of cars, more commonly known as model year 2003-2009 Mercedes-Benz E-Class vehicles. (BD ¶ 2.)[2]  Plaintiff asserts claims, both on his own behalf and on behalf of a putative class of all California residents who are current or former owners or lessees of any one of the types of W211s.  (*See* Mot. for Class Cert. 12:19-21 [Dkt. No. 46].)

All claims are based on a central allegation that "W211" vehicles are "defective . . . because [drains] become clogged" and "water will flow into the interior cabin" of every W211.  (SAC ¶¶ 4-5.)  In his earlier complaints, plaintiff focused on a 2008 Dealer Technical Bulletin ("DTB" or "TSB"), which discussed drains in certain W211 vehicles near "the upper longitudinal member near the A-Pillar (*i.e.*, near

---

[2]   "BD" refers to the Declaration of Gary H. Bowne, filed in Opposition to Plaintiff's Motion to Compel (Dkt. No. 41-2), attached hereto to the Declaration of Eric J. Knapp, Ex. G.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                    -2-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

where the side frame of the windshield meets the car). (*See, e.g.*, FAC ¶¶ 50-51 [Dkt. No. 10]; BD ¶ 3.) The 2008 DTB addresses the area where water from the center cowl drain empties via a drain tube to the ground through a number of different drain holes and is housed within the front right fender (passenger side), adjacent to the back-right engine compartment. (BD ¶ 7, Ex. 1.)

Plaintiff has since attempted to implicate other DTBs and bulletins describing service actions, as well as all other drains in all types of W211s but, as this Court recognized, "the TSB defines the alleged defect." (Ex. B [Mot. to Dismiss Hr'g Tr. 11:25-12:3, Feb. 14, 2011].) Furthermore, the Court has instructed plaintiff that, to establish standing, he must show "that his vehicle experienced the water leak defect *described in the TSB*."[3] (Ex. A [MTD Order at 12:16-23 (emphasis added)].)

In its earlier Rule 12 motion, MBUSA argued that plaintiff did not have standing to assert the claims in the FAC because he was not injured by the alleged defect. (Dkt. No. 11.) At the hearing on these motions, the Court expressed its reluctance to determine plaintiff's standing on the pleadings: "[A]t this stage, on the pleadings, [the Court] can't tell if you're correct or false about this argument. And you may be right. I don't take a position on that one way or the other." (Ex. B [2/14/11 Tr. at 7:3-7, 8:4-6].) The Court nonetheless cautioned plaintiff's counsel that it agreed with the defense—"[standing is] an issue that we need to address on the front end to save everyone time and money." (*Id.* at 27:23-25.)

The Court therefore "invite[d] [MBUSA] to take early discovery on the issue of standing," and advised that, if MBUSA felt it could bring the appropriate motion, the Court would decide a "a 12(b)(1) motion on [standing] alone . . . as quickly as possible." (Ex. B [Tr. 26:23-27:3].) In denying the pleading motion, the Court

---

[3]  Even if plaintiff's SAC could be construed to include "defect" theories beyond the 2008 DTB (and it should not be, because plaintiff was only given leave to amend his Secret Warranty Law claim, *see* MBUSA's Mot. to Dismiss the SAC, Dkt. Nos. 91 & 93), as explained in Section III.B., plaintiff also lacks standing to assert the new, unauthorized and improper theories he attempts to raise at this late stage.

emphasized the need for evidence relating to standing.  (*See, e.g.*, Ex. A [Order at 13:10-14:3] [qualifying conclusions with phrases such as, "at least at this stage of the litigation" and "for the present," and noting that it could not "determine from information presently in the record" whether standing existed or not].)

Because of discovery disputes, MBUSA could not depose plaintiff until June 20, 2011, and it did not get to conduct even a preliminary inspection of plaintiff's vehicle until June 22, 2011.  (Knapp Decl. ¶¶ 4-5.)  On July 20, 2011, plaintiff's expert, Martin Potok, inspected and water leak tested plaintiff's vehicle.  (*Id.* ¶ 7.)  MBUSA deposed Potok on July 21, 2011, as soon as plaintiff made him available pursuant to the Court's June 29, 2011 Order.  (*See id.* ¶¶ 7; Dkt. No. 68 [06/29/11 Civ. Minutes]; *see also* Dkt. No. 55 [Req. to Depose Potok].)  MBUSA also conducted a second inspection of plaintiff's vehicle on August 12, 2011.  (Knapp Decl. ¶ 8.)

At its first available opportunity, MBUSA now files the Rule 12(b)(1) motion that the Court invited at the prior hearing (Ex. B [Tr. 26:24-27:3]).  After discovery and multiple vehicle inspections, it is clear plaintiff cannot show what the Court held necessary in its June 30, 2011 Order.  The Court should dismiss the suit with prejudice because plaintiff lacks standing to assert the claims in the SAC.

## I.   PLAINTIFF NOW MUST PRODUCE EVIDENCE TO ESTABLISH HIS STANDING TO MAINTAIN THIS LAWSUIT

Plaintiff himself must have standing before he may represent a class.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 555-62 (1992) (party invoking federal jurisdiction bears burden of establishing standing); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009).  If plaintiff cannot establish the requisite case or controversy, he cannot seek relief on behalf of himself or any other member of the class.  *See Lierboe v. State Farm Mutual Auto Ins. Co.*, 350 F.3d 1018, 1022 (vacating class certification because plaintiff had no standing and, therefore, could not serve as a class

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                      -4-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1   representative (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)); *see also* Order

2   9:13-23 (citing additional authority for proposition that class lacks standing if

3   representative party cannot establish Article III standing).

4        To maintain this lawsuit, plaintiff must thus show, among other things (1) that

5   he suffered an "injury in fact," which is "concrete and particularized" and "actual or

6   imminent," as opposed to "conjectural" or "hypothetical"; and (2) a causal

7   connection between that injury and the alleged misconduct.[4] *Lujan*, 505 U.S. at

8   560-61; *Contreras v. Toyota Motor Sales, USA Inc.*, 2010 WL 2528844, at *2.

9        The elements of standing are indispensable, and plaintiff must support each

10  one in the same way as any other matter for which he bears the burden of proof—

11  *i.e.*, "with the manner and degree of evidence required at the successive stages in

12  litigation." *Lujan*, 504 U.S. at 561.  Article III standing is fundamental to subject

13  matter jurisdiction, so this Court must dismiss this action if it determines at any

14  time that it lacks subject matter jurisdiction. *Id.*; *Contreras*, 2010 WL 2528844, at

15  *2; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009).

16       Where, as here, a defendant mounts a factual attack on standing, "the district

17  court may review evidence beyond the complaint without converting the motion to

18  dismiss into a motion for summary judgment."  *Safe Air for Everyone v. Meyer*, 373

19  F.3d 1035, 1038 (9th Cir. 2004).  In addition, "[t]he court need not presume the

20  truthfulness of plaintiff's allegations."  *Id.*; *see also Savage v. Glendale Union High*

21  *Sch. Dist.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) ([T]he party opposing the

22  [12(b)(1)] motion must furnish affidavits or other evidence necessary to satisfy its

23  burden of establishing subject matter jurisdiction.").

24  ─────────────

25  [4]   The Consumer Legal Remedies Act ("CLRA") (First Claim) and Unfair Competition
    Law ("UCL") (Second and Third Claims) also have stringent standing requirements and

26  similarly require that plaintiff actually suffered an "injury in fact" and such injury
    occurred "as a result of" the alleged "water leak defect."  *See, e.g.*, *Laster v. T-Mobile*

27  *USA, Inc.*, 407 F. Supp. 2d 1181, 1193-94 (S.D. Cal. 2005); *Contreras v. Toyota Motor*
    *Sales USA, Inc.*, 2010 WL 2528844, at *4 (N.D. Cal. June 18, 2010) ("In order to

28  establish standing under their CLRA claim, [p]laintiffs must establish they suffered an
    actual injury as a result of [defendant's] alleged conduct.").

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                                -5-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

**II.    PLAINTIFF LACKS STANDING BECAUSE HE CANNOT ESTABLISH THAT HE EXPERIENCED THE ALLEGED "WATER LEAK DEFECT" DESCRIBED IN THE 2008 DTB—OR ANY OTHER CONDITION IN ANY OTHER DTB OR BULLETIN**

To establish standing, the alleged injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1.  That "other, unidentified members of the class may have suffered some injury" is insufficient. *Lewis*, 518 U.S. at 357.  Plaintiff must now show that ***he*** was personally injured because of the alleged defect.  *Id.* ; *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").  Plaintiff here cannot meet this threshold requirement, because his vehicle did not manifest the alleged defect at the heart of his case.  *See Contreras*, 2010 WL 2528844, at *6 (requiring that plaintiff establish, in a "no injury" products liability action, such as this, that his or her product "manifested the alleged defect" described in the complaint); *see also In re Gen. Motors Corp. Anti-Lock Brake Products Liability Litig.*, 966 F. Supp. 1525, 1530 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ("Manifestation of the defect in the vehicle, however, is a prerequisite to recovery."); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009) (product must actually exhibit the defect).

Plaintiff's burden could not be clearer after the Court's June 30, 2011 Order: to establish standing, plaintiff must show "that his vehicle experienced the water leak defect described in the TSB."  (Ex. A [MTD Order at 12:16-23].)  The Court recognized that the 2008 DTB has defined the purported "water leak defect" since the inception of this case, and told plaintiff that, to maintain this lawsuit, he must prove that his vehicle suffered from "Water Entry at the A-Pillar" due to clogged drains.  (Ex. A [Order at 4:18-5:7]; *see also* Ex. B [2/14/11 Tr. at 11:25-12:8] ["the TSB define[s] the alleged defect . . . . I don't know how you could understand [plaintiff's claims] any other way"]; Ex. A [Order at 4:7-5:5] [quoting DTB to describe alleged defect], *id.* at 12:10-13 [describing alleged "water leak defect, ***as***

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                                      -6-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

*outlined in the TSB*," as the "gravamen of Cholakyan's complaint" (emphasis added)]; SAC ¶¶ 4-5 [alleging defect as: the "[drains] become clogged with leaves, twigs, debris, and other objects" and water "flow[s] into the interior cabin"]; Ex. E [Pl. Rog. Resp. 2] ["The water drains and drain tubes described herein are designed in a defective manner, which makes them susceptible to *clogging* by debris naturally." (emphasis added)]; *id.* [Pl. Rog. Resp. 3] ["The drains, drain valves and drain tubes are defective because they are susceptible to clogging."]; Pl. Mot. Class Cert. at 26:3-6 [Dkt. No. 46-1] [describing alleged "common design defect" as "water management system becom[ing] clogged with leaves, debris, and other objects, causing them to experience water leaks into interior cabin . . . ."].)

The Court previously concluded that, based on the record before it, without the benefit of discovery or testing on plaintiff's vehicle, plaintiff made an adequate showing that he experienced the DTB defect.  (*See* Ex. A [Order at 13:3-18].)  But, recognizing that he cannot actually put forward any such evidence, plaintiff has since attempted to implicate numerous other DTBs and service bulletins.  (SAC ¶¶ 39-42.)  Even so, after discovery and multiple inspections, even plaintiff's own expert concedes that he did *not* experience any of the leaks described:

> Q.  In fact, all of the ways that were described by the DTBs and service actions that you read did not result in any leakage inside the car?
>
> A.  That is correct, sir.

(Ex. D [Potok Dep. at 123:5-8, 303:4-8].)  Potok made conclusory claims to the contrary *before* he inspected plaintiff's car (Potok Decl. ISO Mot. for Class Cert. ¶ 72 [Dkt. No. 47]).  After plaintiff's vehicle had been disassembled to an inoperable state and Potok liberally poured water from a garden hose directly into the DTB area (Ex. D [Potok Dep. 89:24-91:11, 156:12-23, 223:8-10, 230:21-231:11]), he conceded that plaintiff's vehicle did *not* manifest any of the purported

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                    -7-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1    "defects" described in any of the DTBs and/or service bulletins.[5]

2        It is thus not surprising that plaintiff has been unable to identify "the exact

3 points of entry relating to [water] leaks" he claims he experienced (Ex. E [Pl. Resp.

4 Rog. 4]), much less establish that such entry resulted from a clog caused by a

5 "defect" (SAC ¶¶ 4 & 5). In fact, plaintiff's only basis for claiming that water

6 enters putative class vehicles because of clogged drains and/or inadequate sealant at

7 the passenger side A-pillar, are the DTBs. (*See* Ex. D [Potok Dep. at 192:1-193:4].)

8 But, as Potok recognized, if a DTB alone establishes the purported defect, then

9 every automotive company manufactures cars with defects, because every

10 automotive company has DTBs or something similar. (*See id.* [Potok Dep. at

11 197:03-198:10].) The assertion that a DTB establishes a "defect" is wrong as a

12 matter of law and fact.

13        Courts may not construe notices related to service bulletins as "an admission .

14 . . of the existence or nonexistence of a vehicle defect." Civ. Code § 1795.91; *see*

15 *also, e.g.*, *Alban v. BMW of N. Am., LLC*, 2011 U.S. Dist. LEXIS 26754, at **35-36

16 (D.N.J. Mar. 15, 2011); *Erlandson v. Ford Motor Co.*, 2009 U.S. Dist. Lexis 101316,

17 at *11-12 (D. Or. Oct. 30, 2009). Furthermore, the record now reflects that, even if

18 the DTB describes a class-wide defect, as plaintiff wrongly contends, plaintiff's

19 vehicle does ***not*** suffer from any alleged "defect" raised by any DTB or service

20 bulletin. (*See* Ex. D [Potok Dep. at 123:5-8, 303:4-8].) Plaintiff thus has no

21 standing to maintain this suit.

22

23

24

25

---

26    [5]    By way of example, although plaintiff alleged a "defect" in the wheelhouse drains
based on a 2004 Service Campaign, claiming that duckbill nozzles trap debris (SAC ¶ 40),
27 Potok confirmed "there were no duckbills [also known as nozzles]" on plaintiff's car and
therefore no clog in the wheelhouse drains or resulting water leak into plaintiff's vehicle
28 from that purported "defect." (Ex. D [Potok Dep. at 129:1-130:18]).

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2       -8-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1

### III. PLAINTIFF'S OTHER SHIFTING THEORIES FAIL TO ESTABLISH STANDING

#### A. Discovery and Multiple Vehicle Inspections Also Confirm Plaintiff's Alleged Out-of-Pocket Loss to Diagnose a "Water Leak" Was Unrelated to the Defect Described in the SAC

The only concrete out-of-pocket loss plaintiff can identify is $136.50 he paid to an independent Mercedes-Benz dealership to diagnose the cause of an alleged March 1, 2010 water leak in his vehicle. (*See, e.g.*, Opp'n to Mot. to Dismiss at 6-7 n.11 [Dkt. No. 19]; Ex. C [Pl. Depo at 164:1-11] ["I was told I have to pay a diagnosis fee . . . It ended up costing $136.50 as you can see. He told me there's something with the door seal . . . ."]; *see also id.* [Pl. Depo at 349:17-350:8].) The Court concluded that, based on the limited evidence before it, it could not conclude that the payment was unconnected to the defect allegedly described by the DTB. (Ex. A [Order at 12:1-14:8].)

Since then, plaintiff and his expert have conceded that the diagnosis pertained to a problem with his vehicle's perimeter driver's side door seal and that out-of-pocket loss thus ***lacks*** the requisite "causal connection between [plaintiff's alleged] injury and the conduct complained of." *Lujan*, 504 U.S. at 560-61; *see also Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (injury must be "fairly traceable to the challenged conduct of the defendant"); *see, e.g.*, *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994) (concluding that payment of hospital bill did not confer standing, because plaintiff did not show that the payment was caused by the alleged overbilling scheme, as distinguished from some other cause). Plaintiff has tried to argue that the dealer did not properly diagnose the cause of the alleged water leak (Opp'n to Mot. to Dismiss, Dkt. No. 19 at n.10), but he has ***no*** evidence to show that the fee he paid relates to the DTB.

To the contrary, plaintiff can only establish that he paid to diagnose a leak through the door seal:

> [The dealer] told me that there's something with the door seal. You know, again, I'm not a mechanic. I don't know exactly what that means, but the driver's door seal was something wrong and the—from

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                                    -9-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

what I remember, the license plate frame.  And he told me there was nothing wrong with the other three doors, and I would have to pay, I don't remember what the exact amount was, to get it repaired because it was not covered under warranty.

(Ex. C [Pl. Dep. 164:1-11].  Indeed, even after learning of the alleged "defect" in the 2008 DTB—and, notwithstanding his Rule 11 obligations—plaintiff never presented his vehicle to the dealership to diagnose the cause of the purported water leak he claims he experienced:

Q.   For example, let me just be even more specific.  We've established—because you allege in your complaint that water leaks are attributable to the "water leak defect" in the complaint which is defined by the technical service bulletin.  But the three causes or potential causes of water leaks outlined in the technical service bulletin, you do not know whether your car experienced those or not.  Fair to say?

A.   Yes, I think that's fair to say . . . .

Q.   Okay.  And when you read [the complaint before it was filed] and you saw this technical service bulletin and that there was a potential—it seemed—at least seemed to you I would assume to spell out a few ways that water might get into the interior vehicle?  Did you ever go back to Mercedes-Benz of Calabasas with this document and say I think my vehicle has experienced leaks and I think this might be the cause, did you ever do that?

A.   I did not.

(Ex. C [Pl. Dep. at 234:6-235:3]; *see also id.* at 225:15-20 [conceding that the Mercedes-Benz dealership "never told [plaintiff] at that time . . . that [he] w[as] getting a leak in [his] vehicle because of any one of the three causes" identified in the DTB]; Section II [citing Potok's deposition testimony confirming that plaintiff's vehicle did ***not*** have any leaks from the conditions set forth in the DTB].)  In short, plaintiff's mere payment of a fee to diagnose the cause of a problem not at issue in the SAC cannot establish his standing to sue.

### B.   Plaintiff Cannot Maintain This Lawsuit Even If the Court Accepts His Ever-Shifting "Defect" Theories

In addition to improperly raising various other DTBs and service campaigns that allegedly evidence the "water leak defect" (SAC ¶¶ 39-42), plaintiff has

attempted to improperly expand the scope of his case to include, as best MBUSA can discern, claims based on "any water-leak related damage" and countless other drains in W211 vehicles.  Even assuming any such theories are properly pled (they are not, *see* Dkt. Nos. 91 & 93), none provide any basis for plaintiff to maintain this lawsuit.

First, even under plaintiff's broadest theory, his vehicle does not exhibit any signs of "water-leak-related damage" (SAC ¶¶ 69, 71); his own expert agrees:

> Q.   And you took apart not only the sunroof headliner area but also you took out all the mats on the floors?
>
> A.   The carpeting and the—and the jute, you know, the sound . . . sound deadening, which is part of the carpeting.
>
> Q.   And some of that sound deadening is like a sponge actually, is it not?
>
> A.   Yes.
>
> Q.   And that was dry, was it not?
>
> A.   Yes, sir.

(Ex. D [Potok Dep. at 97:25-98:14].)  Nor is there any evidence of mold in plaintiff's car.  (*Id.* at 97:22-24.)  And, despite aggressive water testing, Potok could not conclude that the components in plaintiff's car were damaged from water ingress into the vehicle.  (*Id.* at 97:22-24, 216:16-217:06.)  Simply put, plaintiff cannot show ***any*** damage to his vehicle from water leaks.

Second, despite plaintiff's conclusory claim that his vehicle drains were "blocked with 'leaves and debr[is]'" (SAC ¶ 21), Potok testified numerous times that ***no*** such evidence exists.  (*See* Ex. D [Potok Dep. at 113:23-114:4]; *see also id.* at 90:1-2 ["I did not see any [clogging of the sunroof drain] at that point of exiting in the corners."], 95:04-05 ["I did not see any leaves in the dome area."], 266:20-21 ["I did not see any clogs in the three vehicles [including plaintiff's vehicle]."]; *see also id.* at 303:23-304:10.)

Plaintiff's counsel hired Monaco Motors to inspect plaintiff's vehicle in August 2010, but that inspection also confirmed that plaintiff's vehicle did not

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2

-11-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

exhibit *any* clogged drains.  (*See, e.g.*, Ex. C [Pl. Dep. at 176:13-15] [invoice notes only presence of debris and that the drains be "cleaned out"]; Ex. H [Monaco Motors Representative Dep. at 45:4−47:17] [confirming that, based on invoice, plaintiff's vehicle did not exhibit signs of water intrusion or clogged drains—just the presence of some debris]; Ex. D [Potok Dep. at 292:19-293:16] [testifying that he has no evidence that Monaco Motors found clogged drains in plaintiff's vehicle].)

Moreover, even assuming plaintiff could present evidence of a clogged drain, clogs rarely result in leaks because of redundant systems.  (*See* Ex. D [Potok Dep. at 299:15-300:20] [agreeing that mere fact someone has a vehicle with debris does not mean there is a clog and having a clog does not necessarily mean water will enter the car]; *see also* BD ¶ 9.)  Water in a clogged drain generally backs up out of the drain and flows harmlessly to the ground.  (BD ¶¶ 8-9.)  Conversely, a leak does not mean that a drain is clogged.  Leaks often develop for any number of reasons having nothing to do with a clogged drain—*e.g.,* because, among other causes, a sunroof is left tilted, a window is left open, the vehicle is driven through deep water, or the vehicle's seals are damaged.  (Ex. D [Potok Dep. at 97:10-21, 215:17-216:04, 218:05-08, 271:25-272:11, 273:25-274:07] [testifying about numerous other causes of water leaks].)

Third, plaintiff cannot show that any of the components in his car that allegedly comprise the "water drainage system" are "defective."[6]  (SAC ¶ 3 & n.1 [defining "water drainage system" as encompassing sunroof drains, cowl drains, drain tubes, water tubes, water drain valves, water drains located in the wheelhouses, and/or seals in or around the sunroof and A, B & C Pillars]; *cf.* Ex. D [Potok Dep. at 278:03-15] [testifying that his primary concern and focus was on the cowl plenum and sunroof], *id.* at 99:22-100:01, 100:09-10, 104:06-18, 229:2-4,

---

[6]   There is no such thing as a single, integrated "water drainage system."  (BD ¶¶ 14-16.) Numerous drains and parts operate independently, not as one "system."  (*Id.*)

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2
-12-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

230:21-231:5, 257:14-18, 270:06-09, 278:09-21, 279:02-16 [same].)

Despite Potok's aggressive water leak testing, he did not observe ***any*** water leaks into the interior compartment attributable to any of the areas, parts, or components that comprise the alleged "water drainage system." (*See, e.g.*, Ex. D [Potok Dep. at 139:4-140:15 & 158:24-159:12] [testifying that water was properly diverted over the rubber cowling and never entered the occupant compartment, even after the fenders were removed and he poured water directly into the cowl drain], *id.* at 214: 24-215:2 [no evidence of leakage in cowl area], *id.* at 214:18-23 [no evidence of "leakage" in sunroof drainage system or elsewhere in the "water drainage" components], *id.* at 230:20-231:11 [no debris in the primary cowl drain], 132:8-14 [no blockage in the plenum drainage holes], 133:1-134:10 [no blockage because of debris that penetrated through openings in the cowl screen], 258:13-22 [no evidence of any twigs that clogged any drain or tube in any W211 car], 141:10-25 [fender cavity drain holes drained water and kept it away from inside of passenger compartment].)

Potok likewise acknowledged the inherent flaws in the defect theories plaintiff has attempted to advance, when it comes to plaintiff's own personal claims. (*See, e.g.*, *id.* at 83:08-12 [despite claiming the sunroof drains have a propensity to clog, because they contain a "fin" that runs down the entire length of the tube, there is no "fin" at the top of the drain tubes where they insert at the sunroof corner drains].).

Finally, plaintiff cannot rely on his new, "insufficiently sealed firewall" theory to establish a cognizable injury. For starters, plaintiff has not pled this theory, and he cannot use his expert to sweep in additional purported defects not pled in the complaint. *See Oliver v. Ralphs Grocery Co.*, 2011 WL 3607014, at *4-*5 (9th Cir. Aug. 17, 2011) (disclosure made during discovery, including in an expert report, is inadequate for providing notice under Rule 8 and thus affirming district court's refusal to consider certain architectural barriers identified in expert

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2          -13-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

report but not alleged in complaint); *see also* Mot. to Dismiss SAC (Dkt. No. 91) at 7:1-10:2; SAC ¶ 3 n.1 [making no reference to firewall and identifying only clogging of drains and related components in describing alleged defects].)

In addition, that plaintiff can generate a leak in the front driver's side at a discrete location (Ex. D [Potok Dep. at 122:24-123:4]), after substantially dismantling his car and with aggressive water testing, does ***not*** mean his car has a defect, much less one that is connected to the alleged wrongdoing.  *Lujan*, 504 U.S. at 560-61; *Chandler*, 598 F.3d at 1122.  As the Court explained in its Order on recusal, "a few drops of water" entering the vehicle "occasionally" through the footwell can happen in any car, without indicating  "a 'defect' of any kind, including the type of defect alleged in plaintiff's complaint."  (Ex. I [Order Denying Recusal, Dkt. No. 69].)  Furthermore, Potok conceded that plaintiff's car did ***not*** evidence any leak before this testing, much less water damage from a leak (Ex. D [Potok Dep. at 97:22-98:14, 216:16-217:06]), and the leak resulting from Potok's extensive testing had ***nothing*** to do with the alleged DTB defect or any defect at all.

Rather, the leak occurred because of circumstances unique to plaintiff's vehicle (and for reasons entirely unconnected to any purported misconduct by MBUSA)—specifically, a corroded rubber weatherstrip seal on the cowl and, more importantly, a ***missing*** cover that is part of a redundant system designed to prevent water from entering the vehicle's interior compartment.  (*Compare* Ex. J, fig. 1, [photograph of plaintiff's vehicle, reflecting missing cover], *with* Ex. J, fig. 2 [photograph of W211 with cover]; *see also* Ex. D [Potok Dep. at 65:4-66:16, 195:05-196:03, 199:05-10, & 273:25-274:07] [conceding that the weatherstrip seal on the cowl of plaintiff's vehicle is not defective and recognizing that ordinary wear and tear, failure to maintain, weather, and/or other conditions can result in deterioration of a seal over time, without evidencing any design or manufacturing defect].)  Accordingly, plaintiff lacks the requisite causal link for asserting this new, "insufficiently sealed firewall" theory —that is, even if plaintiff suffered an injury

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                                          -14-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1   (and he did not), that injury is *not* "fairly traceable" to MBUSA.  *See Chandler*, 598

2   F.3d at 1122 (discussing "casual connection" requirement for standing).

### C.   Plaintiff Has No Proof That Any Alleged Defect Diminished the Value of His Vehicle

5        Plaintiff cannot present any evidence that the value of his vehicle has declined

6   because of the alleged "water leak defect."  (SAC ¶ 48.)  Plaintiff concedes he

7   never tried to sell his vehicle, he has never researched the value of it, and he has no

8   documents "to support any contention that the value of W-211 vehicles have

9   decreased as a result of an alleged water leak defect."  (Ex. C [Pl. Depo at

10  332:1−20, 361:20−362:5].)  When asked to produce "all documents concerning

11  offers to buy or otherwise acquire the subject vehicle, including the amount of the

12  offer and/or the price paid for the subject vehicle, plaintiff responded:  "responding

13  party has not made any effort to sell or dispose of the subject vehicle."  (Ex. F [Pl.

14  Resp. RFP 30].)  Plaintiff therefore cannot establish standing by claiming that he

15  has suffered a loss of resale value from the alleged defect.  *See, e.g.*, *Contreras*,

16  2010 WL 2528844, at *6 ("allegation that their vehicles are worth substantially less

17  than they would be without the alleged defect [wa]s conclusory and unsupported by

18  any facts"); *cf. In re Toyota Motor Corp.*, 2011 WL 1840555, at *10 (C.D. Cal.

19  May 13, 2011) (noting implausibility of "overpayment, loss in value" allegations, if

20  plaintiffs did not try to sell or trade in vehicle at a loss; dismissing claims of

21  plaintiffs who made no such efforts); *see also Birdsong*, 590 F.3d at 961.

### D.   Nor Can Plaintiff Rely on a "Loss of Benefit of Bargain" Theory

23       Plaintiff's conclusory "benefit of the bargain" theory (SAC ¶ 47) fails for two

24  reasons.  ***First***, plaintiff necessarily received the benefit of his bargain, because his

25  vehicle did not exhibit any water leak caused by any of the conditions addressed in

26  any DTB or service campaigns, *see* Section II, and, in any event, he has never been

27  prevented from driving his vehicle because of any such leak (*see, e.g.*, Ex. C [Pl.

28  Depo at 286:11−23] [testifying that he was not prohibited from driving vehicle, nor

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                    -15-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1   did the leak require that he take it in for attention]; *see also id.* [Pl. Depo at 73:11-

2   74:12, 75:4-13, 77:11−21] [testifying about consistent use of vehicle].)

3       Numerous courts reject claims that a plaintiff did not receive the benefit of his

4   or her bargain under these circumstances.  *See, e.g.*, *O'Neil*, 574 F.3d at 504 ("The

5   O'Neils purchased a crib with a functioning drop-side and that crib continues to

6   have a functioning drop-side.  Their bargain with Simplicity and Graco did not

7   contemplate the performance of cribs purchased by other consumers."); *Rivera v.*

8   *Wyeth-Ayerst*, 283 F.3d 315, 319 (5th Cir. 2002); *James v. Johnson & Johnson*

9   *Consumer Cos., Inc.*, 2011 WL 198026, at *2 (D.N.J. Jan. 20, 2011); *In re Canon*

10   *Cameras*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006).

11       ***Second***, plaintiff cannot present any evidence that warnings about the alleged

12   "water leak defect" would have impacted his decision to purchase the vehicle.

13   Plaintiff contends that MBUSA should have disclosed the defect in his maintenance

14   book, yet he "d[id]n't even know" his vehicle came with such a book (Ex. C [Pl.

15   Dep. at 252:3-9, 267:21-270:11]), and he did not look at any brochures, the owner's

16   manual, or the warranty booklet before purchasing it (*id.* at 57:18-58:5, 253:1-

17   254:7, 271:17-21, 360:3-6).  Thereafter, plaintiff only "skimmed" the owner's

18   manual a "couple times," in connection with the automatic garage door opener and

19   certain service warnings; he never referenced it for questions regarding water leaks

20   or clogged drains.  (*Id.* at 271:2−16.)

21       Even after learning about the purportedly "concealed" DTBs, plaintiff never

22   consulted any of the materials that accompanied his purchase for additional

23   information, *id.*, nor did he present his vehicle for repair or diagnosis (*id.* at 253:6-

24   254:7, 360:3-7).  Plaintiff continues to drive his car, he drives other people in his

25   car, and he even lets his girlfriend and friends drive the car.  (*Id.* at 73:11-74:12,

26   75:4-13, 77:11-21, 78:2-79:23, 93:20-94:8.)  Plaintiff simply has no evidence that

27   he has driven the car less because of the alleged "water leak defect" (or any other

28   problem), or that he found it necessary to purchase a substitute.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF522897.2                          -16-

NOTICE OF MOT. AND MOTION TO DISMISS; MPA ISO SAME—CASE NO. 10-cv-05944-MMM (JC)

1   As such, plaintiff has not been deprived of any agreed-upon benefit in

2   purchasing his vehicle, and he cannot rely on such a theory to establish the requisite

3   "injury in fact." *See, e.g.*, *Birdsong*, 590 F.3d at 961; *Contreras*, 2010 WL 2528844,

4   at *6 (noting that plaintiffs did not allege that "they were forced to replace their

5   vehicles after learning of the alleged defect or that they incurred out-of-pocket

6   damages"); *Whitson v. Bumbo*, 2009 WL 1515597, at *6 (N.D. Cal. April 16, 2009)

7   (rationale for finding standing under "benefit of bargain" theory not applicable where

8   Whitson made no allegation that it was necessary to purchase a substitute for the

9   allegedly defective product).

10   ## CONCLUSION

11   For the reasons stated above, this Court lacks subject matter jurisdiction and

12   should dismiss plaintiff's SAC with prejudice.

13   Dated:  September 16, 2011   Respectfully submitted,

14   CARROLL, BURDICK & McDONOUGH LLP

16   By _____/s/ Troy M. Yoshino_____

17   Troy M. Yoshino
     Attorneys for Mercedes-Benz USA, LLC

18
19
20
21
22
23
24
25
26
27
28