1   Troy M. Yoshino, No. 197850
    Matthew J. Kemner, No. 188126
2   Eric J. Knapp, No. 214352
    **CARROLL, BURDICK & McDONOUGH** LLP
3   Attorneys at Law
    44 Montgomery Street, Suite 400
4   San Francisco, CA 94104
    Telephone:   415.989.5900
5   Facsimile:   415.989.0932
    Email:       tyoshino@cbmlaw.com
6                mkemner@cbmlaw.com
                 eknapp@cbmlaw.com
7
    Attorneys for Defendant
8   Mercedes-Benz USA, LLC

9                   UNITED STATES DISTRICT COURT

10

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13                         WESTERN DIVISION

    TIGRAN CHOLAKYAN,                 No. 10-cv-05944-MMM (JC)
14  individually, and on behalf of a class
    of similarly situated individuals,
15
                                      **MBUSA's MEMORANDUM OF POINTS**
16             Plaintiff,             **AND AUTHORITIES IN OPPOSITION TO**
                                      **PLAINTIFF'S MOTION FOR CLASS**
17        v.                          **CERTIFICATION**

18  MERCEDES-BENZ USA, LLC,

19             Defendant.             Date:          March 5, 2012
                                      Time:          10:00 a.m.
20                                    Courtroom:     780

21                                    Hon. Margaret M. Morrow

22

23

24

25

26

27

28

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

MBUSA's COUNTER-STATEMENT OF FACTS ...................................................... 2

I.    THE INDIVISIBILITY REQUIREMENT FOR (B)(2) CERTIFICATION IS NOT MET ........... 3

II.   CERTIFICATION IS IMPROPER BECAUSE AN INCREASING MAJORITY OF THE PROPOSED CLASS ARE FORMER OWNERS AND OTHERS WITHOUT STANDING TO BENEFIT FROM PROPER (B)(2) RELIEF ................................................................. 5

III.  PLAINTIFF COMPLETELY FAILS TO ADDRESS ASCERTAINABILITY ............................ 6

IV.   PLAINTIFF FAILS TO SHOW THAT THE PUTATIVE CLASS CLAIMS HAVE THE "COHESION" REQUIRED FOR RULE 23(B)(2) CERTIFICATION ................................. 7

      A.   The Putative Class Claims Do Not Rest on the "Same Grounds," As They Do Not Even Involve a Common Part .............................................................. 7

      B.   Plaintiff Also Fails to Offer the Required Proof of a Common Defect ............ 9

      C.   Causation Is an Insurmountable Barrier to Certification Here ....................... 13

           1.   Because There Are Multiple Possible Causes for Water Leaks (Including Many Not Attributable to Alleged Defects), the Putative Class Lacks Cohesion .................................................................... 13

           2.   Individual Use Factors Create Individualized Issues ............................ 14

      D.   The Fraud-Based Claims Lack Cohesion Because Plaintiff Cannot Provide Common Proof of Many Essential Elements ..................................... 15

           1.   Plaintiff Has Failed to Show There Is Common Proof of MBUSA's "Knowledge" of a "Safety Defect" ......................................................... 15

           2.   The Fraud-Based Claims Here Raise Questions as to the Circumstances of Individual Transactions, So They Lack the Cohesion Necessary for Rule 23(b)(2) Certification .............................. 16

      E.   The CLRA Claim Cannot Be Certified Because There Is No Cohesion, Even as to the Basic Requirement That All Putative Class Members Must Be "Consumers" ........................................................................................ 19

      F.   The Implied Warranty Claim Cannot Be Certified Because Many Have Driven Their Vehicles for Thousands of Miles Without Incident ................... 19

V.    PLAINTIFF MISCONSTRUES COMMONALITY AFTER *DUKES* ................................. 19

VI.   PLAINTIFF IS NOT TYPICAL OF THOSE HE SEEKS TO REPRESENT ............................ 20

VII.  PLAINTIFF AND HIS COUNSEL DO NOT MEET THE ADEQUACY REQUIREMENT ....... 21

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    -i-

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

**TABLE OF CONTENTS**
(continued)

**Page**

A. Plaintiff Improperly "Splits" Claims of Other Class Members ...................... 21

B. Plaintiff's Interests Conflict with Others in the Putative Class ...................... 22

C. Counsel Has Solicited Clients, So They Are Also Inadequate ...................... 23

VIII. CERTIFICATION IS ALSO IMPROPER BECAUSE PLAINTIFF HAS FAILED TO PROVE THAT THE PROPOSED CLASS ACTION CAN BE EFFECTIVELY AND EFFICIENTLY TRIED ON A CLASSWIDE BASIS ...................... 24

IX. CERTIFICATION IS ALSO IMPROPER BECAUSE IT WOULD THWART MBUSA'S DEFENSES TO INDIVIDUAL CLAIMS ...................... 24

CONCLUSION ...................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aberdeen v. Toyota,*
  2009 WL 7715964 (C.D. Cal. June 23, 2009) ................................................. 14, 19

*Agostino v. Quest Diags.,*
  256 F.R.D. 437 (D.N.J. 2009) .......................................................................... 24

*Alban v. BMW of N. Am.,*
  2011 WL 900114 (D.N.J. Mar. 15, 2011) ......................................................... 11

*Am. Honda Motor Co. v. Super. Ct.,*
  199 Cal. App. 4th 1367 (2011) .............................................................. 11, 12, 14

*Anthony v. Gen. Motors,*
  33 Cal. App. 3d 699 (1973) .............................................................................. 22

*Arabian v. Sony Elecs.,*
  2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ............................................... 19, 21

*Avritt v. Reliastar Life Ins. Co.,*
  615 F.3d 1023 (8th Cir. 2010) ..................................................................... 16, 17

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3d Cir. 1998) .............................................................................. 24

*Bishop v. Saab Auto.,*
  1996 WL 33150020 (C.D. Cal. Feb. 16, 1996) .................................................. 6

*Bodner v. Oreck Direct,*
  2007 WL 1223777 (N.D. Cal. Apr. 27, 2007) .................................................. 24

*Brazil v. Dell,*
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ............................................................. 7

*Broussard v. Meineke,*
  155 F.3d 331 (4th Cir. 1998) ...................................................................... 23, 25

*Califano v. Yamasaki,*
  442 U.S. 682 (1989) ........................................................................................... 8

*Campion v. Old Rep. Home Prot.,*
  272 F.R.D. 517 (S.D. Cal. 2011) ........................................................................ 5

*Chamberlan v. Ford,*
  402 F.3d 952 (9th Cir. 2005) ....................................................................... 9, 24

*City of San Jose v. Superior Ct.,*
  12 Cal. 3d 447 (1974) ....................................................................................... 22

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                   -iii-

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4
*Drimmer v. WD-40,*
   2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) ........................................................ 6, 22

5
*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ........................................................................... 20

6

7
*Erlandson v. Ford Motor Co.,*
   2009 U.S. Dist. LEXIS 101316 (D. Or. Oct. 30, 2009) .............................. 11

8
*Ewert v. eBay, Inc.,*
   2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ........................................ 19

9

10
*Feinstein v. Firestone,*
   535 F. Supp. 595 (S.D.N.Y. 1982) ........................................ 13, 22

11
*Fosmire v. Progressive Max Ins.,*
   2011 WL 4801915 (W.D. Wash. Oct. 11, 2011) .............................. 22

12

13
*Frosini v. Bridgestone,*
   2007 WL 2781656 (C.D. Cal. Aug. 24, 2007) ........................................ 15

14
*Gardner v. Western Beef,*
   2011 WL 6140518 (E.D.N.Y. Sept. 26, 2011) ........................................ 4, 5

15

16
*Gartin v. S&M Nutec,*
   245 F.R.D. 429 (C.D. Cal. 2007) ........................................ 17, 18

17
*Gates v. Rohm & Haas,*
   655 F.3d 255 (3d Cir. 2011) ........................................ 5, 8, 15

18

19
*Gen. Tel. Co. v. Falcon,*
   457 U.S. 147 (1982) ........................................ 24

20
*Gonzales v. Comcast,*
   2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ........................................ 6, 10

21

22
*Gonzalez v. Procter & Gamble,*
   247 F.R.D. 616 (S.D. Cal. 2007) ........................................ 17, 18

23
*Gregurek v. United of Omaha Life Ins. Co.,*
   2009 WL 4723137 (C.D. Cal. Nov. 10, 2009) ........................................ 25

24
*Greyson v. 7-Eleven,*
   2011 WL 2414378 (S.D. Cal. June 10, 2011) ........................................ 7

25

26
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ........................................ 23

27
*Heffelfinger v. Elec. Data Sys.,*
   2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) ........................................ 6, 12, 20

28

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

-iv-

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Holmes v. Continental Can Co.,*
706 F.2d 1144 (11th Cir. 1983) ................................................................ 3, 7, 23

*Horne v. Harley-Davidson, Inc.,*
660 F. Supp. 2d 1152 (C.D. Cal. 2009) ........................................................ 25

*Huber v. Taylor,*
2011 WL 4553154 (W.D. Pa. Sept. 29, 2011) .................................................. 5

*In re Hitachi TV Optical Block Cases,*
2011 WL 4499036 (S.D. Cal. Sept. 27, 2011) .................................................. 9

*In re Paxil Litig.,*
212 F.R.D. 539 (C.D. Cal. 2003) ........................................................ 7, 14, 24

*In re Prempro,*
230 F.R.D. 555 (E.D. Ark. 2005) .................................................................. 14

*Jamie S. v. Milwaukee Pub. Schs.,*
___ F.3d ___, 2012 WL 336170 (7th Cir. Feb. 3, 2012) ................................ 5, 10

*Jones v. Am. Gen. Life & Accident Ins. Co.,*
213 F.R.D. 689 (S.D. Ga. 2002) .................................................................. 17

*Kaczmarek v. IBM,*
186 F.R.D. 307 (S.D.N.Y. 1999) .................................................................. 4

*Kanter v. Warner-Lambert,*
265 F.3d 853 (9th Cir. 2001) ..................................................................... 4, 5

*Kartman v. State Farm,*
634 F.3d 883 (7th Cir. 2011) ......................................................................... 6

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ..................................................................... 15

*Kennedy v. Natural Balance Pet Foods,*
361 Fed. Appx. 785 (9th Cir. 2010) ............................................................. 19

*Krueger v. Wyeth,*
2008 WL 481956 (S.D. Cal. Feb. 19, 2008) .................................................. 22

*Lieberson v. Johnson & Johnson,*
2011 WL 4414214 (D.N.J. Sept. 21, 2011) .................................................... 21

*Lightfoot v. Dist. of Columbia,*
273 F.R.D. 314 (D.D.C. 2011) ..................................................................... 24

*Maldonado v. Ochsner Clinic Found'n,*
493 F.3d 521 (5th Cir. 2007) ......................................................................... 6

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

–v–

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1

TABLE OF AUTHORITIES
(continued)

2

Page(s)

3  *McManus v. Fleetwood Enters.*,
       320 F.3d 545 (5th Cir. 2003) ........................................................ 4, 6, 17, 18

4

*Moncada v. Allstate*,
5      471 F. Supp. 2d 987 (N.D. Cal. 2006) ........................................................ 17

6  *Morris v. BMW of N. Am.*,
       2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ................................................ 13

7

*Osborne v. Subaru of Am.*,
8      198 Cal. App. 3d 646 (1988) ........................................................ 19

9  *Oscar v. BMW of N. Am.*,
       274 F.R.D. 498 (S.D.N.Y. June 7, 2011) .................................................... 13

10

*Owen v. Gen. Motors*,
11     2007 WL 172355 (W.D. Mo. Jan. 18, 2007) ................................................ 23

12  *Parkinson v. Hyundai*,
        258 F.R.D. 580 (C.D. Cal. 2008) ........................................................ 9

13

*Payne v. FujiFilm*,
14     2010 WL 2342388 (D.N.J. 2010) ........................................................ 4

15  *Pipes v. Life Inv. Ins. Co.*,
        254 F.R.D. 544 (E.D. Ark. 2008) ........................................................ 23

16

*Poulos v. Caesar's World*,
17     379 F.3d 654 (9th Cir. 2004) ........................................................ 17

18  *Red v. Kraft Foods*,
        2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ................................................ 6

19

*Richards v. Delta Air Lines*,
20     453 F.3d 525 (D.C. Cir. 2006) ........................................................ 5

21  *Rodriguez v. West Pub.*,
        563 F.3d 948 (9th Cir. 2009) ........................................................ 24

22

*Saltzman v. Pella*,
23     257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ........................................................ 5

24  *Sanchez v. Wal-Mart*,
        2009 WL 1514435 (E.D. Cal. May 28, 2009) ................................................ 19, 22, 24, 25

25

*Sanders v. Apple*,
26     672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................ 17

27  *Sanneman v. Chrysler*,
        191 F.R.D. 441 (E.D. Pa. 2000) ........................................................ 15, 23

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

-vi-

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

TABLE OF AUTHORITIES
(continued)

Page(s)

*Schulken v. Wash. Mut. Bank,*
2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ................................................................ 6

*Seidel v. GMAC,*
93 F.R.D. 122 (W.D. Wash. 1981) ........................................................................ 24

*Sepulveda v. Wal-Mart,*
2011 WL 6882918 (9th Cir. Dec. 30, 2011) .......................................................... 6

*Sikes v. Teleline,*
281 F.3d 1350 (11th Cir. 2002) ............................................................................ 17

*Snow v. Ford Motor,*
561 F.2d 787 (9th Cir. 1977) .................................................................................. 4

*Stearns v. Select Comfort Retail,*
2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................................................ 18

*Suddreth v. MBUSA,*
2011 WL 5240965 (D.N.J. Oct. 31, 2011) ............................................................ 11

*Summit Tech v. High-Line Med. Instr.,*
933 F. Supp. 918 (C.D. Cal. 1996) ....................................................................... 18

*Thorogood v. Sears,*
547 F.3d 742 (7th Cir. 2008) ................................................................................ 18

*Tietsworth v. Sears, Roebuck,*
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 20

*Ugas v. H&R Block,*
2011 WL 3439219 (C.D. Cal. Aug. 4, 2011) .......................................................... 4

*Wal-Mart v. Dukes,*
131 S. Ct. 2541 (2011) ................................................................................ *passim*

*Walsh v. Ford Motor Co.,*
130 F.R.D. 260 (D.D.C. 1990) ............................................................................... 4

*Webb v. Carters, Inc.,*
272 F.R.D. 489 (C.D. Cal. Feb. 3, 2011) ............................................................. 18

*Wiener v. Dannon,*
255 F.R.D. 658 (C.D. Cal. 2009) ......................................................................... 21

*Wolin v. Jaguar Land Rover N. Am.,*
617 F.3d 1168 (9th Cir. 2010) .............................................................................. 14

*Zinser v. Accufix Research Inst.,*
253 F.3d 1180 (9th Cir. 2001) .............................................................................. 13

CBM-MERCEDES\SF538793.4

-vii-

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Rules**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................*passim*

Federal Rules of Evidence
    Rule 301 ...................................................................................................................... 17

**Regulations**

Code of Federal Regulations
    40 C.F.R. § 86.096-38(g)(2)(i)..................................................................................... 11

**Statutes**

California Business and Professions Code
    Section 17208 ............................................................................................................... 25

California Civil Code
    Section 1761(d) ............................................................................................................ 19
    Section 1770(a)............................................................................................................. 19
    Section 1783 ................................................................................................................. 25
    Section 1795.91 ...................................................................................................... 11, 18

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

-viii-

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

### INTRODUCTION

There are many reasons a car might leak, and most have nothing to do with "defects" (*e.g.*, an inadvertently open sunroof, an improperly removed part). Plaintiff admits his claims involve "countless" parts, and his experts admit there is no competent proof of relevant "commonality." The cars at issue are up to 10 years old, and likely were made in more than 100 different types. Plaintiff's experts admit individual inspections are necessary to determine what caused any given leak—so plaintiff cannot properly impugn the need for individual determinations as to whether any given leak is covered under warranty. For these reasons alone, the proposed class lacks the "cohesion" required for (b)(2) certification.

The putative class vehicles have performed exceptionally well. Plaintiff points to only 7 water leak claims over the course of 10 years to "confirm" his allegations. Mot. [Dkt. 175] at 12. But plaintiff must offer proof now, and the evidence shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is no common proof of a common "defect" on this record.

Plaintiff does not argue that he meets the indivisibility or cohesion requirements of Rule 23(b)(2). Separately, the putative class always has sought money damages in this case, plaintiff *still* seeks them, and his counsel seeks them in the duplicative *Lum* class action. Yet plaintiff now limits the putative class members' claims to injunctive and declaratory relief. *Wal-Mart v. Dukes* rejected this type of "claim splitting," explaining that, where claims implicate the right to individual recoveries, (b)(2) certification is impermissible. 131 S. Ct. 2541, 2559 (2011).

There are many other reasons, explained below, why plaintiff cannot meet his burden to show that all requirements for class certification are met. For example, an increasing majority of the proposed class impermissibly consists of former owners and others without standing to benefit from the relief plaintiff seeks. The proposed class is also overbroad and does not meet ascertainability requirements, as very few even claim to have experienced the alleged "defect." Like the lack of cohesion, the

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                    1

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    lack of issues and proof meeting *Dukes*'s commonality requirements is also fatal.

2    Separately, features of plaintiff's own claim—including his dubious standing—make

3    him atypical and undermine his adequacy as a class representative.

4         Plaintiff withdrew a Rule 23(b)(3) motion filed 8 months ago, and in December,

5    a New Jersey court held that a similar class action could not proceed. Exs. 20 & 21[1]

6    (*Williams* Order & Compl.). Plaintiff now seeks refuge in Rule 23(b)(2), but that

7    rule was never intended to offer the kind of class adjudication he desires. In the end,

8    plaintiff improperly seeks certification to thwart MBUSA's defenses to individual

9    claims. Plaintiff's motion should be denied.

10   ## MBUSA'S COUNTER-STATEMENT OF FACTS

11        MBUSA denies all material facts plaintiff alleges, and objects to his evidence in

12   accompanying filings. MBUSA generally sets forth its rebuttals below. It is important

13   to note, however, that plaintiff's motion is based on the false assertion that "water leak

14   repairs" are never covered by New Vehicle Limited Warranties ("NVLW").

15   Plaintiff's only "support" for this claim is ██████████████████████████

16   ██████████████████████ Mot. at 5-6. The NVLW does not cover things like

17   "Acts of Nature"—but it is completely false that water leak repairs are never covered.

18        The evidence proves water leak repairs *are* covered when they meet NVLW

19   requirements. *See* Shahian Ex. 16; HD ¶¶ 4-9 & Ex. 1; YD Ex. 2.[2] Mr. Wendell's

20   testimony in another case that, "in general, water ingress is not covered by under

21   warranty," and that "clogging of drains" in isolation is not covered (*see* Mot. at 6-

22   7)—is unremarkable because a clog must cause a leak to be covered. This Court has

23   recognized no claim exists absent such circumstances. Dkt. 149 at 51:13.

---

[1] "Ex. __ " refers to exhibits to the accompanying Yoshino Decl. or "YD." Other exhibits
are cited as "[declarant] Ex. __." "HD," "SD" and "CD" are the Declarations of Joseph
Haller, Jason Smith and Ed Caulfield, filed herewith. "WD" is the Waters Decl. (Dkt. 175).

[2] The data in YD Ex. 2 also shows it is *untrue* that coverage was provided "only to
those owners who were persistent and complained to MBUSA . . . ." *Cf.* Mot at 7:9-12.
██████████████████████ In addition, some who complained were not covered—including
Cholakyan and the two subrogees (Mot. at 12:11-14). Their coverage had expired.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    2

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    Plaintiff's own experts admit that, to determine whether an alleged defect
2    caused any given leak, each vehicle must be thoroughly examined.  *See* Ex. 3
3    (Waters Dep. 323:10-18) (he cannot say if a defect caused a leak, "without seeing the
4    vehicle or a better, more complete report," than his Exhibits H & Y); Ex. 4 (Potok
5    Dep. 277:14-19).  This individualized determination is exactly what happens
6    whenever a vehicle is brought in for a water leak repair.
7        Plaintiff mimics conclusory language from the Secret Warranty Law in
8    claiming that a "special adjustment program" exists.  But he offers no ***proof*** of
9    cohesion here either.  At best, he shows that sometimes repairs are covered (*e.g.,*
10   Mot. at 7, 14:19-20) and sometimes they are not.  *See* Dkt. No. 165 (Pl. Errata at 3:5-
11   7).  This only verifies that individual decisions are being made.
12       In any event, as the Court already has recognized, DTBs do not mandate free
13   repairs, and only discuss "Possible Causes" to investigate "***if*** [technicians] receive
14   [certain] customer reports."  *See* WD Ex. G at 1; SD ¶ 24; Dkt. 70 (6/30/11 Order at
15   28:2-4) (Court recognizing DTBs are not adjustment programs).[3]  Such causes are
16   investigated—just as plaintiff's experts admit they must be—and free repairs are
17   provided if warranty coverage exists.

18   **I.    THE INDIVISIBILITY REQUIREMENT FOR (B)(2) CERTIFICATION IS NOT MET**
19       Rule 23(b)(2) classes only address issues that "must perforce [*i.e.*, unavoidably]
20   affect the entire class at once . . . ." *Dukes*, 131 S. Ct. at 2558.  Thus, a (b)(2) class is
21   improper unless the relief required is necessarily "indivisible." *Id.* at 2557.
22       Indivisibility requires that final relief can be given "***only*** as to all of the class
23   members or as to none of them." *Id.* (emphasis added).  The classic case is one
24   enjoining emissions from a smokestack.  *See also, e.g., Holmes v. Continental Can*
25   *Co.*, 706 F.2d 1144, 1155 n.8 (11th Cir. 1983) ("Injuries remedied through (b)(2)
26
27   _____
     [3]   Nor are certain free repairs required by the "Add-On Repair Policy." *Cf.* Mot. at 2-8.
28   ████████████████████████████████████████████████

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                      3

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1   actions are really group, as opposed to individual, injuries"). But where—as here—

2   the "right asserted" is protection from alleged fraud, "[e]ach plaintiff can sue to

3   vindicate that right as an individual; he need not join members of the class in order to

4   bring a cognizable claim." *Kanter v. Warner-Lambert*, 265 F.3d 853, 860 (9th Cir.

5   2001) (quoting *Snow v. Ford Motor*, 561 F.2d 787 (9th Cir. 1977)).

6          In this Circuit, one thing plaintiff must show is that "even in the absence of a

7   possible monetary recovery, reasonable plaintiffs would bring the suit to obtain"

8   relief available in a (b)(2) case. *Ugas v. H&R Block*, 2011 WL 3439219, at *2 (C.D.

9   Cal. Aug. 4, 2011). Certification is improper where "class members would

10  potentially receive a poor substitute for individualized money damages" or where

11  "the ordinary relief . . . would be money damages, not injunctive relief." *McManus*

12  *v. Fleetwood Enters.*, 320 F.3d 545, 553 (5th Cir. 2003) (cannot certify warranty- and

13  fraud-based claims under (b)(2)); *Kaczmarek v. IBM*, 186 F.R.D. 307, 313 (S.D.N.Y.

14  1999) (same); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 266-67 (D.D.C. 1990).

15         Plaintiff cannot meet this test, as he believes money should be sought:

16     [Mr. Cholakyan:]    Any one in the class that's suffered, I think they
       should be allowed to have the same remedy as I would have. . . .

17     Q.    Sir, earlier you testified that what you're seeking from this lawsuit,
       aside from your out-of-pocket expenses, is that you would like to see
18     Mercedes-Benz buy back your vehicle, right?

19     [Mr. Cholakyan:]    Correct.

20  Ex. 5 (Cholakyan Dep. 351-52); *id.* 342:1-16, 349:1-4, 350:6-17. Plaintiff *still* seeks

21  damages for himself in the SAC (p. 40). *See Payne v. FujiFilm*, 2010 WL 2342388,

22  at *3 (D.N.J. 2010) (noting prior requests for damages and reimbursement, in holding

23  (b)(2) class improper); *Gardner v. Western Beef*, 2011 WL 6140518, at *6 (E.D.N.Y.

24  Sept. 26, 2011); *see also, e.g.*, Mot. at 23:4-8 (requesting order mandating

25  "reimbursement" program). And, in the duplicative *Lum* class action, plaintiff's

26  counsel seeks damages on the same claims. Ex. 12 (Compl. ¶ 199.b & g).

27         After *Dukes*, "[i]t is no answer to say that [an] . . . order affects the entire class

28  [if it] merely establishes a system for eventually providing individualized relief."

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                          4

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    *Jamie S. v. Milwaukee Pub. Schs.*, __ F.3d __, 2012 WL 336170, at *15 (7th Cir.

2    Feb. 3, 2012);[4] *Gates v. Rohm & Haas*, 655 F.3d 255, 263 (3d Cir. 2011) (no (b)(2)

3    class where "regimes of medical screening" would need to be different). The ***final***

4    relief must be indivisible and apply to the class "as a whole." *Dukes*, 131 S. Ct. at

5    2557. No ***single*** item benefits all current and former owners of the more-than-100

6    types of W211s. *Cf.* Mot. at 22-23 (many different requests); *Gardner*, 2011 WL

7    51405418, at *7 (no (b)(2) class in such circumstances).

8        Here, as in *Dukes* and *Jamie S.*, "the relief sought would merely initiate a

9    process" that might result in individual remedies (*e.g.*, repairs) later. *Jamie S.*, 2012

10   WL 336170, at *15. That is impermissible. *See, e.g.*, *Richards v. Delta Air Lines*,

11   453 F.3d 525, 530 (D.C. Cir. 2006); *Campion v. Old Rep. Home Prot.*, 272 F.R.D.

12   517, 540 (S.D. Cal. 2011) ((b)(2) class "not appropriate" where relief sought is a

13   "declaration of liability"). As a matter of due process, where separate recovery is

14   possible, claimants must "decide *for themselves* whether to tie their fates to the class

15   representatives' or go it alone"; (b)(2) certification is improper because it "does not

16   ensure" that right is preserved. *Dukes*, 131 S. Ct. at 2559.

17   **II.    CERTIFICATION IS IMPROPER BECAUSE AN INCREASING MAJORITY OF THE
         PROPOSED CLASS ARE FORMER OWNERS AND OTHERS WITHOUT STANDING
18       TO BENEFIT FROM PROPER (B)(2) RELIEF**

19       The "validity of a (b)(2) class depends on," among other things, whether a

20   single form of relief "is appropriate respecting the class *as a whole*." *Dukes*, 131 S.

21   Ct. at 2560). One reason the class in *Dukes* failed was "about half the members"

22   were former employees and thus had "no claim for injunctive or declaratory relief,"

23   the prospective remedies to which (b)(2) is limited. *Id.*; *see, e.g.*, *Huber v. Taylor*,

24   2011 WL 4553154, at *2 (W.D. Pa. Sept. 29, 2011) (cannot seek relief declaring

25   "defendants violated . . . rights in the past"); *cf.* Mot. at 22 (improper requests).

26   _____

27   [4]    In this and other respects, plaintiff's claims are invalid, as they are based on pre-*Dukes*
     opinions in cases like *Saltzman v. Pella*, 257 F.R.D. 471, 487 (N.D. Ill. 2009), *aff'd*, 606
28   F.3d 391, 396 (7th Cir. 2010). *Kanter* shows that plaintiff's claims are improper in a Ninth
     Circuit (b)(2) case, but *Jamie S.* verifies that *Dukes* changed Seventh Circuit law as well.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                                    5

The same problem exists here. With vehicles up to 10 years old, there is no doubt that an increasing majority of putative class members are former owners or others who would not benefit. HD ¶ 11. Notice, repairs, and other remedies would not benefit those who no longer own their cars or already have received repairs. *See, e.g., Kartman v. State Farm*, 634 F.3d 883, 893 (7th Cir. 2011) (where some made repairs already, (b)(2) class was improper); *McManus*, 320 F.3d at 554; *Drimmer v. WD-40*, 2007 WL 2456003, at *5 (S.D. Cal. Aug. 24, 2007) ("class members who have already suffered damages . . . have nothing to gain from injunctive relief . . . [so plaintiff] cannot" use (b)(2)). "Rule 23(b)(2) certification is also inappropriate when the majority of the class does not face future harm." *Maldonado v. Ochsner Clinic Found'n*, 493 F.3d 521, 525 (5th Cir. 2007); *Schulken v. Wash. Mut. Bank*, 2012 WL 28099, at *7 (N.D. Cal. Jan. 5, 2012) (no (b)(2) class because former customers "not currently in a position to benefit").

Notably, *Dukes* held that excluding former employees was not a solution, because more people would continue to lose (b)(2) standing. 131 S. Ct. at 2560. Thus, the proper result was "not that some arbitrary limitation on class member[s] should be imposed" but rather that "claims should not be certified under Rule 23(b)(2) at all." *Id.*; *Sepulveda v. Wal-Mart*, 2011 WL 6882918, at *1 (9th Cir. Dec. 30, 2011) (same).

## III.  PLAINTIFF COMPLETELY FAILS TO ADDRESS ASCERTAINABILITY

Plaintiff must show his class definition is "not . . . so broad as to include individuals who are without standing to maintain the action on their own behalf." *Heffelfinger v. Elec. Data Sys.*, 2008 WL 8128621, at *5, *9 (C.D. Cal. Jan. 7, 2008) (addressing (b)(2) claims). The proposed "class must be defined in such a way that anyone within it would have standing." *Gonzales v. Comcast*, 2012 WL 10621, at *7 (E.D. Cal. Jan. 3, 2012) (citing *Dukes*, 131 S. Ct. at 2552); *Red v. Kraft Foods*, 2011 WL 4599833, at *4 (C.D. Cal. Sept. 29, 2011); *Bishop v. Saab Auto.*, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996) (class cannot include persons who "purchased a product which 'tends to' cause injury"). The Court found this "best

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

6

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    addressed" at certification (Dkt. 70 at 36:1-4), but plaintiff ignores the requirement.

2         In this case, standing requires proof both that: (1) "debris clogged the drains

3    such that water could not escape from them"; and (2) "water entered the vehicle's

4    interior as a result of the clogging." Dkt. 149 at 51-52. Here, plaintiff relies on only

5    7 alleged water leak incidents. *See* Mot. at 12. Nowhere close to all putative class

6    members have suffered water leaks because of clogged drains. And plaintiff makes

7    no showing that a group meeting standing requirements can be ascertained without

8    individualized inquiry. *See, e.g., Brazil v. Dell*, 585 F. Supp. 2d 1158, 1166-67

9    (N.D. Cal. 2008) (certification improper in such circumstances); *see also* Section

10   IV (explaining why individualized inquiries required).

11

12   **IV.  PLAINTIFF FAILS TO SHOW THAT THE PUTATIVE CLASS CLAIMS HAVE THE "COHESION" REQUIRED FOR RULE 23(b)(2) CERTIFICATION**

13        To obtain Rule 23(b)(2) certification, plaintiff must show that all members of

14   his proposed class are "highly cohesive." *Greyson v. 7-Eleven*, 2011 WL 2414378,

15   at *2 (S.D. Cal. June 10, 2011) (quoting *Dukes*, 603 F.3d 571, 622 (9th Cir. 2010),[5]

16   *rev'd on other grounds*, 131 S. Ct. at 2561); *id.* (Rule 23(b)(2) imposes "more

17   stringent requirements"); *In re Paxil Litig.*, 212 F.R.D. 539, 552 (C.D. Cal. 2003).

18        The high level of cohesion—*i.e.*, a showing that "claims rest[] on precisely the

19   same grounds as all the other [class] members and all the issues they would or

20   could have raised were, in fact, adjudicated in the context of [a] class"—is required

21   because (b)(2) does not mandate due process protections like notice and the right to

22   opt-out. *Holmes*, 706 F.2d at 1157. Plaintiff does not make the required showing.

23

24   **A.  The Putative Class Claims Do Not Rest on the "Same Grounds," As They Do Not Even Involve a Common Part**

25        Plaintiff must show "[i]t is unlikely that differences in the factual background

26   of each [putative class member's] claim will affect the outcome of the legal issue."

27   _____

28   [5]    Some pre-*Dukes* cases are inapposite because they do not require "cohesion"; the Ninth Circuit and some others had not recognized the requirement prior to *Dukes*.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                         7

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1     *Califano v. Yamasaki*, 442 U.S. 682, 701 (1989) (addressing (b)(2) claims). Plaintiff

2     cannot do so because there are likely more than 100 different types of W211s.

3     MBUSA knows of at least 56, made over 7 years. SD ¶ 5. But changes often occur

4     during model years, so there likely are hundreds of differences. Ex. 4 (Potok Dep.

5     37:15-22) ("design changes [are] . . . a common thing . . . . [¶] It's ongoing."); CD ¶

6     14. Because MBUSA did not design or manufacture any W211s or parts, it does not

7     have the relevant information, but Dr. Caulfield surveyed vehicles and details many

8     differences and their significance. CD ¶¶ 4-5, 9, 13-17, 21-24, 30, 35-58.

9         Plaintiff has no competent proof that the different W211s have common parts.

10    *See* Evid. Objs. to Waters (filed herewith); *see also Gates*, 655 F.3d at 262 ("Rule 23

11    findings must be made by a preponderance of the evidence."). The only W211 Mr.

12    Waters ever inspected is Mr. Cholakyan's vehicle. Ex. 3 (Waters Dep. 16:2-7, 28:2-

13    6); WD ¶¶ 5, 17-18. Mr. Potok conceded he had no evidence of commonality either:

14         A. "I am basing [my assertion of commonality] on the assumption that
            they [i.e., all W211s] are all the same and built the same way.

15         Q. Well, that's your assumption, but do you actually have evidence that
            they're all typical as you use that term?

16         A. No."

17    Ex. 4 (Potok Dep. 301:23-302:5), *id.* at 68-69, *id.* at 305-12 (admitting he is aware of

18    numerous, relevant features that are not "common"); *see also, e.g.*, Ex. 3 (Waters

19    Dep. 183:6-185:25, 186:6-187:7, 191:3-194:1, 251:8-10) (same).[6] Plaintiff relies on

20    a claim by his experts that certain databases purportedly show commonality (PD ¶¶

21    35, 38; WD ¶¶ 24, 27), but at deposition, Mr. Potok admitted this claim was *false*:

22         Q. Did [the WIS database] tell you anything about the commonality of parts?
            A. No, sir. . . .

23         Q. Okay. Now, what did you get out of STARtek Info [the other database]
            about the commonality of parts?

24

25         A. It had nothing to do – nothing I got [regarding] information as far as
            commonality of parts.

26

27    _____

     [6]     Plaintiff cites testimony from Mr. Bowne (PD ¶ 28; WD ¶ 19), in response to the

28    question, "where [are] all the water drains *located* in the W211?" WD Ex. C 50:15-16. Mr.
     Bowne *never* testified that all drains have the same design or parts.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Ex. 4 (Potok Dep. 77:12-18); *id.* 77:19-78:18 (answering "Yes, sir" when asked if

2   claim was "wrong" or "overbroad at least").  Mr. Waters also admitted his assertions

3   were false; he could not tell if the parts at issue were "common" either.  Ex. 3

4   (Waters Dep. 246:6-15) ("I read documents" but "it's hard to say they're exactly the

5   same"); *see also* SD ¶¶ 5-20 (explaining why diagrams do not show commonality).

6       As such, plaintiff does not prove that he is putting a common part at issue—a

7   dispositive distinction between his claims and those in cases he cites (p. 17:22-18:3).

8   *Cf. Chamberlan v. Ford*, 402 F.3d 952, 956 (9th Cir. 2005) (contrary to plaintiff's

9   characterization, not vague assertion of "intake manifold defect," but specific claim

10  that "plastic water crossover component" should have been aluminum); *Parkinson v.*

11  *Hyundai*, 258 F.R.D. 580, 587 (C.D. Cal. 2008) (same; not "defective flywheel

12  system," but claim that design caused "dual mass flywheel" to overheat); *see also*

13  Dkt. 23 at 18-20 (explaining distinctions further).

14      Plaintiff's experts conceded that the numerous differences "[a]bsolutely" would

15  "be significant . . . to making a judgment about whether a particular leak is

16  attributable to that aspect of the design."  Ex. 4 (Potok Dep. 274:21-277:5); Ex. 3

17  (Waters Dep. 187:4-16); *cf. id.* at 176:25-178:11 (admitting his opinions do not

18  account for such differences); *see also* CD (confirming parts are different; explaining

19  why differences matter).  Where, as here, "there are differences in the product design,

20  or differences in the product parts that make up the design," claims cannot be

21  adjudicated in a class action.  *See, e.g., In re Hitachi TV Optical Block Cases*, 2011

22  WL 4499036, at *5 (S.D. Cal. Sept. 27, 2011) (citing numerous examples).

23      **B.   Plaintiff Also Fails to Offer the Required Proof of a Common Defect**

24      In *Dukes*, plaintiffs accused Wal-Mart of discrimination.  They proved it

25  occurred; there was "an overall sex-based disparity," but—contrary to prior Ninth

26  Circuit law—that did "not suffice."  131 S. Ct. at 2556.  Certification was improper

27  because plaintiffs did not show a common *method* of discrimination, "whether 0.5

28  percent or 95 percent of the employment decisions at Wal-Mart might be determined

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    9

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1   by stereotyped thinking" and that was "the essential question on which [plaintiffs']

2   theory of commonality depends." *Id.* at 2554. Thus, plaintiffs were "worlds away

3   from [the required] 'significant proof' that Wal-Mart 'operated under a general policy

4   of discrimination.'" *Id.*; *Jamie S.*, 2012 WL 336170, at *13 ("bottom-line liability

5   question" that exists "in any individual plaintiff's" case is insufficient; even if a

6   "question is surely a part of" all claims, commonality is not met if that question "must

7   be answered separately" because of differing facts and "particular situation[s]").

8        Under *Dukes*, even if plaintiff could show an overall pattern of leaks in this

9   case (he cannot), plaintiff still must offer common proof showing that they occurred

10  by a common method, *i.e.*, a common "defect." *See also, e.g.*, *Gonzales*, 2012 WL

11  1062, at *12 (insufficient to allege "rampant inaccuracies" in billing; must show

12  common method). There is no such evidence. *See generally* CD; Evid. Objs. to

13  Waters § V.D. Plaintiff's only claim to the contrary is based on the bulletins. *See,*

14  *e.g.*, Mot. at 5 n.9 (in section on "defect," only citing bulletins). His expert confirms:

15       Q.   So the DTB is the only basis you have for your belief that you've
          told us about; is that correct?

16       A.   Yes.

17  Ex. 3 (Waters Dep. 203:11-14); *id.* 50:8-25, 198:18-199:2, 356:6-11.

18       But the bulletins are ***not*** common evidence of a "defect." First, none of the

19  bulletins say that any W211s are "defective," or even that complaints are common, or

20  that a repair is required for all vehicles. For example: (a) the 2008 DTB merely

21  identifies a number of different "Possible Causes" to investigate "***if*** [technicians]

22  receive customer reports" of "water entry in the driver/front passenger foot well,"

23  WD Ex. G at 1; (b) the subject line shows it has limited application, *see* Ex. 6 (Smith

24  Dep. 109-10) (explaining this); and (c) the base document for this DTB shows the

25  relevant "Possible Causes" were eliminated very early in the class period:

26  • ███████████████████████████ Plaintiff's expert admits:
      "If it's sealed correctly, it shouldn't" leak. Ex. 3 (Waters Dep. 285:4-12).

27  • ████████████████████████████████████████████████

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    10

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

Second, notices related to service bulletins cannot "be construed as an admission . . . of the existence or nonexistence of a vehicle defect." Cal. Civ. Code § 1795.91. A DTB is a method of communicating "instructions for making . . . diagnoses and repairs"; a supplement to a service manual. 40 C.F.R. § 86.096-38(g)(2)(i); *Suddreth v. MBUSA*, 2011 WL 5240965, at *1 n.3 (D.N.J. Oct. 31, 2011) (verifying same as to MBUSA). Thus, a DTB "is not and cannot fairly be construed . . . as an admission of a design or other defect . . . If a [DTB] standing alone suffic[ed] to show a product liability case is proper for class action treatment, then there would be a class action every time a [DTB] issued." *Am. Honda Motor Co. v. Super. Ct.*, 199 Cal. App. 4th 1367, 1378 (2011); *Erlandson v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 101316, at *11-*12 (D. Or. Oct. 30, 2009); *Alban v. BMW of N. Am.*, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011). Because plaintiff admits he has no other evidence, he cannot offer common proof of a common defect.

Third, the bulletins discuss ***different*** parts (*e.g.*, an expansion valve cover, a fusebox cover, wheelhouse nozzles, the fender cavity) with different functions in different W211s. Plaintiff makes conclusory claims that there is a "system," but there is no such evidence. To the contrary, plaintiff's expert admits that the different drains, "they're not connected in any way." Ex. 3 (Waters Dep. 137:4-9); SD ¶¶ 21-23 (agreeing). Plaintiff puts at issue "countless seals, grommets, and other individual components designed to keep water" out of vehicles' interiors. *See, e.g.*, WD ¶ 1 n.1. As discussed above (Section IV.A.), even parts performing similar functions did not remain the same. Further, many do not even ***exist*** in all W211s.

In addition, "***none*** of the bulletins at issue apply to the majority of putative class vehicles." SD ¶¶ 29-35 (explaining). For example: (a) as the subject line of the 2002 DTB makes clear (WD Ex. I), it only potentially applies to a very small portion of early-production W211s, *see* SD ¶ 29;[7] (b) ██████████████████████

_____

[7] This part was missing from plaintiff's vehicle. CD ¶ 98. Except for that one vehicle, no one has seen a W211 without this part. *See, e.g.*, CD ¶ 101; SD ¶ 30.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  ███████████████ and no vehicle after model year 2006 has them, SD ¶ 38, Ex. 9;[8]

2  and (c) the 2007 DTBs apply "only [to] Model 211 up to VIN A097230" (WD Exs.

3  P-Q at 1 [fuse box cover])—not the entire class, or even plaintiff's car.  SD ¶¶ 31-32.

4  In any event, plaintiff's expert does **not** say that the cover is "defective."  Ex. 3

5  (Waters Dep. at 315:8-19) ("I didn't see anything, any problems with it.").  To the

6  contrary, Mr. Waters said that what these DTBs call for—ensuring that the cover is

7  properly closed—is a "reasonable thing."  *Id.* at 308:6-14.

8        Fourth, plaintiff has not shown he has common proof meeting the substantive

9  requirement under California law that the "common defect" is "substantially certain

10  to result in the malfunction during the useful life of the product."  *Am. Honda*, 199

11  Cal. App. 4th at 1375 (*Wolin* "does not address California law" on this issue).  As a

12  matter of federal class action procedure, plaintiff must show his claims "depend upon

13  a common contention . . . that is capable of classwide resolution."  *Dukes*, 131 S. Ct.

14  at 2551.  As such, plaintiff must show he can prove "substantial certainty" on a

15  common basis.  *Am. Honda*, 199 Cal. App. 4th at 1375-76.

16        Plaintiff cannot meet the requirement.  There are nearly 100,000 vehicles (Mot

17  at 1:2-3) ████████████████████ HD ¶ 11.  Yet, plaintiff says his

18  "theory" is "confirmed" only by 7 claims of leaks—████████████  *See* Mot. at

19  12;[9]  *see* SD ¶¶ 26-27 (explaining why true rate is even smaller).  There are no claims

20  at all for the vast majority of W211 types.  Plaintiff therefore fails to offer the

21  "convincing proof" of commonality required by *Dukes*.  *See, e.g.*, 131 S. Ct. at 2556

22  (no certification where evidence related "to only some 235 out of Wal-Mart's 3,400

23  stores"); *Heffelfinger*, 2008 WL 8128621, at *2 n.18 (similar).  The low rate of

24  occurrence here does not prove "substantial certainty."  *See, e.g.*, *Am. Honda*, 199

---

[8]     Plaintiff's expert concedes: "The W211 vehicles which have already had the wheelhouse drains removed do not have the auxiliary cowl drain defect."  SD Ex. 9 (Report at 19 n.9); *see* SD ¶ 39 (agreeing).

[9]     Even if all of varied types of claims involving leaks and clogged drains are considered—an impermissible exercise, since there is no **common** drain—████████████████████

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4            12

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1   Cal. App. 4th at 1377 (no "common defect" with 4% claims rate); *Feinstein v.*

2   *Firestone*, 535 F. Supp. 595, 601-02 (S.D.N.Y. 1982).

3       Indeed, clogs are so rare that neither Mr. Potok nor Dr. Caulfield has ever seen a

4   clog in a putative class vehicle. *See, e.g.,* Ex. 4 (Potok Dep. 113:23-114:5, 266:20-

5   21) ("I did not see any clogs"); Ex. 8 (Caulfield Dep. 43:18-22, 46:7-9, 134:9-12).

6       **C.   Causation Is an Insurmountable Barrier to Certification Here**

7       Even if plaintiff could prove a common defect (he cannot), "it is inescapable"

8   that causation is an independent basis to deny certification in a case like this one.

9   *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (no

10  certification despite "common issues" of an "alleged defect" in pacemaker lead).

11      **1.   Because There Are Multiple Possible Causes for Water Leaks**
          **(Including Many Not Attributable to Alleged Defects), the**
12        **Putative Class Lacks Cohesion**

13      Plaintiff must also offer common proof that "will produce a common answer to

14  the crucial question why" did my car leak? *See Dukes*, 131 S. Ct. at 2552 (no (b)(2)

15  class because there was insufficient common proof that "would produce a common

16  answer to the crucial question *why was I disfavored*").

17      Causation is an essential element of all of plaintiff's claims, including his claim

18  seeking notice, reimbursement and other SWL remedies—because that claim is

19  asserted through the UCL. As such, plaintiff must show that the alleged unlawful act

20  caused a "los[s of] money or property." *See, e.g., Morris v. BMW of N. Am.*, 2007

21  WL 3342612, at *4 (N.D. Cal. Nov. 7, 2007) (even assuming failure to provide

22  notice were a violation of the SWL, no cognizable UCL claim exists).

23      Plaintiff's expert admits any drain can clog, whether defective or not. *See, e.g.,*

24  Ex. 3 (Waters Dep. at 331:17-333:25); *see also* SD ¶ 45 (numerous possible, non-

25  defect causes for leaks). There is no commonality because, "[i]n each case, the

26  plaintiff will need to demonstrate that the [product] failed because of a common

27  defect, rather than" other possibilities. *Oscar v. BMW of N. Am.*, 274 F.R.D. 498,

28  511 (S.D.N.Y. June 7, 2011). A "determination [of] whether the [defect] caused a

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    13

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    given class member's [problem] requires proof specific to that individual litigant."

2    *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1174 (9th Cir. 2010) (refusing to

3    certify such claims);[10] *Paxil*, 212 F.R.D. at 547 (issue "is not whether [the product]

4    has the capacity to cause harm," but "whether it *did* cause harm and to whom," so the

5    "determination is highly individualistic" and not proper for (b)(2) class); *In re*

6    *Prempro*, 230 F.R.D. 555, 570 (E.D. Ark. 2005) (numerous cases holding same).

7        Plaintiff's *own* experts concede that common proof of causation is impossible in

8    this case: "I cannot [say what caused a leak] unless I actually see that vehicle either

9    at the dealer or at—with the customer." Ex. 4 (Potok Dep. at 277:14-19); *id.* at

10   101:9-19; Ex. 3 (Waters Dep. at 323:10-18); *see also* CD ¶¶ 123-27 (agreeing).

11       **2.    Individual Use Factors Create Individualized Issues**

12       Plaintiff concedes he must prove that: "At all times, Plaintiff, like all Class

13   Members, has driven his vehicle in a foreseeable manner and in the manner in which

14   it was intended to be used." SAC ¶ 25. Plaintiff does not have common proof of this

15   allegation either. *Cf.* Cholakyan Decl. ¶ 23 (proof only as to himself).

16       Individual use varies and affects whether drains might clog. Plaintiff says

17   drains can "clog[] with leaves, twigs, debris, and other objects," SAC ¶ 4, but there is

18   a huge spectrum of exposure to debris. CD ¶¶ 8, 12, 125. Many people never get

19   debris in their drains because their cars are always garaged. CD ¶ 125. Others leave

20   their cars under pine trees, where sap and needles are ubiquitous. *Id.*

21       Plaintiff's expert also acknowledges that "thorough maintenance . . . is one

22   possible solution to prevent water intrusion into the vehicles." WD ¶ 52. But, of

23   course, people have *different* use and maintenance habits. CD ¶¶ 123-27. *See, e.g.*,

24   *Aberdeen v. Toyota*, 2009 WL 7715964, at *7 (C.D. Cal. June 23, 2009) (certification

25   improper because such circumstances individualized); *Frosini v. Bridgestone*, 2007

26

27   ───────────────────
     [10]   *Wolin* certified some Michigan and Florida claims, but it did not say causation was
28   disputed there. *See id.* at 1172-73; *see also Honda*, 199 Cal. App. 4th at 1375 ("*Wolin* does
     not address California law"). *Wolin* **refused** to certify claims requiring proof of causation.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                          14

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1  WL 2781656, at *15 (C.D. Cal. Aug. 24, 2007) (same). "Courts are hesitant to

2  certify classes in litigation where individual use factors present themselves, such as

3  cases involving allegedly defective motor vehicles and parts." *Sanneman v.*

4  *Chrysler*, 191 F.R.D. 441, 449 (E.D. Pa. 2000); *Gates*, 2011 WL 3715817, at *7-*8.

**D.   The Fraud-Based Claims Lack Cohesion Because Plaintiff Cannot Provide Common Proof of Many Essential Elements**

**1.   Plaintiff Has Failed to Show There Is Common Proof of MBUSA's "Knowledge" of a "Safety Defect"**

8  Plaintiff acknowledges he must prove MBUSA knew of a safety defect, *e.g.*,

9  Dkt. 19 at 8:9-13 (alleged "duty to disclose" hinges on a "known safety defect"), and

10  that such knowledge must have existed before MBUSA sold the vehicles. *Id.* at

11  1:20-23; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

12  Plaintiff cannot offer common proof of the required knowledge. SD ¶¶ 46-48

13  (MBUSA did not have such knowledge). Plaintiff claims that the bulletins are

14  "common" evidence (*see, e.g.*, Mot. at 9:10-14), but he is wrong for several reasons.

15  First, as explained above (Section IV.B.), none of the bulletins apply to all vehicles—

16  much less describe conditions that exist in all cars; *e.g.*, ██████████████████

17  ████████████████████████ and the majority of them *do* have the fender cavity

18  drain hole described in the 2008 DTB that plaintiff says should exist. Ex. 11 at 1.

19  Second, none of the bulletins describe a classwide defect, even in the vehicles

20  they cover. The bulletins merely describe a number of different "possible causes"

21  that should be investigated *if* certain types of customer reports are received. *See*

22  Section IV.B. Third, most of the bulletins do not mention any possibility of electrical

23  issues. *See, e.g.*, Dkt. No. 149 (1/12/12 Order at 25:17-19) (noting this fact). Since

24  such issues are the purported basis for plaintiff's claim that the alleged defect poses a

25  "safety risk," it is clear that no common proof exists on this point either.

26  Fourth, operator's manuals do not provide common proof either. They only say

27  that, if electrical malfunctions occur, they might impair the safety of the vehicle

28  (Mot. at 13:1-10)—they do not show that MBUSA knew of a *defect* that would

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                   15

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    cause such problems.[11]  *See also* Livernois Decl. (explaining why leak would not

2    cause safety issue); Stehling Decl. (confirming same and showing why plaintiff's

3    issues are not caused by leaks).  And finally, NHTSA knew of the matters discussed

4    in all documents plaintiff relies upon and, though obligated to contact MBUSA if it

5    has a safety concern about any group of vehicles, NHTSA never did.  SD ¶ 43.

6         Despite plaintiff's promise he would prove knowledge through testing results

7    and excessive numbers of complaints, Ex. 18 (2/14/11 Tr. at 20:8-10), the evidence

8    shows MBUSA was ***not*** aware of such things.  Dkt. No. 41-3 (Bowne Decl. ¶ 13).

9    All plaintiff cites are claims of 7 incidents, out of a putative class of ███████████.

10   *See* Mot. at 12.  Moreover, the earliest of the cited claims occurred on January 26,

11   2009 (SD ¶ 48); just months later, no type of W211s would ever be made again.

12        For these and other reasons, plaintiff's own expert conceded he has no

13   common proof that MBUSA knew of a classwide safety defect:

14        Q.   So why did you put this in here, "Defendant has had knowledge [of an
          alleged defect]"? . . . Is this something that, as you sit here today, you would
15        say that that's an overstatement and that you can't support this statement.

16        A.   I cannot support that statement right now.

17   *See* Ex. 4 (Potok Dep. 255:20-256:13); *id.* 219:14-220:3.  Plaintiff's expert also

18   conceded he did "not know" of any safety incident, accident, or injury because of the

19   alleged defects. *Id.* 269:24-270:5; *see also* Ex. 3 (Waters Dep. 347:15-349:14) (he

20   performed no studies as to W211 safety performance following water ingress).

21        **2.   The Fraud-Based Claims Here Raise Questions as to the
             Circumstances of Individual Transactions, So They Lack the
22           Cohesion Necessary for Rule 23(b)(2) Certification**

23        This case "is fundamentally about . . . nondisclosure and deception." *Avritt v.*

24   *Reliastar Life Ins. Co.*, 615 F.3d 1023, 1036 (8th Cir. 2010).  Because the claim

25   here is that "plaintiff would not have acted as he did if he had known of the

26   concealed or suppressed fact," this Court must "inquire[] into the specific facts

27   _____

28   [11]    This language is to deter owners from modifying the vehicle's electronics on their
         own (*e.g.*, to get additional power to a stereo component). Livernois Decl. ¶ 21.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                          16

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

surrounding each buyer's transaction." *Sanders v. Apple*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *Moncada v. Allstate*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006).

   "The fact that the level of disclosure—as well as the extent of each individual's reliance—varied between plaintiffs makes this an inappropriate case for injunctive or declaratory relief" through a Rule 23(b)(2) class action. *Avritt*, 615 F.3d at 1036-37; *see, e.g., Jones v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 702 (S.D. Ga. 2002) (same). Plaintiff admits such individual issues exist here. *See, e.g.,* Cholakyan Decl. ¶¶ 7, 8, 24 (claiming he relied on "multiple conversations with the sales staff at Calabasas," *i.e.,* an independent dealer, and representations about "certified pre-owned [CPO] vehicles"). Plaintiff does not show that everyone relied on individualized conversations and specialized CPO ads, so he does not show cohesion.

   Even if the circumstances of each transaction were the same, plaintiff still could not rely on a presumption of reliance in this case, because it "typically is only permitted in securities fraud cases," *Gonzalez v. Procter & Gamble*, 247 F.R.D. 616, 623 & n.4 (S.D. Cal. 2007) (citing *Poulos v. Caesar's World*, 379 F.3d 654, 665-68 (9th Cir. 2004)); *Gartin v. S&M Nutec*, 245 F.R.D. 429, 438 (C.D. Cal. 2007), and neither the Ninth Circuit nor the Supreme Court has held that the presumption applies outside that context. *Sikes v. Teleline*, 281 F.3d 1350, 1363 (11th Cir. 2002).[12] Moreover, cases that have addressed the issue hold that, in diversity cases, state law "presumptions of reliance" do not apply. *See, e.g., McManus*, 320 F.3d at 549, 551 (CLRA, Song-Beverly, and fraud); *Gonzalez*, 247 F.R.D. at 625 (CLRA).

   In addition, there are several factual reasons reliance cannot be presumed here. First, knowledge of the "concealed" DTBs depends on individual conversations, as dealers are required to make DTBs available on request. *See* Cal. Civ. Code §

---

[12] *Sikes* explains why the presumption is improper. First, "class treatment may not serve to lessen plaintiff's burden of proof." *Id.* at 1365. Second, the presumption violates Fed. R. Evid. 301, as presumptions benefit parties "who do[] not have control of the evidence on an issue." *Id.* at 1362. A defendant "has no evidence regarding whether the plaintiffs 'relied' upon misrepresentations." *Id.* Putative class members control such information. *Id.*

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4

17

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1795.91.  Second, although plaintiff claims he did not know he had to "maintain" his

drains (Ex. 5 [Cholakyan Dep. 353:19-21]), he offers *no* evidence that everyone

understood the same thing.  *See, e.g., Thorogood v. Sears*, 547 F.3d 742, 748 (7th

Cir. 2008) (requiring such proof).  In truth, "no product is ever maintenance free, *see*

*Summit Tech* [*v. High-Line Med. Instr.*], 933 F. Supp. 918, 931 [(C.D. Cal. 1996)],

and no consumer reasonably could have that expectation." *Stearns v. Select Comfort*

*Retail*, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009).

Third, "the nature of justifiable reliance [differs] for an earlier purchaser than a

much later purchaser," because knowledge evolves over time.  *Gartin*, 245 F.R.D. at

438.  The first W211s were sold 10 years ago, so, *e.g.*, some used cars may have had

leaks that were disclosed on purchase, making fraud impossible.  Plaintiff presents no

evidence showing that alleged reliance was "justifiable" across the class period.

Fourth, where "expert testimony [suggests] that consumers would not likely

notice warnings . . . reliance cannot be established" on a classwide basis.  *Webb v.*

*Carters, Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. Feb. 3, 2011); *McManus*, 320 F.3d at

550.  That is the case here.  CD ¶¶ 128-30.  Plaintiff's expert contends the

maintenance book should have had a disclosure, WD ¶ 72.g., yet plaintiff "d[id]n't

even know" his vehicle came with such a book.[13]  Ex. 5 (Cholakyan Dep. 252:10-13,

267:23-270:12).  Moreover, identifying rare issues—such as ones with a ▮▮▮▮▮▮

claims rate—would make disclosure so inundating, as to be meaningless.  CD ¶ 128.

Fifth, many—including plaintiff—did not rely at all.  Even *after* plaintiff knew

of the bulletins at issue, he never sought a fix or diagnosis from a dealer.  *See* Ex. 5

(Cholakyan Dep. 233:24-235:3).  "There are innumerable variations" in the way

"consumers react to . . . the disclosure of" information, even when it relates to safety.

*Sanchez v. Wal-Mart*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009).  Some,

like plaintiff, will ignore a disclosure.

---

[13]   Even if a presumption were proper, MBUSA would still be entitled to rebut it.  Class
treatment cannot be used to obviate MBUSA's right of rebuttal.  *See* Section IX.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**E.    The CLRA Claim Cannot Be Certified Because There Is No**
**Cohesion, Even as to the Basic Requirement That All Putative Class**

2

**Members Must Be "Consumers"**

3        Only "consumers"—*i.e.*, persons who acquired goods "for personal, family, or

4    household purposes"—have claims under the CLRA.  Cal. Civ. Code §§ 1770(a),

5    1761(d).  "By failing to show how class members' consumer status can be

6    determined without individualized inquiry, plaintiff[] ha[s] failed to meet [his]

7    burden" of proving that all Rule 23 requirements are met.  *Ewert v. eBay, Inc.*, 2010

8    WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010); *Aberdeen*, 2009 WL 7715964, at *6-

9    *7; *Kennedy v. Natural Balance Pet Foods*, 361 Fed. Appx. 785, 787 (9th Cir. 2010);

10   *Arabian v. Sony Elecs.*, 2007 WL 627977, at *14 (S.D. Cal. Feb. 22, 2007).

11       In addition, because only "consumers" have CLRA claims, this claim does not

12   apply to the putative class "as a whole"—and thus cannot be certified under 23(b)(2).

13

**F.    The Implied Warranty Claim Cannot Be Certified Because Many**

14

**Have Driven Their Vehicles for Thousands of Miles Without Incident**

15       Whether "cars are fit for their ordinary purpose will necessarily vary from

16   vehicle to vehicle . . . ."  *Osborne v. Subaru of Am.*, 198 Cal. App. 3d 646, 659

17   (1988).  A claim exists only if a car actually "becomes inoperable within an

18   unacceptably short period of time."  Dkt. No. 70 at 31:18-19 (06/30/2011 Order).

19   People have driven their vehicles for different periods of time.  The need for

20   "individual determination[s]" as to when vehicles may have become inoperable

21   because of the alleged defect precludes "a class-wide claim under . . . [an] implied

22   warranty theory."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010).

23   **V.    PLAINTIFF MISCONSTRUES COMMONALITY AFTER *DUKES***

24       While a single "common question" sometimes can suffice, not "any common

25   question" will do.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.

26   2011); *cf.* Mot. at 16:16-18 (incorrect claim).  Common questions "must be of such a

27   nature" that they "will resolve an issue that is central to the validity of each one of

28   the claims [in the case] in one stroke."  *Dukes*, 131 S. Ct. at 2551.  Plaintiff must put

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    19

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    forward "convincing proof" that common evidence will "produce a common answer

2    to the *crucial* question" in the litigation.  131 S. Ct. at 2551-52 (emphasis added).

3        Plaintiff fails to meet the requirements of *Dukes*.  Among other things, plaintiff

4    ignores issues "central to the validity" of each claim and only raises questions at an

5    improperly abstract level, such as whether MBUSA "kn[ew] of" and "concealed" a

6    design defect, and whether MBUSA implemented an "adjustment program" under

7    the SWL.  *See* Mot. at 17:12-17, 20:18-20, 21:23-3.

8        These are questions any plaintiff could raise in "any competently crafted class

9    complaint" involving any allegedly concealed defect—and are akin to asking in

10   *Dukes*, "Is that an unlawful employment practice?" 131 S. Ct. at 2551 ("Reciting

11   these questions is not sufficient to obtain class certification.").  Certification thus fails

12   on "commonality" grounds as well.  *See also* Section IV (demonstrating that there

13   are not enough common questions for putative class to be cohesive).

14   **VI.  PLAINTIFF IS NOT TYPICAL OF THOSE HE SEEKS TO REPRESENT**

15       Plaintiff's argument that the Court should look at MBUSA's conduct (Mot. at

16   24:9-21) is nonsensical, since typicality measures whether *plaintiff* is typical of

17   others.  "Even an arguable defense peculiar to the named plaintiff or a small subset of

18   the plaintiff class" may destroy typicality and adequacy.  *Heffelfinger*, 2008 WL

19   8128621, at *15.  Consequently, *Dukes* says plaintiff must "'possess the same

20   interest and suffer the same injury' as the class members." 131 S. Ct. at 2551.

21       Plaintiff cannot meet either requirement.  First, plaintiff is a "current owner,"

22   Mot. at 24:9-10, yet he seeks to represent former owners and lessees, *i.e.*, persons

23   with competing interests and claims.  *See* Section VII.B.

24       Second, plaintiff owns only one of the many different types of W211s at issue,

25   so he is an inadequate representative for owners of other vehicles.  *See Wiener v.*

26   *Dannon*, 255 F.R.D. 658, 666 (C.D. Cal. 2009); *Arabian*, 2007 WL 627977, at *6;

27   *Lieberson v. Johnson & Johnson*, 2011 WL 4414214, at *4 (D.N.J. Sept. 21, 2011).

28       Third, plaintiff seeks to, *e.g.*, "reimburse owners and lessees for out-of-pocket

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                    20

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1  expenses," provide notice of the bulletins at issue, and provide repairs such as the

2  removal of wheelhouse nozzles—but it is undisputed, *e.g.*, that: (a) plaintiff did not

3  incur costs to repair the alleged defect (Ex. 5 [Cholakyan Dep. 341]); (b) plaintiff

4  knows of the bulletins, so he does not need notice (*id.* at 234-35); (c) plaintiff's

5  vehicle is not subject to many of the bulletins at issue (*see* Section IV.B.); and (d)

6  plaintiff's vehicle has no wheelhouse nozzles. Ex. 4 (Potok Dep. 129:1-130:18).

7  Plaintiff is not typical of others as, *e.g.*, a few may have incurred costs to repair

8  alleged defects (*see* Mot. at 12), a few may have wheelhouse nozzles, and some may

9  be subject to different bulletins than plaintiff. Moreover, as discussed above, it is

10  indisputable that the vast majority have experienced no leak because of a clogged

11  drain—despite now having vehicles that are up to 10 years old.

12      Fourth, plaintiff is also subject to other atypical defenses because: (a) he has not

13  had any electrical faults because of water leaks, and therefore cannot prove the

14  claimed "safety" issue (*see* Stehling Decl. ¶¶ 16-18); (b) his car was improperly

15  modified, as a cover had been improperly removed (CD ¶ 98); (c) he has not had *any*

16  water leak because of a clogged drain (CD ¶¶ 72-73, 81); (d) his NVLW has expired

17  (SAC ¶ 22)—so he is not entitled to free repairs, although other members of the class

18  would be; and (e) plaintiff "d[id]n't even know" his W211 came with the

19  maintenance book his expert claims should have included certain information. Ex. 5

20  (Cholakyan Dep. 252:10-13, 267:23-270:12); Potok Decl. ¶ 67; WD ¶ 72.g.[14]

21  **VII.  PLAINTIFF AND HIS COUNSEL DO NOT MEET THE ADEQUACY REQUIREMENT**

22      **A.  Plaintiff Improperly "Splits" Claims of Other Class Members**

23      Although plaintiff still asserts damage claims for himself (*see* Section I), he

24  eliminates others' claims. *Dukes* prohibits this: although one (b)(2) requirement was

25  addressed by the "strategy of including only" injunctive claims], limiting class claims

26  to jettison other remedies was found improper because it "create[s] the possibility . . .

27

28  [14]    Plaintiff is also ill-suited to represent the class because his standing has been "called into question." *See, e.g.*, 1/12/12 Order at 46:12-14.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                21

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1    that "individual class members' compensatory-damages claims would be *precluded*

2    by litigation they had no power to hold themselves apart from." 131 S. Ct. at 2559.[15]

3         The "existence of claim splitting constitutes a compelling reason to deny class

4    certification," because foregoing certain remedies means that plaintiff "waiv[es], on

5    behalf of the hundreds of class members, any possible recovery of [other] potentially

6    substantial damages . . . ." *Krueger v. Wyeth*, 2008 WL 481956, at *2, *3 (S.D. Cal.

7    Feb. 19, 2008); *Fosmire v. Progressive Max Ins.*, 2011 WL 4801915, at *8 (W.D.

8    Wash. Oct. 11, 2011); *Drimmer*, 2007 WL 2456003, at *2; *Sanchez*, 2009 WL

9    1514435, at *3. It is improper to "tailor[] class claims in an effort to improve the

10   possibility of demonstrating commonality," when "tailoring" is done "at the price of

11   presenting putative class members with significant risks of being told later that they

12   had impermissibly split a single cause of action." *Feinstein*, 535 F. Supp. at 606.

13        Plaintiff's citation to *Hanlon v. Chrysler Corp.* is inapposite. *See* Mot. at 25.

14   Unlike the (b)(3) class in *Hanlon*, plaintiff's proposed (b)(2) class "is mandatory,"

15   so certification must be "appropriate respecting the class *as a whole*." *See Dukes*,

16   131 S. Ct. at 2558-60. In any event, *Hanlon* does not address claim splitting.

17   **B.    Plaintiff's Interests Conflict with Others in the Putative Class**

18        Plaintiff baldly alleges that his interests "are aligned" with everyone in the

19   putative class, but he offers no convincing proof, as *Dukes* requires. *See* Mot. at

20   25:1-2. Rule 23(b)(2) classes must be "homogeneous without any conflicting

21   interests between the members of the class." *Holmes*, 706 F.2d at 1155. Plaintiff

22   cannot meet this standard, for numerous reasons. First, plaintiff bought his car used.

23   SAC ¶ 15. He "would not be an adequate representative of any owners of new

24   vehicles." *Sanneman*, 191 F.R.D. at 448. This is because, for example, plaintiff

25   _____

26   [15]    Plaintiff's citation to *Anthony v. Gen. Motors*, 33 Cal. App. 3d 699 (1973), only
     verifies certification is improper. *Cf.* Mot. at 16 n.47. *Anthony* shows what Cholakyan
27   tries to do in this case may "split [class members'] cause of action and bar them[] from
     litigating their other claims . . . ." 33 Cal. App. 3d at 704. *Anthony* thought claim splitting
28   was of "no concern" (*id.*), but in *City of San Jose v. Superior Ct.*, 12 Cal. 3d 447, 464-65
     (1974), claim splitting was later barred. *Dukes* also prohibits what Cholakyan tries to do.

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                        22

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

1   claims to have relied, *e.g.*, on special advertising only applicable to certain used cars.

2   Cholakyan Decl. ¶ 7.  Moreover, in many cases, used vehicles would be materially

3   changed, *e.g.*, plaintiff's vehicle had an improperly removed "cover." CD ¶ 98.

4        Second, plaintiff is a current vehicle owner.  Courts recognize that the interests

5   of current owners conflict with former owners.  *Broussard v. Meineke*, 155 F.3d 331,

6   338 (4th Cir. 1998) (citing cases).  Among other things, former owners only have an

7   interest in damages, but current owners have interests in repairs and other remedies.

8        Third, those planning to buy another Mercedes are not interested in payment

9   for others' post-warranty repairs because such relief would "influence its purchase

10  price." *Owen v. Gen. Motors*, 2007 WL 172355, at *4 (W.D. Mo. Jan. 18, 2007);

11  *Pipes v. Life Inv. Ins. Co.*, 254 F.R.D. 544, 549-50 (E.D. Ark. 2008) (similar).

12       *Hanlon* is inapposite as it involved only current owners ("each . . . plaintiff *has*

13  the same problem") and the named plaintiffs "includ[ed] owners of every minivan

14  model." 150 F.3d 1011, 1021 (9th Cir. 1998) (emphasis added).  Here, the putative

15  class includes former owners, current lessees, and users of many different types of

16  W211s, even though plaintiff currently owns only one type of W211.

17       Separately, plaintiff has refused to produce his retention agreement with

18  putative class counsel, so that it can be examined for potential conflicts of interest.

19  "It [is] inappropriate not to disclose these agreements at the class certification stage .

20  . . ." *Rodriguez v. West Pub.*, 563 F.3d 948, 968 (9th Cir. 2009).  Because plaintiff

21  did not proffer the agreement, he failed to provide sufficient evidence of adequacy.

22  **C.   Counsel Has Solicited Clients, So They Are Also Inadequate**

23       Plaintiff's counsel is also inadequate, because they have improperly trolled for

24  clients. *See, e.g.*, Exs. 5 (Cholakyan Dep. 194:10-13) (counsel: "this is my posting");

25  Ex. 15 (counsel's internet posting); Exs. 13 & 14 (counsel's two websites); Ex. 16

26  (counsel's solicitation mailing).  "[S]olicitation of clients" makes counsel inadequate

27  and "warrant[s] denial of class action certification." *Sanchez*, 2009 WL 1514435, at

28  *3; *Bodner v. Oreck Direct*, 2007 WL 1223777, at *2-*3 (N.D. Cal. Apr. 27, 2007).

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                                23

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC

**VIII. CERTIFICATION IS ALSO IMPROPER BECAUSE PLAINTIFF HAS FAILED TO PROVE THAT THE PROPOSED CLASS ACTION CAN BE EFFECTIVELY AND EFFICIENTLY TRIED ON A CLASSWIDE BASIS**

Certification also is improper because plaintiff does not demonstrate that this case can be effectively and efficiently tried.[16]  Although some courts have found there is no specific "manageability" requirement under Rule 23(b)(2), the Supreme Court has emphasized that certification is improper if it does not "advance the principal purpose of the class action device—*i.e.*, advancing 'the efficiency and economy of the litigation.'" *Lightfoot v. Dist. of Columbia*, 273 F.R.D. 314, 337 (D.D.C. 2011) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982)).

Thus, for example, *Paxil* found a plaintiff's "unworkable trial plan" made Rule 23(b)(2) certification improper.  212 F.R.D. at 546-48; *see, e.g., Seidel v. GMAC*, 93 F.R.D. 122, 126 (W.D. Wash. 1981); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998); *Agostino v. Quest Diags.*, 256 F.R.D. 437, 470 (D.N.J. 2009).

**IX. CERTIFICATION IS ALSO IMPROPER BECAUSE IT WOULD THWART MBUSA'S DEFENSES TO INDIVIDUAL CLAIMS**

In the past, some courts allowed class proceedings even though they would weaken or obviate potential defenses to individual claims.  *Dukes* forbids this:

> Because the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right," a class cannot be certified on the premise that [defendant] will not be entitled to litigate its statutory defenses to individual claims.

131 S. Ct. at 2561; *Sanchez*, 2009 WL 1514435, at *4-*5.

Many individualized defenses are discussed above.  *See* Sections IV & V.  In addition, since they are based on purchases up to 10 years ago, most claims are time-barred.[17]  Plaintiff concedes that tolling depends on individuals' "exercise of due diligence."  SAC ¶¶ 86-87.  Separately, plaintiff admits there are individualized

---

[16]    *Chamberlan v. Ford* is inapposite, as it addressed "the district court's failure to adopt a trial plan," not the *plaintiff's* failure to submit a plan.  402 F.3d at 961 n.4.  Unlike plaintiff here, the *Chamberlan* plaintiffs "did submit a trial plan . . . ."  *Id.*

[17]    *See* Cal. Civ. Code § 1783 (three-year limitations period for CLRA); Cal. Bus. & Prof. Code § 17208 (4 years, UCL); *Horne v. Harley-Davidson, Inc.*, 660 F. Supp. 2d 1152, 1157 (C.D. Cal. 2009) (4 years, Song-Beverly).

CBM-MERCEDES\SF538793.4

24

CARROLL, BURDICK & McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    questions as to whether anyone knew or could "reasonably have been expected to

2    learn or discover" the facts at issue. *Id.* Certification is improper because there is no

3    common proof of subjective knowledge where, as here, each transaction occurred at

4    different times—over a ten-year period—involved different communications, and

5    occurred in different circumstances (*e.g.*, some may have purchased used cars with

6    problems already evident). *See, e.g., Broussard*, 155 F.3d at 342; *Gregurek v. United*

7    *of Omaha Life Ins.*, 2009 WL 4723137, at *8 (C.D. Cal. Nov. 10, 2009).

8           In opposing MBUSA's Rule 12 motions, plaintiff argued that this issue "should

9    be addressed in a motion for class certification," as tolling raised "factual questions."

10   Ex. 17 (Rule 12 Opp. at 24:10-11, 17). Nonetheless, plaintiff also failed to address

11   this issue in his motion.

## CONCLUSION

13          Plaintiff has the burden to prove that all Rule 23 requirements are met by a

14   preponderance of the evidence, but he fails to even address essential prerequisites

15   like indivisibility, ascertainability, and cohesion.[18] Plaintiff cannot argue these prima

16   facie elements of Rule 23 for the first time on reply. *See, e.g., Sweet v. Pfizer*, 232

17   F.R.D. 360, 369 (C.D. Cal. 2005).

18          Separately, plaintiff fails to prove other requirements of Rule 23, like typicality

19   and adequacy. Additionally, plaintiff already has withdrawn a (b)(3) certification

20   motion, and a New Jersey court has denied class treatment for similar claims. As

21   such, there are multiple reasons to deny plaintiff's motion.

22   Dated:  February 13, 2012              Respectfully submitted,

23                                          CARROLL, BURDICK & McDONOUGH LLP

24
                                           By    /s/ *Troy M. Yoshino*
25                                                TROY M. YOSHINO
                                           **ATTORNEYS FOR MERCEDES-BENZ USA, LLC**
26

27
     ───────────────────────────
28   [18]   In addition, plaintiff does not argue for certification of Count Five (fraud by
     omission) or any UCL "unfair" claim, so those claims cannot be certified.

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF538793.4                           25

MBUSA'S OPP. TO CLASS CERT MOTION—CASE NO. 2:10-CV-05944-MMM-JC