Troy M. Yoshino, No. 197850
Matthew J. Kemner, No. 188126
Eric J. Knapp, No. 214352
**CARROLL, BURDICK & McDONOUGH** LLP
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, CA  94104
Telephone:    415.989.5900
Facsimile:    415.989.0932
Email:         tyoshino@cbmlaw.com
                 mkemner@cbmlaw.com
                 eknapp@cbmlaw.com

Attorneys for Defendant
Mercedes-Benz USA, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TIGRAN CHOLAKYAN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | No. 10-cv-05944-MMM (JC)<br><br>**MERCEDES-BENZ USA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:          April 16, 2012<br>Time:          10:00 a.m.<br>Courtroom:   780<br><br>Hon. Margaret M. Morrow |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND AND SUMMARY OF UNDISPUTED MATERIAL FACTS .................................... 1

SUMMARY JUDGMENT LEGAL STANDARD ............................................................... 3

I.    MBUSA IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S
CLAIMS BECAUSE HE HAS NO EVIDENCE CREATING A DISPUTED, MATERIAL
ISSUE AS TO THE EXISTENCE OF A "DEFECT" IN HIS OWN VEHICLE, MUCH LESS
ANY CLASSWIDE "DESIGN DEFECT" ............................................................ 4

    A.    Plaintiff's Claims Fail Because He Has No Evidence That the Alleged
Defect Is "Substantially Certain" to Manifest in Any Vehicle or That It
Has in Fact Manifested in His Own ................................................. 5

    B.    Plaintiff Has No Design Expert and the Evidence Proffered by Waters Is
Unreliable in Any Event .............................................................. 6

    C.    The Bulletins Plaintiff Puts at Issue Are Insufficient to Sustain His
Claims ................................................................................ 7

II.    PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE HE HAS NO COMPETENT PROOF OF
RELIANCE OR CAUSATION ........................................................................... 8

III.    PLAINTIFF'S FRAUD-BASED CLAIMS AND HIS IMPLIED WARRANTY CLAIM FAIL
BECAUSE HE CANNOT ESTABLISH A "SAFETY DEFECT" OR MBUSA'S
KNOWLEDGE OF SUCH A DEFECT .................................................................. 9

    A.    Plaintiff Cannot Prove a Duty of Disclosure or Breach of the Implied
Warranty Because He Cannot Prove That the Alleged Defect Is Safety-
Related ................................................................................ 9

        1.    There Is No Competent Proof That the Alleged Defect Is Safety-
Related ......................................................................... 10

        2.    Plaintiff's Own Experience Verifies That He Lacks Proof of Any
Safety-Related Defect ........................................................ 11

    B.    Dismissal of the Fraud-Based Claims Is Also Appropriate Because
Plaintiff Has No Proof That MBUSA Knew of a Safety Defect ................... 13

IV.    PLAINTIFF'S IMPLIED WARRANTY CLAIM CANNOT SURVIVE SUMMARY
JUDGMENT ............................................................................................. 14

V.    PLAINTIFF'S SECRET WARRANTY CLAIM FAILS BECAUSE THERE IS NO
EVIDENCE OF A "SECRET" OR "EXPANDED" ADJUSTMENT PROGRAM ................... 16

VI.    PLAINTIFF'S EQUITABLE REQUESTS FOR RELIEF ARE PREEMPTED BY THE
MOTOR VEHICLE SAFETY ACT .................................................................... 17

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5               i

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1

**TABLE OF CONTENTS**
**(continued)**

2

3

VII.  PLAINTIFF HAS NO EVIDENCE OF COGNIZABLE DAMAGES, SO ALL DAMAGE
CLAIMS SHOULD BE DISMISSED NOW .......................................................... 20

CONCLUSION .............................................................................................. 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CBM-MERCEDES\SF541797.5                                    ii

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alban v. BMW of N. Am.*,
  2011 WL 900114 (D.N.J. Mar. 15, 2011) .............................................. 7, 15

*Alliance Mortgage Co. v. Rothwell*,
  10 Cal. 4th 1226 (1995) ............................................................... 8

*American Honda Motor Co. v. Superior Ct.*,
  199 Cal. App. 4th 1367 (2011) .................................................. 5, 6, 7

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................... 4

*Anderson v. Raymond Corp.*,
  340 F.3d 520 (8th Cir. 2003) ......................................................... 6

*Baltazar v. Apple*,
  2011 WL 588209 (N.D. Cal. Feb. 10, 2011) .................................. 14

*Berenblat v. Apple*,
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) .................................. 14

*Brown v. Raymond Corp.*,
  432 F.3d 640 (6th Cir. 2005) ......................................................... 6

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ..................................................................... 18

*Californians for Disability Rights v. Mervyn's*,
  39 Cal. 4th 223 (2006) ................................................................... 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................... 4

*Center for Auto Safety v. Dole*,
  846 F.2d 1532 (D.C. Cir. 1988) ................................................... 19

*Cipollone v. Liggett Group*,
  505 U.S. 504 (1992) ..................................................................... 17

*Cirulli v. Hyundai Motor Co.*,
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ............................... 17

*Cox House Moving, Inc. v. Ford Motor Co.*,
  2006 WL 2303182 (D.S.C. Aug. 8, 2006) ..................................... 18

*Crosby v. National Foreign Trade Council*,
  530 U.S. 363 (2000) ..................................................................... 17

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5    iii

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Daugherty v. Am. Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006) ................................................................ 4, 9

4

*Erlandson v. Ford Motor Co.,*

5
    2009 U.S. Dist. LEXIS 101316 (D. Or. Oct. 30, 2009).................................. 7

6

*Evitts v. DaimlerChrysler Motors Corp.,*
    834 N.E.2d 942 (Ill. App. 2005) ........................................................... 14

7

*Feinstein v. Firestone,*

8
    535 F. Supp. 595 (S.D.N.Y. 1982)............................................................ 6

9

*Geier v. Am. Honda,*
    529 U.S. 861 (2000) ........................................................................... 18

10

*Gray v. Toyota Motor Sales,*

11
    2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ............................................. 7

12

*Hale v. Sharp Healthcare,*
    183 Cal. App. 4th 1373 (2010) .............................................................. 8

13

*Hannum v. Washington State Dept. of Licensing,*

14
    2006 WL 2861060 (W.D. Wash. Oct. 4, 2006) ........................................ 2

15

*Hovsepian v. Apple, Inc.,*
    2009 WL 2591445 (N.D. Cal. Aug. 21, 2009)........................................ 16

16

*In re Bridgestone/ Firestone Inc., Tires Prods. Liab. Litig.,*

17
    153 F. Supp. 2d 935 (S.D. Ind. 2001).................................................... 18

18

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. &*
    *Prods. Liab. Litig.,*

19
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................. 19, 20

20

*International Paper Co. v. Ouellete,*
    479 U.S. 481 (1987)........................................................................... 20

21

*Kearns v. Ford Motor Co.,*

22
    567 F.3d 1120 (9th Cir. 2009).............................................................. 13

23

*Kraft Real Estate Invs., LLC v. HomeAway.com, Inc.,*
    2012 U.S. Dist. LEXIS 8282 (D.S.C. Jan. 24, 2012).................................. 5

24

*Lilly v. Ford Motor Co.,*

25
    2002 WL 84603 (N.D. Ill. Jan. 22, 2002).......................................... 18, 19

26

*Malone v. White Motor Corp.,*
    435 U.S. 497 (1978) .......................................................................... 17

27

*Maloney v. Microsoft Corp.,*

28
    2012 U.S. Dist. Lexis 28676 (D.N.J. Mar. 5, 2012)................................... 6

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5

iv

**MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC**

TABLE OF AUTHORITIES
(continued)

Page(s)

*Marchante v. Sony Corp.,*
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) .............................................................. 15, 16

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)................................................................................................ 4

*Morin v. McCulloch Corp.,*
   2002 U.S. Dist. LEXIS 28196 (C.D. Cal. July 2, 2002)........................................ 6

*Namovicz v. Cooper Tire & Rubber Co.,*
   225 F. Supp. 2d 582 (D. Md. 2001) ...................................................................... 18

*Oestreicher v. Alienware Corp.,*
   322 Fed. Appx. 489 (9th Cir. 2009) ....................................................................... 9

*Shimozono v. May Dep't Stores Co.,*
   2002 U.S. Dist. LEXIS 28478 (C.D. Cal. Nov. 19, 2002) ..................................... 5

*Smith v. Ford Motor Co.,*
   749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd,*
   2011 WL 6322200 (9th Cir. Dec. 19, 2011) ................................................. *passim*

*Suddreth v. MBUSA,*
   2011 WL 5240965 (D.N.J. Oct. 31, 2011) ......................................................... 7, 15

*Tietsworth v. Sears, Roebuck & Co.,*
   720 F. Supp. 2d 1123 (N.D. Cal. 2010)................................................................ 10

*United States v. General Motors Corp.,*
   656 F. Supp. 1555 (D.D.C. 1987) ........................................................................ 10

*Vitt v. Apple Computer, Inc.,*
   2012 WL 627702 (9th Cir. Feb. 28, 2012) ............................................................ 9

*Weaver v. Chrysler Corp.,*
   172 F.R.D. 96 (S.D.N.Y. 1997) ........................................................................... 14

*Webb v. Carter's Inc.,*
   272 F.R.D. 489 (C.D. Cal. 2011) ........................................................................... 9

*Werbel ex rel. v. Pepsico, Inc.,*
   |2010 WL 2673860 (N.D. Cal. July 2, 2010) ......................................................... 8

*Woods v. Maytag Co.,*
   2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010)........................................................ 14

**Statutes**

40 Code of Federal Regulations
   § 86.096-38(g)(2)(i) ............................................................................................... 7

CARROLL, BURDICK & McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

49 United States Code
    §§ 30101-69 ............................................................................................... 17
    § 30102 ..................................................................................................... 10
    § 30118 ................................................................................................. 18, 19
    § 30119 ..................................................................................................... 18
    § 30120 ..................................................................................................... 18
    § 30162 ..................................................................................................... 18
    § 30166 ..................................................................................................... 18
    § 30168 ..................................................................................................... 18

California Civil Code
    § 1795.5(c) ................................................................................................ 15
    § 1795.90(d) ......................................................................................... 16, 17
    § 1795.91 .................................................................................................... 7

California Commercial Code
    § 2725(2) .................................................................................................. 15


**Other Authorities**

120 CONG. REC. 27,
    807-808 (1974) ......................................................................................... 19

H.R. Conf. Rep. No. 93-1452 (1974),
    *reprinted in* 1974 U.S.C.C.A.N. 6084, 6098 ............................................. 19


**Rules**

Federal Rules of Civil Procedure
    Rule 56 ................................................................................................... 2, 3
    Rule 56(c) ................................................................................................... 4
    Rule 56(c)(1)(A) ......................................................................................... 2

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5

vi

**MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC**

1

### INTRODUCTION

2       Plaintiff survived the Rule 12 motions filed by Mercedes-Benz USA, LLC

3 ("MBUSA") principally by promising the Court that he had evidence to support his

4 personal claims as well as his allegations with respect to the class.  Discovery is now

5 closed, and plaintiff has no evidence to support either.

6       Even after numerous inspections of his car, there is no evidence that plaintiff

7 himself suffered any loss because of the defect he alleges.  That plaintiff's vehicle

8 leaked is not sufficient evidence that it leaked because of any clogged drain—as this

9 Court has held is required.  See Dkt. 149 at 51.  Moreover, plaintiff refused to pay to

10 repair his vehicle, which was not under warranty.  Mr. Cholakyan therefore lacks

11 standing to assert his own claims, much less claims on behalf of a class.

12       Standing issues aside, plaintiff cannot point to any evidence of his alleged

13 defect, especially because the relative claims rate for water leaks allegedly caused by

14 clogged drains is 0.002%.  Nor is there is evidence that any such leaks have ever

15 legitimately threatened anyone's safety.  Plaintiff's "expert"—Mr. Robert Waters—is

16 of no help in establishing such a "defect" because his testimony is unreliable as a

17 matter of law, lacking scientific rigor.  Accordingly, plaintiff has no facts supporting

18 the alleged failure to disclose a safety defect, or MBUSA's knowledge of any such

19 defect.  Nor does plaintiff have any evidence of a "secret" or "clandestine" warranty

20 program.  Service bulletins, which inform service technicians how to make certain

21 repairs, do not establish the existence of a defect or an "adjustment program";

22 California's courts have recognized as much.

23       On the undisputed facts, MBUSA is entitled to judgment as a matter of law

24 against Mr. Cholakyan personally, and, even were it to survive class certification,

25 against the class as a whole.

26

### BACKGROUND AND SUMMARY OF UNDISPUTED MATERIAL FACTS

27       MBUSA generally sets forth the undisputed material facts in relation to each

28 ground for summary judgment (or partial summary judgment) below, but provides

1   some background information in this section.

2       Plaintiff Tigran Cholakyan filed this action in August 2010.  Dkt. 1.  He asserts

3   claims both on behalf of himself and all persons residing in California who

4   purchased or leased certain Mercedes-Benz vehicles produced between model years

5   2003-09.  Dkt. 86 (SAC ¶¶ 90-98 [hereafter, "SAC"]); Dkt. 197 at 1 (Class Cert.

6   Opp.).  In a nutshell, plaintiff claims that all of these cars have a uniform "design

7   defect" that causes their many different varieties of drains to become clogged in a

8   manner that causes water to leak to the interior of the vehicles.  SAC ¶ 3 n.1; Dkt.

9   149 at 21-22 (1/12/12 Order) (quoting plaintiff's promises about what ostensibly

10  would be proven). The evidence shows that there is no such "defect," however,

11  because—among other things—the relevant claims rate for leaks attributed to the

12  drains at issue is 0.002% in a population of vehicles that is now up to 10 years old.

13  Dkt. 187-9 (Smith Decl. ¶¶ 26-27).[1]

14      Plaintiff himself purchased a used 2005 Mercedes-Benz E320 from an

15  independent dealer on August 7, 2008.  SAC ¶ 15.  Plaintiff claims no problem until

16  his vehicle was about 5½ years old, when plaintiff alleges he experienced a water

17  leak.  *See id*. ¶¶ 15-18, 22.  By that time, plaintiff's 4-year New Vehicle Limited

18  Warranty ("NVLW") had expired, and it is undisputed that plaintiff's Certified Pre-

19  Owned ("CPO") Warranty did not cover any drains.  Dkt. 70 at 21 (6/30/11 Order);

20  Dkt. 11-2, Ex. A (CPO at 12-14).

21      The Court has questioned whether plaintiff ever even experienced a water leak

22  ***because*** of a clogged drain—*i.e.*, whether he has standing to pursue the claims he

23  asserts here.  Dkt. 149 at 51:16-54:5 (1/12/12 Order).  While the Court has indicated

---

24  [1]   In accordance with Rule 56 of the Federal Rules of Civil Procedure, MBUSA refers
25  to the declarations previously filed in support of its Opposition to Plaintiff's Class
    Certification Motion. Fed. R. Civ. P. 56(c)(1)(A) (moving party may "cit[e] to particular
26  parts of materials in the record, including . . . affidavits or declarations"); *cf. Hannum v.*
    *Washington State Dept. of Licensing*, 2006 WL 2861060 (W.D. Wash. Oct. 4, 2006)
27  ("referenc[ing] declarations previously filed" permissible on summary judgment).
        To the extent MBUSA cites portions of depositions previously not filed, the relevant
28  portions are attached to the Declaration of Troy Yoshino filed herewith ("YD").

1    a desire to hold an evidentiary hearing on that issue, MBUSA submits that on the

2    undisputed facts Mr. Cholakyan lacks standing as a matter of law.

3         Even assuming Mr. Cholakyan would have standing to assert a claim based on a

4    water leak caused by clogged drains, this Court has held (*id.*)—and the Ninth Circuit

5    has confirmed—that, because his warranties provided no coverage, plaintiff's claims

6    cannot succeed unless the alleged defect realistically threatens safety.  Plaintiff

7    cannot prove the required "safety defect" because, among other reasons discussed

8    below, it is undisputed that there are **no** reports of accidents, injuries, or other safety

9    issues occurring because of the alleged defect.  When asked if the alleged defect

10   "cause[d] any safety" issues or any accidents or injuries, plaintiff's expert said: "Not

11   to my knowledge."  Dkt. 187-12, Ex. 4 (Potok Dep. at 269:24-270:5).

12        Fact discovery closed on October 28, 2011.  *See* Dkt. 29.  The expert disclosure

13   deadline in this case passed on November 18, 2011.  *See id.*  Plaintiff disclosed no

14   expert who is a design engineer or has experience designing water drainage systems—

15   even though all of plaintiff's claims rely on the existence of an alleged, uniform design

16   defect.  Plaintiff also failed to disclose any economist or other expert qualified to

17   provide support for economic loss claims such as diminution-in-value or benefit-of-

18   the-bargain damages.   Yoshino Decl. ¶ 2; Dkt. 175 (declaration by plaintiff's only

19   remaining expert).

20        On March 5, 2012, this Court issued a Tentative Order finding the opinions of

21   plaintiff's remaining expert (Robert Waters) unreliable, and also denying class

22   certification on commonality, typicality, and other grounds.  MBUSA believes that the

23   Court's Tentative Order is correct.  MBUSA also believes that, for the reasons set forth

24   below, both plaintiff's individual claims and the class claims are subject to summary

25   judgment because, on the undisputed facts, they fail to state claims as a matter of law.

26   As such, the entirety of the *Cholakyan* action should now be dismissed with prejudice.

27                    ### SUMMARY JUDGMENT LEGAL STANDARD

28        Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                           3

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1    summary judgment "if the pleadings, the discovery and disclosure materials on file,

2    and any affidavits show that there is no genuine issue as to any material fact and that

3    the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c).

4        The Supreme Court's 1986 "trilogy" of *Celotex Corp. v. Catrett*, 477 U.S. 317

5    (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Elec.*

6    *Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), requires that a party

7    seeking summary judgment show the absence of a genuine issue of material fact.

8    Once the moving party has done so, the nonmoving party must "go beyond the

9    pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories,

10   and admissions on file, designate specific facts showing that there is a genuine issue

11   for trial." *See Celotex*, 477 U.S. at 324 (internal quotation and citation omitted).

12       "When the moving party has carried its burden under Rule 56(c), its opponent

13   must do more than simply show that there is some metaphysical doubt as to the

14   material facts." *Matsushita*, 475 U.S. at 586. "If the [opposing party's] evidence is

15   merely colorable, or is not significantly probative, summary judgment may be

16   granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). "[I]nferences to be

17   drawn from the underlying facts," are "viewed in the light most favorable to the party

18   opposing the motion." *See Matsushita*, 475 U.S. at 587 (internal quotation and citation

19   omitted).

20   **I.   MBUSA IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S**

21   **CLAIMS BECAUSE HE HAS NO EVIDENCE CREATING A DISPUTED, MATERIAL**
     **ISSUE AS TO THE EXISTENCE OF A "DEFECT" IN HIS OWN VEHICLE, MUCH**

22   **LESS ANY CLASSWIDE "DESIGN DEFECT"**

23       All of plaintiff's claims rely on a purported "design defect" in which various

24   drains allegedly clog and cause leaks into the interior of W211 vehicles. *See* Dkt.

25   197 at 17-21 (Class Cert. Mot.); *see also Smith v. Ford Motor Co.*, 749 F. Supp. 2d

26   980, 987 (N.D. Cal. 2010), *aff'd* 2011 WL 6322200 (9th Cir. Dec. 19, 2011) (CLRA,

27   UCL, fraud, and warranty claims require evidence of safety defect); *Daugherty v.*

28   *Am. Honda Motor Co.,* 144 Cal. App. 4th 824, 835-838 (2006). Summary judgment

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                4

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1   is warranted because plaintiff has no competent proof of such a defect, much less

2   that any such defect manifested in his own vehicle.

3       **A.   Plaintiff's Claims Fail Because He Has No Evidence That the Alleged Defect Is "Substantially Certain" to Manifest in *Any* Vehicle or That It Has in Fact Manifested in His Own**

4

5       Plaintiff relies on warranty claims, subrogation claims, and logs of customer

6   calls as evidence of a "design defect."  Such evidence is unreliable hearsay.  *See,*

7   *e.g.*, *Smith v. Ford Motor Co.*, 2011 WL 6322200, at *1 n.1 (9th Cir. Dec. 19,

8   2011) (diagnosis and other notes by third parties made in "Ford's AWS warranty

9   database" were hearsay and unreliable); *Shimozono v. May Dep't Stores Co.,* 2002

10  U.S. Dist. LEXIS 28478, at *40-*41 (C.D. Cal. Nov. 19, 2002) (records of such

11  communications inadmissible hearsay and not subject to "business records"

12  exception because "[t]he problem is that the customer is under no duty to report

13  accurately[, and] Plaintiffs have not offered any evidence that [defendant] does

14  adequate verification of the statements by third parties"); *Kraft Real Estate Invs.,*

15  *LLC v. HomeAway.com, Inc.*, 2012 U.S. Dist. LEXIS 8282, at *62-*63 n.41 (D.S.C.

16  Jan. 24, 2012) (similar).

17      But even if such evidence could be considered, the very small number of claims

18  at issue is not sufficient to create any disputed issue that the alleged defects are

19  "substantially certain to result in the malfunction during the useful life of the

20  product"—as required under California law.  *American Honda Motor Co. v. Superior*

21  *Ct.*, 199 Cal. App. 4th 1367, 1375 (2011) (*Wolin* "does not address California law"

22  on this issue).  There are nearly 100,000 vehicles with up to 300,000 putative class

23  members.  Dkt. 187-7 (Haller Decl. ("HD") ¶ 11).  Yet, plaintiff says his "theory" is

24  "confirmed" only by 7 claims of leaks—a rate of ***0.002%***.  *See* Dkt. 197 (Class Cert.

25  Mot. at 12);[2] *see* Dkt. 187-9 (Smith Decl. ¶¶ 26-27) (explaining why true rate is even

26

---

27  [2]    Even if all of varied types of claims involving leaks and clogged drains are considered—an impermissible exercise, since there is no ***common*** drain—the rate would

28  still be only 0.011%.  Dkt. 187-12, Ex. 2; *see* Dkt. 187-9 (Smith Decl. ¶ 28) (very few claims involving clogged drains).

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                    5

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1   smaller).  There are no claims at all for the vast majority of W211 types.  The low
2   rate of occurrence here as a matter of law does not prove "substantial certainty."  *See,*
3   *e.g.*, *American Honda*, 199 Cal. App. 4th at 1377 (no "common defect" with 4%
4   claims rate); *Maloney v. Microsoft Corp.*, 2012 U.S. Dist. Lexis 28676, at *20-*21
5   (D.N.J. Mar. 5, 2012) (collecting cases); *Feinstein v. Firestone*, 535 F. Supp. 595,
6   601-02 (S.D.N.Y. 1982).

7        Moreover, despite further opportunities to gather evidence in discovery and
8   conduct his own investigation, plaintiff still has no evidence that the leaks in his
9   vehicle were even caused by clogged drains, the defect he alleges.  As explained
10  below, his effort to do so through expert testimony fails.  Plaintiff therefore cannot
11  pursue claims in this case, even assuming he had evidence of a design defect.

12       **B.    Plaintiff Has No Design Expert and the Evidence Proffered by**
13             **Waters Is Unreliable in Any Event**

14       Plaintiff's expert, Robert Waters, repeatedly admitted at deposition that he has
15  no expertise or training in the design of vehicle drainage systems.  Dkt. 187-12, Ex. 3
16  (Waters Dep. 112:13-15).  He has no experience in designing cars or any other
17  product.  *See id.* 339:4-16; Dkt. 175 (Waters Decl. ("WD") ¶¶ 2-4 & Ex. A (Waters's
18  Curriculum Vitae)).  Indeed, Waters specifically ***denied*** that he would be qualified to
19  offer any design-related opinions.  Dkt. 187-12, Ex. 3 (Waters Dep. 339:4-16) ("I'm
20  not a design engineer.").  Not surprising then, Waters did no testing of any kind—
21  including no testing of alternative designs.  *See* Dkt. 188 at 4-5 (Objections to
22  Declaration of Waters (quoting Waters's testimony, repeatedly admitting no testing
23  was done)).

24       Numerous cases have held that experts are not qualified to opine as to "design
25  defects" in circumstances where there is a similar lack of qualifications and testing.
26  *See, e.g.*, *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005); *Anderson v.*
27  *Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003); *Morin v. McCulloch Corp.*, 2002
28  U.S. Dist. LEXIS 28196, at *16-*17 (C.D. Cal. July 2, 2002).

Waters's opinions are unreliable in any event because, among other things:

- He improperly parrots the opinions of others without independent verification.
- Waters's opinions are inadmissible because they lack sufficient scientific rigor and sufficient evidentiary foundation.
- Waters improperly relies on subsequent remedial measures as the sole bases for his opinions as to "defect."

*See* Dkt. 188 & 231.  Because Waters provides no valid support for plaintiff's claims, plaintiff has no competent proof creating a disputed, material issue of fact as to the existence of a classwide "design defect," much less that plaintiff himself even experienced a leak because of a clogged drain.  All of plaintiff's claims are subject to summary judgment.

### C.   The Bulletins Plaintiff Puts at Issue Are Insufficient to Sustain His Claims

Plaintiff's expert flatly admits "the only basis" for his claim of defect is the DTBs and service bulletins.  Dkt. 187-12, Ex. 3 (Waters Dep. 203:11-14); *id.* 50:8-25, 198:18-199:2, 356:6-11.  But the bulletins are ***not*** evidence of any "defect" let alone a class wide defect.

First, such bulletins cannot "be construed as an admission . . . of the existence or nonexistence of a vehicle defect."  Cal. Civ. Code § 1795.91.  A DTB is merely a method of communicating "instructions for making . . . diagnoses and repairs"; a supplement to a service manual.  40 C.F.R. § 86.096-38(g)(2)(i); *Suddreth v. MBUSA*, 2011 WL 5240965, at *1 n.3 (D.N.J. Oct. 31, 2011) (verifying same as to MBUSA).  Thus, a DTB "is not and cannot fairly be construed . . . as an admission of a design or other defect . . . ."  *Honda*, 199 Cal. App. 4th at 1378; *Erlandson v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 101316, at *11-*12 (D. Or. Oct. 30, 2009); *Alban v. BMW of N. Am.*, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011); *Gray v. Toyota Motor Sales*, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012).

Second, none of the bulletins say that W211s are "defective," or even that complaints are widespread, or that a repair is required for all vehicles.  For example,

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                                    7

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

the 2008 DTB merely identifies a number of different "Possible Causes" to
investigate "*if* [technicians] receive customer reports" of "water entry in the
driver/front passenger foot well."  SAC Ex. 7 at 1.  Plaintiff's own expert concedes
that repairs are not to be performed *unless* a vehicle manifests a symptom described
in the DTB.  *See* YD Ex. 2 (*Kas* Waters Dep. 200:24-201:11, 247:21-248:9).

   Third, there is no evidence showing that plaintiff's vehicle is subject to any of
the bulletins at issue.  To the contrary, the proof is that:

- Plaintiff's vehicle does not even have the wheelhouse drain nozzles discussed in the bulletins.  Dkt. 187-12, Ex. 4 (Potok Dep. at 129:1-130:18); Dkt. 46 at 5 n.20 (First Class Cert Mot.).
- The 2008 DTB only has potential application if a vehicle lacks adequate seam sealer.  Even plaintiff's expert admits: "If it's sealed correctly, it shouldn't" leak.  Dkt. 187-12, Ex. 3 (Waters Dep. 285:4-12).  Plaintiff's expert testified: "[t]here was sealant."  Dkt. 187-12, Ex. 4 (Potok Dep. at 189:2-190:20); Ex. 3 (Potok Dep. at 242:7-15).
- The 2007 DTBs apply "only [to] Model 211 up to VIN A097230" (WD Exs. P-Q at 1 [fuse box cover])—and thus do not apply to plaintiff's car.  Dkt. 187-9 (Smith Decl. ¶¶ 31-32).
- Similarly, the 2002 DTB that calls for installation of a shield applies only to early-production model-year 2003 W211s up to "VIN A06500" worldwide. Dkt. 175-2 (WD Ex. I).  Plaintiff owns a model-year 2005 vehicle with a VIN ending in "A615928" (SAC ¶ 15), so the 2002 DTB simply does not apply to plaintiff's vehicle.  Dkt. 187-9 (Smith Decl. ¶ 29).

   Thus, at a minimum, plaintiff's own claims should be dismissed now.  But in
fact the DTBs do not support a claim by any member of the class.

## II.  PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE HE HAS NO COMPETENT PROOF OF RELIANCE OR CAUSATION

   Every one of plaintiff's claims requires proof of reliance and/or proof that the
allegedly unlawful conduct caused plaintiff's injuries.  *Hale v. Sharp Healthcare*,
183 Cal. App. 4th 1373, 1386 (2010) (CLRA); *Californians for Disability Rights v.
Mervyn's*, 39 Cal. 4th 223, 227 (2006) (UCL); *Werbel ex rel. v. Pepsico, Inc.*, 2010
WL 2673860, at *5 (N.D. Cal. July 2, 2010) (implied warranty); *Alliance Mortgage
Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)  (fraud).  Plaintiff's expert contends
that the maintenance book accompanying plaintiff's vehicle should have contained a
disclosure.  WD ¶ 72.g.  Yet, plaintiff "d[id]n't even know" his vehicle came with

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5

8

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

such a book.  YD Ex. 4 (Cholakyan Dep. 252:3-18, 267:21-270:13); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) ("where the alleged misrepresentation is an omission, a plaintiff must also show she 'would have been aware of it' had the omitted fact been disclosed").  As such, he could not possibly have been injured personally by the alleged lack of disclosure.

Separately, even *after* plaintiff learned of the bulletins at issue, he never sought a fix or diagnosis from a dealer.  *See id.* 233:24-235:3.  This undisputed fact shows that plaintiff's own behavior did not change even when he had the allegedly relevant knowledge.  In other words, plaintiff cannot prove reliance and causation for his own claims, much less for the claims of any other class member.

**III.  PLAINTIFF'S FRAUD-BASED CLAIMS AND HIS IMPLIED WARRANTY CLAIM FAIL BECAUSE HE CANNOT ESTABLISH A "SAFETY DEFECT" OR MBUSA'S KNOWLEDGE OF SUCH A DEFECT**

**A.   Plaintiff Cannot Prove a Duty of Disclosure or Breach of the Implied Warranty Because He Cannot Prove That the Alleged Defect Is Safety-Related**

As relevant here, California law imposes a duty to disclose *only* if (a) "the defendant had exclusive knowledge of *material* facts not known to the plaintiff" or (b) if "the defendant actively conceals a *material* fact."  *Smith*, 749 F. Supp. 2d at 987 (emphasis added).[3]  "Material" means "the [alleged] failure must pose 'safety concerns.'"  *Id.*; *Smith*, 2011 WL 6322200 at *1; *Vitt v. Apple Computer, Inc.*, 2012 WL 627702, *2 (9th Cir. Feb. 28, 2012); *Daughterty*, 144 Cal. App. 4th at 835-838; *Oestreicher v. Alienware Corp.*, 322 Fed. Appx. 489, 493 (9th Cir. 2009) ("A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.").  Additionally, the Motor Vehicle Safety Act's definition of "vehicle safety" does not include "any conceivable safety hazard" but rather only issues that present an "***unreasonable*** risk

---

[3]     Plaintiff expressly ***abandoned*** his claims for affirmative misrepresentation.  *See* Dkt. 201 (Pl.'s Reply ISO Class Cert. Mot. at 6:14-15 ("this case is about uniform *omissions*, not affirmative *misrepresentations*") (emphasis original); SAC ¶ 13.

1    of accidents." *Smith*, 749 F. Supp. 2d at 990 (finding standard persuasive in

2    addressing duty of disclosure issues); *United States v. General Motors Corp.*, 656

3    F. Supp. 1555, 1579 (D.D.C. 1987); 49 U.S.C. § 30102(a)(8).  Similarly, plaintiff's

4    implied warranty claim survived MBUSA's Rule 12 motion because the Court

5    found that plaintiff adequately had pled a safety defect.  *See* Dkt. 70 at 32-33

6    (6/30/11 MTD Order).

7         Summary judgment on both the fraud-based and implied warranty claims is

8    warranted now, because plaintiff has no evidence of a "safety" risk leading to

9    "catastrophic engine and/or electrical system failure" or that there is any mold issue

10   threatening safety.  SAC ¶¶ 5, 6 n.3.  Plaintiff's own experience verifies that he

11   simply cannot prove the allegations he made.

12
           **1.    There Is No Competent Proof That the Alleged Defect Is Safety-
13            Related**

14        Plaintiff has no evidence that electrical or mold issues lead to engine failure

15   or an unreasonable risk to anyone's safety.  That is, there are ***no reports*** that anyone

16   has ever been injured as a result of the alleged defect.  When asked if the alleged

17   defect "cause[d] any safety" issues or any accidents or injuries, plaintiff's expert

18   said: "Not to my knowledge."  Dkt. 187-12, Ex. 4 (Potok Dep. at 269:24-270:5); *see*

19   *also* Dkt. 187-12, Ex. 3 (Waters Dep. 347:15-349:14) (he performed no studies as to

20   W211 safety performance following water ingress).  Without such evidence, plaintiff

21   cannot survive summary judgment, because it is well established that speculative

22   safety risks do ***not*** give rise to viable claims.  *Smith*, 749 F. Supp. 2d at 988-92;

23   *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1133-1134 (N.D. Cal.

24   2010) (no cognizable claim where no proof that "any named Plaintiff or any

25   identifiable member of the putative class actually experienced a malfunction" where

26   the alleged safety consequences manifested themselves).

27

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                    10

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

### 2. Plaintiff's Own Experience Verifies That He Lacks Proof of Any Safety-Related Defect

Conclusory claims about safety "concerns" aside, the undisputed facts establish that—although plaintiff "refused" to pay for any repairs to his vehicle (YD Ex. 4 (Cholakyan Dep. 164:19-20)—he continues to drive himself and others in the vehicle, and has no proof of any safety-related incident caused by the alleged defect.

Plaintiff complains of the following in his own vehicle: (a) the low beeping of his horn when un/locking his vehicle; (b) a malfunctioning chiming seatbelt sensor; (c) his navigation system did not work intermittently; (d) the presence of mold.  SAC ¶¶ 23, 6 n.3; Ex. 4 (Cholakyan Dep. 82:8-83:15, 96:5-7); Dkt. 175-5 (Cholakyan Decl. ¶¶ 17-18).  But there is no evidence the electrical issues were even *caused* by water leaks, much less that they were safety related.  *See* Dkt. 187-16 (Stehling Decl. ¶¶ 16-26).   In fact, the evidence is to the contrary.  Plaintiff's horn volume was modified aftermarket to 40% of normal.  *Id.* ¶ 20 & Ex. 4.  The chiming seatbelt sensor was due either to low battery voltage or an improperly calibrated sensor.  *Id.* ¶¶ 22-23.  Similarly, the navigation system did not work because of low battery voltage or an inability to eject a DVD.  *Id.* ¶¶ 24-25.  There is no evidence of a short circuit.  *Id.* ¶¶ 22-25.

Significantly, plaintiff's expert could *not* say that any of these issues were caused by water leaks.  *See* Dkt. 187-12, Ex. 4 (Potok Dep. 216:5-217:6 [recanting opinion in this area], 218:5-8 ["I cannot say whether the problems he experienced related to water as opposed to some other malfunction"]).  As such, plaintiff has no evidence that the alleged defect has ever resulted in any safety issue in his own vehicle or anyone else's.  *See* Dkt. 187-18 (Livernois Decl. (explaining why alleged defect would not cause safety issue)); Dkt. 187-16 (Stehling Decl. (confirming same)).

Plaintiff relies on a warning in the owner's manual against improper electrical work or modifications performed by unauthorized persons.  *See* Dkt. 187-18

1    (Livernois Decl. ¶¶ 21-23).[4]   This warning, which plaintiff takes out of context, does

2    **not** state that damage to any electrical component detrimentally affects all others,

3    *e.g.*, that failure of the navigation system will make the vehicle inoperable.   Indeed,

4    any such statement would clearly be untrue.   *Id*. ¶¶ 15-20; Dkt. 187-16 (Stehling

5    Decl. ¶¶ 27-33). Among other things, there are multiple redundant "fail-safe"

6    systems in W211s, as mandated by federal safety standards.   As such, failure of one

7    portion of the electrical system would still allow the vehicle to operate safely.   *See id*.

8    ¶¶ 15-20; Dkt. 187-16 (Stehling Decl. ¶¶ 27-33).

9         Finally, Cholakyan admitted at his deposition that: (a) he did not actually know

10   if there was mold in his vehicle (*see* Dkt. 187-13, Ex. 5 (Cholakyan Dep. 217:4-11,

11   345:19-25, 346:7-11)); (b) he never tested his vehicle for mold (*id*. at 217:7-9); and

12   (c) he never saw a doctor regarding any mold concerns (*id*. at 346:12-14).   Plaintiff's

13   experts confirm his vehicle has no mold.   *See, e.g.*, Dkt. 187-12, Ex. 4 (Potok Dep.

14   97:22-24); YD Ex. 1 (Waters Dep. 104:13-16).

15        Moreover, plaintiff drives his vehicle daily (Dkt. 187-13, Ex. 5 (Cholakyan

16   Dep. 73:11-15, 77:6-8) and even transports others, such as his girlfriend and co-

17   workers.   *Id*. at 26:9-19, 78:15-20, 80:16-81:10 (drives coworkers to lunch "twice a

18   week"), 93:11-19, 97:7-13 ("Q.  If you felt that your car was a—a health hazard or a

19   safety hazard to your friends and your family, you wouldn't—you probably wouldn't

20   let them drive in the vehicle? . . .  A.  But, yeah, I would never want to put the lives

21   of the people I know at risk"), 94:5-8 ("Q.  . . . If you felt that their personal—there

22   was a risk of personal injury, you would not do that.  That's the only point I'm

23   making.  [¶] A.  I guess that's an accurate statement, yeah").  In short, plaintiff's

24

25   _____

4      Plaintiff has also pointed to single customer complaint that an Electronic Stability
26   Program ("ESP") warning light came on as evidence of water leak in a passenger footwell.
     *See* WD ¶ 67.  Not only is this statement unreliable hearsay, it cannot possibly be correct
27   because the vehicle discussed in that complaint, a 2005 Mercedes-Benz E55 AMG, has no
     ESP electrical components in the passenger footwell.  *See* Dkt. 187-18 (Livernois Decl. ¶
28   23) (components located in engine compartment).

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                                12

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1  own behavior confirms what is evident from the admissions of his own experts, *i.e.*,

2  that despite alleged leaks in his vehicle, plaintiff has no safety-related concerns.

3  **B.  Dismissal of the Fraud-Based Claims Is Also Appropriate Because Plaintiff Has No Proof That MBUSA Knew of a Safety Defect**

4

5  Plaintiff acknowledges he must prove not only that there was a safety-related

6  defect, but also that MBUSA *knew* about it, *e.g.*, Dkt. 19 at 8:9-13 (alleged "duty to

7  disclose" hinges on a "known safety defect"), and that such knowledge must have

8  existed before MBUSA sold the vehicles. *Id.* at 1:20-23; *Kearns v. Ford Motor*

9  *Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  The undisputed facts show MBUSA had

10  no such knowledge. *See* Dkt. 187-9 (Smith Decl. ¶¶ 46-48).

11  Although plaintiff claims the bulletins and owners manuals demonstrate

12  knowledge (*see, e.g.*, Dkt. 197 (Class Cert. Mot. at 9:10-13)), this assertion is without

13  valid evidentiary support for several reasons.  First, Waters admits he does not know

14  MBUSA's protocol for issuing DTBs.  Dkt. 187-12, Ex. 3 (Waters Dep. 219:17-

15  220:2).  Potok also conceded he has no proof of MBUSA's knowledge:

16  Q.   So why did you put this in here, "Defendant has had knowledge [of an alleged defect]"? . . . Is this something that, as you sit here today, you would
17  say that that's an overstatement and that you can't support this statement.

18  A.   I cannot support that statement right now.

19  *See* Dkt. 187-12, Ex. 4 (Potok Dep. 255:20-256:14); *id.* 219:14-220:3).

20  Second, as explained above (Section I.C.), none of the bulletins evidence

21  knowledge of a defect.  The bulletins merely describe a number of different "possible

22  causes" that should be investigated *if* certain types of customer reports are received.

23  *See id*.  Third, also as described above, none of the bulletins describe conditions that

24  exist on plaintiff's vehicle—so they cannot possibly show MBUSA knew of a safety

25  defect in plaintiff's vehicle.  *Id.*

26  Despite plaintiff's promise he would prove knowledge through testing results

27  and excessive numbers of complaints (Dkt. 187-13, Ex. 18 (2/14/11 Tr. at 20:8-10)),

28  plaintiff cites only 7 claimed incidents, out of a putative class of roughly 300,000

1   persons.  *See* Dkt. 197 (Class Cert. Mot. at 12).  In any event, plaintiff at best

2   "establish[es] knowledge that there were *complaints*," which are themselves

3   "insufficient to show that [a defendant] had knowledge" of an alleged defect across

4   an entire class of products.  *Berenblat v. Apple*, 2010 WL 1460297, at *9 (N.D. Cal.

5   Apr. 9, 2010); *Baltazar v. Apple*, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011);

6   *Woods v. Maytag Co.*, 2010 WL 4314313, at *8 (E.D.N.Y. Nov. 2, 2010); *Weaver*

7   *v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997).

8        Moreover, the earliest of the cited claims occurred on January 26, 2009 (Dkt.

9   187-9 (Smith Decl. ¶ 48)); plaintiff's vehicle (a model-year 2005) was sold far

10  earlier.  As such, there is no evidence MBUSA knew of any defect at the relevant

11  time.  *See, e.g.*, *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 948-49 (Ill.

12  App. 2005) (post-sale knowledge irrelevant).

13  **IV. PLAINTIFF'S IMPLIED WARRANTY CLAIM CANNOT SURVIVE SUMMARY**
14  **JUDGMENT**

15       Plaintiff did not present his used vehicle for repair of any "water leak defect"

16  until March 2010—when it already had been driven for approximately 5½ years.

17  SAC ¶¶ 15-18; YD Ex. 4 (Cholakyan Dep. 163:10-164:21, 168:2-11; *id.* 158:17-20,

18  160:3-6, 160:23-161:1 (prior service visits unrelated to water leaks)).  This

19  undisputed fact provide two bases for summary judgment.  First, as this Court noted,

20  an implied warranty claim exists only if a car actually "becomes inoperable within an

21  unacceptably short period of time."  Dkt. 70 at 31:18-19 (06/30/2011 Order).

22  Plaintiff's car is a model-year 2005 vehicle, and was driven approximately 5½ years

23  before any alleged water leak issue developed.  Particularly since the express

24  warranty for the vehicle is four years long (Dkt. 187-7 (HD ¶ 4 and Ex. 1 thereto)),

25  there should be no reasonable dispute that plaintiff's car did not become "inoperable

26  within an unacceptably short period of time."  Moreover, plaintiff has no evidence

27  his vehicle was inoperable even after he took it in for service because he "refused"

28  repair and yet continued to drive his vehicle on a daily basis.  YD Ex. 4 (Cholakyan

1   Dep. 164:19-20); Dkt. 187-13, Ex. 5 (Cholakyan Dep. 73:11-15, 77:6-8).

2          Plaintiff's claims for breach of implied warranty cannot be used to impose an

3   obligation of repair independent of the express warranty period. *Marchante v. Sony*

4   *Corp.*, 801 F. Supp. 2d 1013, 1021-22 (S.D. Cal. 2011) ("implied warranties exist for

5   as long as express warranties"). The warranty on plaintiff's vehicle expressly and

6   unambiguously states that "[t]he implied warranties of merchantability and fitness for

7   a particular purpose are limited to the first to occur of 48 months or 50,000 miles . . .

8   ." Dkt. 11-2, Ex. B (New Vehicle Limited Warranty at 14). Such a provision limits

9   the duration of the implied warranties:

10         Plaintiff's implied warranty claims fail for the same reasons as his
           MMWA and breach of express warranty claims. The warranty agreement
11         specifically limited the duration of all implied warranties to 48 months or
           50,000 miles . . . Thus, the implied warranties of good faith and fair
12         dealing and merchantability were not in effect at the time the defect in
           Plaintiff's vehicle first manifested, and could not have been violated by
13         BMW's refusal to repair that defect.

14   *Alban v. BMW*, 2010 WL 3636253, *9 (D.N.J. Sept. 8, 2010); *Marchante*, 801 F.

15   Supp. 2d at 1021 ("failure to seek warranty coverage during the [express warranty]

16   period [is] fatal to" Song-Beverly claims; rejecting *Mexia* because it "renders

17   meaningless any durational limits on implied warranties. Every defect that arises

18   could conceivably be tied to an imperfection existing during the implied warranty

19   period"); *Suddreth*, 2011 WL 5240965, at *4 (claims for breach of implied warranty

20   fail because the implied warranties of merchantability are limited to the same term as

21   the express warranty). The undisputed evidence is that plaintiff has an eight-year old

22   vehicle which was driven 5 1/2 years before he presented it for repair, and which he

23   continued to drive even after he "refused" repair. The implied warranty simply

24   cannot be used as plaintiff does here to impose a repair duty indefinitely.

25         Second, under Song-Beverly, the implied warranty of merchantability for a

26   **used vehicle** is in no event "less than 30 days nor more than three months" after sale.

27   Cal. Civ. Code § 1795.5(c); *cf.* Cal. Comm. Code § 2725(2) (warranty claim accrues

28   "when breach occurs, regardless of the [plaintiff's] lack of knowledge"). Plaintiff

CARROLL, BURDICK &
McDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                          15

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1  bought his car on August 7, 2008, so at the latest his implied warranty expired three

2  months later (*i.e.*, November 2008).  *See Marchante*, 801 F. Supp. 2d at 1021-22

3  (rejecting *Mexia* as "contrary to existing law"); *Hovsepian v. Apple, Inc.*, 2009 WL

4  2591445, at *8 n.7 (N.D. Cal. Aug. 21, 2009) (noting split in authority but adopting

5  plain-language interpretation).

6
7  **V.   PLAINTIFF'S SECRET WARRANTY CLAIM FAILS BECAUSE THERE IS NO
      EVIDENCE OF A "SECRET" OR "EXPANDED" ADJUSTMENT PROGRAM**

8        As the Court has recognized, the DTBs are not evidence of an SWL violation.

9  They "make[] no mention of free repairs to vehicles no longer under warranty."  *See*

10  Dkt. No. 70 (06/30/11 Order at 28:2-4.)

11        In any event, the evidence is that warranty claims were paid for water leaks

12  covered by the NVLW.  Dkt. 187-12, Ex. 2.  And there was no policy providing free

13  repairs "only to those [out-of-warranty] owners who were persistent and complained

14  to MBUSA . . . ."  *Cf.* Dkt. 197 (Class Cert. Mot. at 7:9-12.[5])  Indeed, only one of the

15  claimants who had a 2008 DTB repair had complained (Lum, plaintiff in the

16  duplicative case).  *See* Dkt. 175-4 (Shahian Ex. 16).  In addition, some who

17  complained were not covered under warranty—including Cholakyan and two others.

18  *See id.* (Shahian Ex. 17); Dkt. 187-7 (HD ¶ 9).  Their four-year NVLW coverage had

19  expired.  *Id.*

20        Plaintiff has no evidence that any adjustments outside the applicable warranties

21  are the result of anything other than ad hoc decisions, rather than a secret warranty.

22  The SWL expressly "does not include ad hoc adjustments made by a manufacturer

23  on a case-by-case basis" within its definition of "secret" warranties.  *Id.*

24  § 1795.90(d).  That is because the Legislature did not intend to curb manufacturers'

25  discretion to provide free repairs on an individualized basis:

26  _____

27  [5]    Cholakyan filed a lawsuit, but was denied a free repair because his NVLW expired
      (*see* SAC ¶ 15 (alleging purchased used vehicle)), and because his CPO differs from the
28  NVLW insofar as it does not cover drains.  *See, e.g.*, Dkt. 11-2, Ex. A (CPO at 12-14) ("[i]f
      the part is not listed, it is not covered"; not listing any of the drains at issue).

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                    16

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1   Manufacturers implementing an adjustment program would be allowed to
2   set terms and conditions, allowing them to consider factors that aren't part of
    reasonable, normal use of the vehicle.

3   Dkt. 11-2 (MTD1: RJN, Ex. C, at A-120 [Legislative History].)  *See also Smith*, 749

4   F. Supp. 2d at 995 (SWL does not apply where plaintiff claimed defendant "quietly

5   pa[id] for repairs for the most vocal [c]lass members on a case-by-case basis");

6   *Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, at *6 (C.D. Cal. June 12, 2009).

7        The undisputed facts are that there was no special adjustment program to cover

8   water leaks and that MBUSA only had a generalized goodwill policy for vehicles

9   outside the warranty period that is administered on an ad hoc basis.  *See* Dkt. 187-7

10  (HD ¶¶ 8-9 & Ex. 3) thereto.  As such, the SWL claim also has no merit.

11
12  **VI.  PLAINTIFF'S EQUITABLE REQUESTS FOR RELIEF ARE PREEMPTED BY THE
        MOTOR VEHICLE SAFETY ACT**

13       Even assuming there was evidence of a class-wide defect—there is not—the

14  declaratory and injunctive relief plaintiff seeks is tantamount to a recall remedy,

15  which is preempted by federal law.  SAC ¶ 148; Dkt. 197 (Class Cert. Mot. at 3:9-

16  20).  Such a Court-ordered safety recall would conflict with the responsibilities

17  Congress has assigned to the National Highway Traffic Safety Administration

18  ("NHTSA") under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C.

19  §§ 30101-69 ("MVSA").   Indeed, in deference to NHTSA's authority, the SWL

20  expressly states that its notice and other provisions ***cannot*** be applied when the

21  alleged adjustment program is safety-related.  *See* Cal. Civ. Code § 1795.90(d).

22  The relief plaintiff seeks here under California law is preempted by the MVSA.

23       "A fundamental principle of the Constitution is that Congress has the power to

24  preempt state law."  *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372

25  (2000).  In determining whether claims are preempted, "the purpose of Congress is

26  the ultimate touchstone."  *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992)

27  (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).  Among other

28

CARROLL, BURDICK &
MCDONOUGH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CBM-MERCEDES\SF541797.5                    17

MBUSA'S MPA ISO SUMMARY JUDGMENT—CASE NO. 2:10-CV-05944-MMM-JC

1    things, if the state law "prevent[s] or frustrate[s] the accomplishment of a federal

2    objective," the claim is preempted.  *Geier v. Am. Honda*, 529 U.S. 861, 873 (2000).

3         Numerous courts have held that the U.S. Secretary of Transportation and

4    NHTSA[6] have "exclusive authority" to impose a duty to recall.  *Namovicz v. Cooper*

5    *Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001); *Lilly v. Ford Motor*

6    *Co.*, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002); (the structure of the Safety Act

7    suggests that "Congress intended to limit the authority to recall motor vehicles to the

8    Secretary [of Transportation]"); *Cox House Moving, Inc. v. Ford Motor Co.*, 2006

9    WL 2303182, at *9 (D.S.C. Aug. 8, 2006) (identifying "congressional intent to limit

10   judicial interference with [NHTSA]'s work regarding recalls"); *In re Bridgestone/*

11   *Firestone Inc., Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935 (S.D. Ind. 2001).

12        To assist in making its determinations about when and whether to recall

13   vehicles, NHTSA is endowed with specialized scientific, engineering, and

14   investigative personnel and test facilities.  *See, e.g.*, 49 U.S.C. §§ 30168(c),

15   30168(a)(1).  NHTSA has special investigative powers necessary to enforce the

16   Safety Act effectively.  *Id.* §§ 30166(b), (g), (h).  In addition, Congress mandated

17   channels for the public to "present information, views, and arguments" as to whether

18   a recall is warranted.  49 U.S.C. §§ 30118(b), 30162.  *See generally id.* §§ 30118-20;

19   *Namovicz*, 225 F. Supp. 2d at 584-85 (summarizing federal regulatory regime).

20        Most significantly for purposes of the preemption analysis, NHTSA is required

21   by the Congress and the MVSA to achieve a delicate balance of various statutory

22   objectives when imposing a recall.  *Lilly v. Ford Motor Co.*, 2002 WL 84603, at *5;

23   *cf., e.g., Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (state-

24   law claims preempted where agency given discretion to achieve balance of statutory

25   objectives).  In recognition of this mandate, NHTSA is given broad discretion as to

26   ───────────────

27   [6]   The Safety Act "vests authority over matters regarding motor vehicle safety [recalls] in the Secretary of Transportation or his delegate.  The Secretary has delegated this authority to the National Highway Safety Traffic Safety Administration ('NHTSA').  *See* 49 C.F.R. § 1.50."  *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001).

28

1  when, how, and whether to recall vehicles. *See, e.g.*, 49 U.S.C. § 30118(d); *Lilly*,

2  2002 WL 84603, at *5. *See also Center for Auto Safety v. Dole*, 846 F.2d 1532,

3  1534-35 (D.C. Cir. 1988) (NHTSA's decision not to reopen investigation that might

4  lead to imposition of duty to recall not subject to judicial review).

5  For all of these reasons, Congress repeatedly declined to allow judicial

6  remedies relating to recall issues. *See, e.g.*, 120 CONG. REC. 27,807-808 (1974)

7  (statement of Representative Eckhardt, unsuccessfully urging adopting of a private

8  right of action permitting any person to challenge NHTSA determinations). Indeed,

9  although the Senate version of the MVSA's recall provision would have allowed

10  NHTSA to ask a court to impose an immediate recall in cases of "immediate and

11  unreasonable risk of death, serious illness, or severe personal injury," that language

12  was eliminated in conference. H.R. Conf. Rep. No. 93-1452 (1974), *reprinted in*

13  1974 U.S.C.C.A.N. 6084, 6098.

14  Some district courts have disagreed that state law motor vehicle safety recalls

15  are preempted. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg.,*

16  *Sales Pracs. & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194-99 (C.D. Cal. 2010)

17  (discussing cases). These decisions have incorrectly focused on highway safety

18  generally (where the states have long had a significant role)—rather than on safety

19  recalls, where only the federal government has had a significant role. *See, e.g., id.* at

20  1196-97. These decisions also refuse to distinguish between the recall remedy and

21  damages claims, the latter of which are not preempted. *See, e.g., id* at 1197-98.

22  Equitable relief that is tantamount to a recall remedy uniquely interferes with

23  NHTSA's Congressionally mandated role to determine whether every vehicle of a

24  particular type must be inspected and/or repaired, as opposed to providing monetary

25  compensation, which is a role suited to the courts. Simply stated, it was Congress's

26  intent that no one—not even NHTSA—be allowed to circumvent the MVSA's

27  administrative process. Plaintiff seeks to frustrate Congress's intent by bringing this

28  lawsuit rather than petitioning NHTSA to recall the Subject Vehicle as allowed by

1   the MVSA.  Plaintiff's claims therefore conflict with controlling Congressional

2   objectives and are preempted.  *See, e.g.*, *International Paper Co. v. Ouellete*, 479

3   U.S. 481, 497 (1987) (in analyzing conflict preemption issues, Congress should not

4   be presumed "to tolerate common-law suits that have the potential to undermine [a]

5   regulatory structure" that it designed).

6   **VII. PLAINTIFF HAS NO EVIDENCE OF COGNIZABLE DAMAGES, SO ALL DAMAGE**

7   **CLAIMS SHOULD BE DISMISSED NOW**

8       At the class certification stage, plaintiff abandoned all class claims for

9   damages.  *See* Dkt. No. 201 (Reply ISO Class Cert. Mot. at 1:2-5 ("The proposed

10  class seeks only declaratory and injunctive relief, and seeks no monetary damages

11  in this case.").  His remaining claims for damages should be dismissed now.

12      Plaintiff has no evidence showing that his alleged out-of-pocket loss (*e.g.*, for

13  detailing of his vehicle and dry cleaning of clothes) was causally connected to a leak

14  caused by a clogged drain.  YD Ex 3 (Potok Dep. at 89:24-91:11, 113:23-114:5,

15  123:5-8, 129:1-130:18, 192:23-193:4, 260:16-261:1, 303:4-8 (admitting no evidence

16  of clogged drains caused by water leak in plaintiff's vehicle or any class vehicle));

17  YD Ex. 1 (Waters Dep., 30:15-31:10 & 44:4-7 (admitting did not water test

18  plaintiff's vehicle or any class vehicle); *id.* 161:25-162:3 (agreeing that he had no

19  reason to refute the results of Potok's water testing).  Furthermore, plaintiff has no

20  evidence to support his claim for economic losses, such as benefit-of-the-bargain or

21  diminution-in value.  Plaintiff has offered no expert on damages, nor disclosed any

22  evidence in discovery to support these claims—even though fact discovery closed on

23  October 28, 2011, and the expert disclosure deadline was November 18, 2011.  *See*

24  Dkt. No. 29.

25      The only relevant evidence on this issue is that plaintiff has never tried to sell

26  his vehicle.  YD Ex. 4 (Cholakyan Dep. 103:14-15).  As such, he has no valid

27  claims for economic loss.  *See, e.g.*, *Toyota Unintended Acceleration*, 754 F. Supp.

28

2d at 1166 (to assert claims for such loss, plaintiffs must plead and prove "that they sold or traded in their vehicles at a loss owing to the alleged" defect).

CONCLUSION

For all these reasons, the Court should grant MBUSA summary judgment on all plaintiff's claims.

Dated:  March 19, 2012                     Respectfully submitted,

CARROLL, BURDICK & McDONOUGH LLP

By        /s/ Troy M. Yoshino
                              TROY M. YOSHINO
                              ATTORNEYS FOR MERCEDES-BENZ USA, LLC